Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Josh Burk, State Bar No. 313869
jburk@hueston.com
Abigail Majane, State Bar No. 330347
amajane@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:   (888) 775-0898

*Attorneys for Defendant
CoreLogic Credco, LLC*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO A. FERNANDEZ, individually and as a representative of the class,<br><br>Plaintiff,<br><br>vs.<br><br>CORELOGIC CREDCO, LLC,<br><br>Defendant. | Case No.  20-cv-1262-JM-AGS<br><br>**DEFENDANT CORELOGIC CREDCO, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Honorable Jeffrey T. Miller<br><br>Hearing Date: Nov. 30, 2020<br>Time:  10:00 a.m.<br>Courtroom:  5D<br><br>Action filed:  June 2, 2020<br>F.A.C. filed:  Sept. 28, 2020 |

## I. INTRODUCTION

Plaintiff's opposition brief fails to overcome the five independently sufficient reasons warranting dismissal of his claims against CoreLogic Credco, LLC ("Credco") under California's consumer protection statutes, the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1, *et seq.*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* Plaintiff also fails to show that section 1681i of the Fair Credit Reporting Act ("FCRA") applies to the facts pleaded. As a result, counts I, IV, V, VI, and VII of Plaintiff's First Amended Complaint ("FAC") should be dismissed.

## II. ARGUMENT

### A. Plaintiff's California Claims Do Not Apply Extraterritorially[1]

Plaintiff's assertion that he is not seeking the extraterritorial application of California's consumer protection laws relies exclusively on redundant allegations that all boil down to a single fact: Credco is headquartered in California. (Opp. at 8; MTD at 16.) Plaintiff does not and cannot dispute, however, the holding in *Sullivan v. Oracle Corp.* that a statute does not apply extraterritorially merely because "[t]he [defendant's] decision-making process . . . occurred primarily from within the headquarters offices . . . [in] California." 51 Cal. 4th 1191, 1208 (2011). Nor can he contend with the reality that Plaintiff lives out-of-state, received critical disclosures out-of-state, disputed his credit information out-of-state, and allegedly suffered harm out-of-state. *See Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 4761733, at *5–6 (C.D. Cal. Apr. 12, 2012) (rejecting conclusory argument that defendant "devised, implemented and directed" conduct from California). Because Plaintiff has not pleaded an adequate connection to California, his CCRAA and UCL claims fail.

---

[1] Plaintiff merges the extraterritoriality and choice-of-law analyses. (Opp. at 6–7.) As these two issues are doctrinally and analytically distinct, we address them separately.

- 1 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED
COMPLAINT                                                    Case No. 20-cv-1262-JM-AGS

### B.   Plaintiff's CCRAA and UCL Claims Should Be Dismissed Because California Law Does Not Apply Under Choice-of-Law Principles

#### 1.   *Choice-of-Law Analysis Is Not Premature Here*

Plaintiff wrongly contends that consideration of choice-of-law principles is premature because the analysis is necessarily fact-intensive. Not so. Deferring the choice-of-law analysis is "not appropriate" here because it is "highly unlikely that discovery will uncover information" relevant to the inquiry. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007–08 (N.D. Cal. 2014). Plaintiff's allegations fall squarely within a long line of cases that that have dismissed similar California consumer protection claims on the pleadings where the named plaintiff is a nonresident and "the transactions . . . that directly caused the injury took place out of state," despite allegedly actionable conduct originating from a defendant's California headquarters. *See Frezza v. Google, Inc.*, 2013 WL 1736788, at *5 (N.D. Cal. Apr. 22, 2013); *see also Schepler v. Am. Honda Motor Co.*, 2019 WL 398000, at *6–7 (C.D. Cal. Jan. 29, 2019) (collecting cases); (*see also* MTD at 6, 12).

Plaintiff's cases to the contrary are inapposite. For example, in *Valencia v. Volkswagen Grp. of Am. Inc.*, the court simply determined that a request "to strike [California residents'] *nationwide class allegations*" should not be considered until the class certification stage. 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) (emphasis added); *see also Fehrenbach v. Hewlett Packard Co.*, 2017 WL 11422106, at *6 (S.D. Cal. Jan. 5, 2017) (same); *Chavez v. Wal-Mart Stores, Inc.*, 2014 WL 12591244, at *2 (C.D. Cal. Mar. 3, 2014) (same); *Hofmann v. Fifth Generation, Inc.*, 2015 WL 5440330, at *10 (S.D. Cal. Mar. 18, 2015) (same). These uncontroversial holdings—that class-wide determinations are best resolved at class certification—are irrelevant to the question here, whether an *out-of-state* named plaintiff, alleging only out-of-state wrongs, may bring California claims. *See Schepler*, 2019 WL 398000, at

- 2 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED
COMPLAINT                                                                 Case No. 20-cv-1262-JM-AGS

*8. The caselaw makes clear that such choice-of-law inquiries should be made at the pleading stage. *See id.* at *6–7; *Frenzel*, 76 F. Supp. 3d at 1007–08.

To avoid that result, Plaintiff curiously uses disagreements about the *legal* requirements of particular statutes to argue that more *factual* development is necessary. (Opp. at 10–12.) This maneuver ignores that statutory interpretation and determination of legal standards are questions of law, not fact. *See Iopa v. Saltchuk-Young Brothers, Limited*, 916 F.3d 1298, 1300 (9th Cir. 2019) (per curiam). And such legal determinations do not require development through discovery.

Plaintiff also seeks to muddy the waters by pointing to events that supposedly occurred in Colorado and Virginia—which he did not allege in his Complaint. But even if those states do affect the choice-of-law analysis, *see infra* p. 6, Plaintiff nowhere indicates what additional material facts could be gleaned from discovery. Indeed, if Plaintiff is correct that the locations of the relevant events are clear on the face of the addended document (Opp. at 11; Exhibit 1), then there is nothing to be gained from discovery. In short, Plaintiff has pointed to no fact-specific questions relevant to this analysis that would be illuminated through further fact-finding.

## 2. *California Law Does Not Apply to Plaintiff's Allegations*

There are three steps in the choice-of-law inquiry: (1) whether a conflict exists, (2) whether another state has an interest in having its law applied, and (3) which state has the greater interest. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012). Plaintiff disputes only the first and third step, and his arguments are unavailing.

### a) There is a material conflict of law.

Plaintiff incorrectly asserts that no conflict of law exists between his California consumer protection claims and Maryland's consumer protection laws.

As a preliminary matter, Plaintiff entirely ignores, and thus concedes, that a conflict of law exists between California's UCL and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101, *et seq.* (*See* MTD

- 3 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED
COMPLAINT

Case No. 20-cv-1262-JM-AGS

at 7–8.) Nor could Plaintiff argue otherwise as courts have definitively held that the two statutes are in material conflict. *See Walter v. Hughes Comm'ns, Inc.*, 682 F. Supp. 2d 1031, 1041–42 (N.D. Cal. 2010).

A material conflict also exists between the CCRAA and the Maryland Consumer Credit Reporting Agencies Act ("MCCRAA"), Md. Code Ann., Com. Law §§ 14-1201, *et seq*. Plaintiff acknowledges, as he must, that the MCCRAA imposes different remedies than the CCRAA, but dismisses those differences out of hand. (*See* Opp. at 14–15.) It is settled that a difference in remedies is material for conflict-of-law purposes. *See Mazza*, 666 F.3d at 591; *Walter*, 682 F. Supp. 2d at 1041–42. That is especially so here because the CCRAA imposes *mandatory* punitive damages for willful violations, whereas the MCCRAA imposes *permissive* punitive damages. *Compare* Cal. Civ. Code § 1785.31(a), *with* Md. Code Ann., Com. Law § 14-1221(a)–(b). Additionally, the CCRAA makes injunctive relief "available to any consumer aggrieved by a violation or a threatened violation," Cal. Civ. Code § 1785.31(b), while the MCCRAA, like the FCRA, provides no such remedy, Md. Code Ann., Com. Law §§ 14-1221, 14-1225, 14-1226. This difference alone is sufficient to find a material difference between the two statutes. *See Walter*, 682 F. Supp. 2d at 1042; *see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) (finding a material difference where "some states provide for injunctive relief while others do not").

Material differences can also be found in the fact that Maryland devised an elaborate administrative scheme to address MCCRAA violations, which has no parallel in the CCRAA or federal law. *Wash. Home Remodelers, Inc. v. Consumer Prot. Div.*, 426 Md. 613, 625 (2012) (citing the administrative enforcement scheme as one of the MCCRAA's "main differences" from the FCRA); *see also Walter*, 682 F. Supp. 2d at 1041–42 (finding a system of public enforcement is a material difference from a purely private enforcement scheme).

Plaintiff's minimization of these differences and his contention that they do not

"reflect[] a conflicting policy choice" by the respective state legislatures (Opp. at 15) are all the more inexplicable given Plaintiff's assertions that both the CCRAA and the MCCRAA virtually track the provisions of the FCRA (*see* Opp. at 13); but if that is so, then each state's decision to write unique remedies and unique enforcement mechanisms into its laws stands out even more distinctly as a purposeful difference in policy. *See Mazza*, 666 F.3d at 591, 593. As such, the CCRAA and the UCL both conflict materially with the MCCRAA and the MCPA.

### b) California does not have the predominant interest.

At the third step of the choice-of-law inquiry, Plaintiff misapprehends the "place of the wrong" standard that courts use to determine which state has a predominant interest in having its law applied. The "place of the wrong" is "the state where the last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593.

Liability under both the CCRAA and the UCL requires actual damages and lost money or property, respectively. *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 637, 639 (2007), *disapproved on other grounds*, *Connor v. First Student, Inc.*, 5 Cal. 5th 1026 (2018). That is, even if a defendant fails to implement reasonable procedures or conduct a reasonable reinvestigation, liability does not attach unless and until a plaintiff is actually harmed. *Id.* (finding "inherent harm" insufficient). Here, Plaintiff's conclusory alleged harms—to his reputation, emotional state, and creditworthiness—all occurred in Maryland, where Plaintiff resides, sought a mortgage, received allegedly inaccurate disclosures,[2] and suffered purported harm. *See In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1068 (S.D. Cal. 2017) ("[For] individuals who were only harmed . . . somewhere other than California . . . the last event necessary to make the actor liable will have occurred in

---

[2] According to Plaintiff's own exhibit, he was sent the allegedly problematic report regarding the OFAC alert at his address in Hanover, Maryland. (Exhibit 1, at 1.)

states other than California."); *see also Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F. Supp. 3d 769, 793 (S.D. Cal. 2019) (affirming the importance of the "situs of the injury" in determining the place of the wrong); *see also In re Yahoo*, 308 F.R.D. at 604 ("California's specific interest in applying its . . . laws to nonresidents under choice-of-law rules is less [than] clear"). Under *Mazza*, as the "state where the last event necessary to make the actor [allegedly] liable occurred," Maryland has the predominant interest in applying its laws to the specific facts of this case.

Nor do Plaintiff's new references to alleged events in *Colorado* or *Virginia* help him demonstrate that *California* law applies. (*See* Opp. at 11.) First, there is no plausible understanding of the "place of the wrong" test under which the last event necessary for alleged liability occurred in Colorado. Neither Plaintiff nor Credco has any connection to Colorado. The only relevant event to purportedly occur in Colorado is that a non-party, Pulte Mortgage LLC ("Pulte"), sent a communication from Colorado to Plaintiff, who received that communication and was allegedly harmed in Maryland. Colorado is at best an intermediate link in any purported chain of liability.

Second, if Plaintiff is correct that Virginia is the place of the wrong as the location where Pulte received the allegedly inaccurate communication from Credco, then Virginia's laws (not California's laws) would apply. Virginia has *no* credit reporting statute. The absence of such a statute is an established, material conflict of law. *See, e.g.*, *In re Packaged Seafood*, 242 F. Supp. 3d at 1068 ("states without [similar] legislation . . . evince a policy judgment by those states that should not be cast aside"). Under any reading, then, Plaintiff's California claims must be dismissed.

**C.     Plaintiff's CCRAA Claims Fail as He Lacks a California Address**

Plaintiff does not dispute that the notice and disclosure provision of section 1785.6 of the CCRAA, which protects only consumers with a California mailing address, applies to Plaintiff's reinvestigation claim under section 1785.16. (*See* Opp. at 19 ("[I]t would make sense that the notice and disclosure requirements under the

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED
COMPLAINT                                                            Case No. 20-cv-1262-JM-AGS

1  CCRAA . . . including those notices involved with reinvestigations, are limited to the
2  persons with California addresses.").)  Nor could he, given the reinvestigation
3  provision's plain text. *See* Cal. Civ. Code § 1785.16 (including four separate uses of
4  the words "notice" or "notify").  Accordingly, Plaintiff has conceded that the
5  CCRAA's reinvestigation requirements do not apply to him. *Shorter v. Los Angeles*
6  *Unified Sch. Dist.*, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013) (a failure to
7  oppose arguments "should be construed as a waiver or abandonment of those issues").

8  Plaintiff then errs, however, by seeking to create, in section 1785.14, an
9  exception to the California residency requirement.  But this is nonsensical.  Plaintiff
10 offers no plausible explanation for why the California legislature would have required
11 California residency for certain provisions of the CCRAA but not for other similar
12 provisions.  Essentially, Plaintiff asks the Court to fashion a novel, piecemeal approach
13 to the CCRAA legislative scheme.  Plaintiff cites no cases that support such an
14 interpretation of the CCRAA.  (Opp. 18–19.)  And for good reason—Plaintiff's
15 reading clashes with the express purpose of the statute, to "protect the interests of *the*
16 *people of the State of California*," Cal. Civ. Code § 1785.1(e) (emphasis added); *In re*
17 *Yahoo*, 308 F.R.D. at 604 (noting that a statute's similar statement of intent to "protect
18 the right of privacy of the *people of this state* . . . lies at the heart of virtually all the
19 decisions construing [the act]" (cleaned up)), and does so in a way that would create
20 an unpredictable and unwieldy system of disparate rights, responsibilities, and
21 beneficiaries.  This is particularly troublesome given the potential due process
22 concerns Plaintiff's interpretation would create, as credit reporting agencies are not
23 adequately on notice of potential extraterritorial liability from out-of-state consumers,
24 given the lack of any reference in the CCRAA to such consumers on the one hand, and
25 the explicit purpose and California residency requirements of the statute on the other.
26 *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental
27 principle in our legal system is that laws which regulate persons or entities must
28

give fair notice of conduct that is forbidden or required."); *see also Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 197, 204 (2009) (statutes are generally construed to avoid constitutional questions). When read in context and with the statute's express purpose, it is clear that section 1785.14, like the rest of the CCRAA relating to consumer rights and obligations, applies only to those consumers with California mailing addresses.

In his attempt to rewrite the law, Plaintiff relies on the lack of explicit mention of "notices and disclosures" within section 1785.14(b), in contrast to certain other provisions. But the Supreme Court has stated that this particular canon of construction "should not be elevated to the level of interpretive trump card" and "is weakest when it suggests results strangely at odds" with other interpretive indicators. *Field v. Mans*, 516 U.S. 59, 67, 75 (1995). A proper reading of the relevant provisions in the context of the statutory scheme as a whole demonstrates that only California consumers are covered by the CCRAA. Plaintiff's CCRAA claims should be dismissed.

### D. Plaintiff Has Not Alleged Actual Damages Under the CCRAA

Contrary to Plaintiff's assertions, Credco has not argued that actual damages cannot include emotional distress; however, "bare allegation[s]" of "actual damages, loss of wages, damage to credit reputation, pain and suffering, costs and attorneys' fees . . . without sufficient facts to demonstrate any particular injury" are not enough. *Levinson v. Transunion LLC*, 2016 WL 3135642, at *6 (C.D. Cal. June 2, 2016) (cleaned up); *Gadomski v. Patelco Credit Union*, 2020 WL 1433138, at *4–5 (E.D. Cal. Mar. 24, 2020). Plaintiff offers a conclusory laundry list of alleged harms, but has pleaded no factual support for any particular injury constituting actual damages.[3] (*See* MTD at 17–19.) He therefore lacks standing under the CCRAA.

---

[3] Plaintiff additionally implies that attorneys' fees and costs alone can satisfy the actual

(Continued...)

- 8 -

### E. Plaintiff Has Not Alleged Lost Money or Property Under the UCL

Plaintiff ignores the core requirement for a consumer to have standing to bring a UCL claim: lost money or property. (*See* MTD at 20–21.) In a distortion of precedent, Plaintiff claims that an inaccurate credit report, standing alone, is sufficient for standing under the UCL. (Opp. at 22.) All the cases he cites, however, turned on independently sufficient allegations of lost money or property, as required by statute. *See, e.g.*, *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006) ("Plaintiffs do satisfy the UCL's standing requirements because they have alleged injury-in-fact *and a loss of income . . . .*" (emphasis added)). Plaintiff also asserts, with no legal support, that "damaged credit qualifies as a loss of money or property." (Opp. at 22.) In fact, courts have concluded that a lowered credit score does not qualify as actual damages. *See Duarte v. J.P. Morgan Chase Bank*, 2014 WL 12561052, at *4 (C.D. Cal. Apr. 7, 2014). And even by Plaintiff's own account, his credit score did not *actually* suffer. (*See* Opp. at 22 ("[H]ad Defendant's report been true, Plaintiff *would have been* ineligible for credit." (emphasis added)).) Plaintiff does not have the necessary damages to establish standing under the UCL.[4]

---

damages requirement. (See Opp. at 20.) If that were true, individuals without actual damages could bootstrap their way to standing merely by the act of filing suit—a result that is plainly untenable. *See Trujillo*, 157 Cal. App. 4th at 637–38.

[4] Plaintiff also asserts that Credco waived its argument regarding the heightened pleading standard for UCL fraud claims. (Opp. at 22 n.6.) Not so. The principle he refers to is inapposite. *See Hilao v. Estate of Marcos,* 103 F.3d 767, 778 n. 4 (9th Cir.1996) (relating to "[t]he summary mention of an issue in a footnote, without reasoning . . . on appeal"); *see also Doran v. Colvin*, 2016 WL 4942001, at *6 (D. Or. Sept. 15, 2016) (noting inapplicability when a "footnote contains ample reasoning").

### F. Plaintiff's FCRA Reinvestigation Claims Are Inapplicable

Relying on non-binding statements from an out-of-circuit court and informal guidance from the Department of the Treasury, Plaintiff argues that, pursuant to section 1681i of the FCRA, Credco must reinvestigate possible matches of consumer names to names on the OFAC List. (Opp. at 23–25.) Plaintiff's appeal to such non-binding authority, however, cannot override the Court's "obligation to harmonize multiple statutes when possible." *Stand Up for California! v. DOI*, 959 F.3d 1154, 1159 (9th Cir. 2020). Here, Plaintiff asks the Court to place single-minded focus on Plaintiff's interpretation of the FCRA to the exclusion of the detailed scheme of reporting established and encouraged by the subsequently enacted Patriot Act, under which *financial institutions*, like Pulte, bear responsibility for identifying reasonable matches to names on the OFAC List. *See* 31 C.F.R. § 1020.220(a)(4). As explained in the Motion to Dismiss, Plaintiff's proposed reading of the FCRA fails to give effect to both statutes and would create disincentives for credit reporting agencies to provide name-matching services that facilitate financial institutions' performance of their national security obligations. Because that result comports with neither sound principles of statutory construction nor common sense, the Court should reject Plaintiff's interpretation and dismiss the section 1681i claims.

### III. CONCLUSION

Plaintiff, a Maryland resident with no ties to California, seeks to impose liability under California statutes that are in conflict with Maryland law and were passed to protect only California residents. Plaintiff further seeks to establish a rule that would discourage appropriately thorough OFAC reporting, as the Patriot Act requires, under threat of private civil litigation. This Plaintiff cannot do. Credco respectfully requests that its motion to dismiss be granted.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED
COMPLAINT

Case No. 20-cv-1262-JM-AGS

1  Dated: November 23, 2020                HUESTON HENNIGAN LLP
2
3                                          By: _____
4                                              Moez M. Kaba
                                               Josh Burk
5                                              Abigail Majane
                                               *Attorneys for Defendant*
6                                              *CoreLogic Credco, LLC*
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 11 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED
COMPLAINT                                                       Case No. 20-cv-1262-JM-AGS