Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Josh Burk, State Bar No. 313869
jburk@hueston.com
Abigail Majane, State Bar No. 330347
amajane@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Defendant*
*CoreLogic Credco, LLC*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO A. FERNANDEZ, individually and as a representative of the class,<br><br>Plaintiff,<br><br>vs.<br><br>CORELOGIC CREDCO, LLC,<br><br>Defendant. | Case No. 20-cv-1262-JM-AGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPOR TOF DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING THE SUPREME COURT'S DECISION IN *TRANSUNION LLC V. RAMIREZ***<br><br>Judge: Honorable Jeffrey T. Miller<br><br>Hearing Date: February 8, 2021<br>Time: 10:00 a.m.<br>Courtroom: 5D<br><br>Action filed: June 2, 2020<br>F.A.C. filed: Sept. 28, 2020 |

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 5 |
| II. BACKGROUND | 7 |
|     A. The *Ramirez* Action | 7 |
|     B. Plaintiff's Complaint | 9 |
| III. LEGAL STANDARD | 11 |
| IV. ARGUMENT | 12 |
|     A. THE COURT SHOULD STAY THIS ACTION BECAUSE RAMIREZ WILL HAVE A SUBSTANTIAL IMPACT ON THIS CASE | 12 |
|     B. ALL THREE LANDIS FACTORS WEIGH IN FAVOR OF STAYING THIS ACTION | 15 |
|         1. Staying This Action Will Not Significantly Damage Plaintiff | 15 |
|         2. If the Court Does Not Stay This Action, Credco Will Likely Suffer Hardship or Inequity in Unnecessary Litigation Expenses | 16 |
|         3. Staying This Action Serves the Interests of Justice Because It Will Simplify the Issues, Proof and Questions of Law in This Case | 18 |
| VI. CONCLUSION | 19 |

**Cases**

*CMAX, Inc. v. Hall*
    300 F.2d 265 (9th Cir. 1962) .................................................................. 7, 11

*Cook v. Rent-A-Ctr., Inc.*
    2017 WL 4270203 (E.D. Cal. Sept. 26, 2017) .............................................. 13

*Gabriella v. Wells Fargo Fin., Inc.*
    2009 WL 188856 (N.D. Cal. Jan. 26, 2009) .................................................. 14

*Gustavson v. Mars, Inc.*
    2014 WL 6986421 (N.D. Cal. Dec. 10, 2014) ........................................ 14, 15

*Hartranft v. TVI, Inc.*
    2015 WL 13847485 (C.D. Cal. Nov. 16, 2015) ............................................ 13

*Hernandez v. San Gabriel Temp. Staffing Servs., LLC*
    2018 WL 1582914 (N.D. Cal. Apr. 2, 2018) ................................ 6, 13, 17, 18

*Krejci v. Cavalry Portfolio Servs., LLC*
    2018 WL 3533246 (S.D. Cal. July 23, 2018) ....................................... 6, 11, 17

*Landis v. N. Am. Co.*
    299 U.S. 248 (1936) ............................................................................... passim

*Larroque v. First Advantage Lns Screening Sols., Inc.*
    2016 WL 39787 (N.D. Cal. Jan. 4, 2016) ......................................... 15, 17, 18

*Leyva v. Certified Grocers of Cal., Ltd.*
    593 F.2d 857 (9th Cir. 1979) .................................................................. 11, 15

*Matera v. Google Inc.*
    2016 WL 454130 (N.D. Cal. Feb. 5, 2016) .................................. 6, 13, 15, 17

*Mazza v. Am. Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012) ......................................................................... 14

*McElrath v. Uber Techs., Inc.*
    2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) ........................................ 13, 15

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*
    708 F.2d 1458 (9th Cir. 1983) ................................................................. 7, 15

*Meijer, Inc. v. Abbott Labs.*
  2009 WL 723882 (N.D. Cal. Mar. 18, 2009) .................................................. 18

*Nguyen v. Marketsource, Inc.*
  2018 WL 2182633 (S.D. Cal. May 11, 2018) .......................................... 12, 18

*NGV Gaming, Ltd. v. Harrah's Operating Co.*
  2008 WL 4951587 (N.D. Cal. Nov. 18, 2008) ................................................ 14

*Provo v. Rady Children's Hosp.-San Diego*
  2015 WL 6144029 (S.D. Cal. July 29, 2015) .................................... 12, 16, 18

*Ramirez v. TransUnion LLC*
  951 F.3d 1008 (9th Cir. 2020) ................................................................ passim

*Robledo v. Randstad US, L.P.*
  2017 WL 4934205 (N.D. Cal. Nov. 1, 2017 ....................................... 7, 17, 18

*Rodriguez v. Cleansource, Inc.*
  2015 WL 12434307 (S.D. Cal. Feb. 26, 2015) ........................................ 14, 16

*San Diego Padres Baseball P'ship v. United States*
  2001 WL 710601 (S.D. Cal. May 10, 2001) ............................................... 7, 11

*Spokeo, Inc. v. Robins*
  575 U.S. 982 (2015) ...................................................................................13, 18

*United States v. Augustine*
  712 F.3d 1290 (9th Cir. 2013) ......................................................................... 6

**<u>Statutes</u>**

15 U.S.C. § 1681 ................................................................................................... 5

Cal. Civ. Code § 1785 ........................................................................................... 8

- 4 -

DEFENDANT'S MOTON TO STAY ALL
FURTHER PROCEEDINGS                               Case No. 20-cv-1262-JM-AGS

# MEMORANDUM OF LAW AND POINTS OF AUTHORITIES

## I. INTRODUCTION

Credco requests that this Court stay further proceedings in this action pending the Supreme Court's review of the Ninth Circuit's opinion in *Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). In *Ramirez*, a divided panel of the Ninth Circuit held that, in the context of FCRA claims, similar to those asserted here, "a material risk of harm to the concrete interests of all class members" was sufficient injury-in-fact to confer Article III standing. *Id.* at 1027. The Ninth Circuit thus allowed a class of individuals who had suffered no actual injury but only vague and conclusory procedural harms to proceed with their claims.

TransUnion LLC petitioned the United States Supreme Court for a writ of certiorari, seeking to reverse the Ninth Circuit's erroneous opinion. On December 16, 2020, the petition was granted on the following question:

> Whether either Article III or Rule 23 permits a damages class action where the vast majority of the class suffered no actual injury, let alone an injury anything like what the class representative suffered.

Declaration of Josh Burk ("Burk Decl."), Exhibit A at i (Petition for Writ of Certiorari); *TransUnion LLC v. Ramirez*, No. 20-297, 2020 WL 7366280 (U.S. Dec. 16, 2020).

On its face, the Supreme Court's decision will directly impact the case at bar. Plaintiff Marco Fernandez seeks to represent a putative class of "thousands" of class members for an alleged procedural violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*; *see* Dkt. No. 14, First Amended Complaint ("FAC") ¶ 59. Plaintiff's case is virtually identical to the facts presented in *Ramirez*. If the Supreme Court reverses *Ramirez*, it will dramatically change the scope of Plaintiff's purported nationwide class claims and, indeed, may call into question Plaintiff's own Article III standing.

No matter the outcome of the Supreme Court's decision, the Supreme Court's treatment of the claims at issue will provide essential guidance to adjudicating this case. *See United States v. Augustine*, 712 F.3d 1290, 1295 (9th Cir. 2013) (following the Supreme Court's dictum in analyzing the Fair Sentencing Act of 2010); *Matera v. Google Inc.*, 2016 WL 454130, at *3 (N.D. Cal. Feb. 5, 2016) ("[T]he U.S. Supreme Court's decision . . . is likely to be instructive in this case, regardless of whether it is formally controlling or directly addresses [the statutes at issue]."); *Krejci v. Cavalry Portfolio Servs., LLC*, 2018 WL 3533246, at *3 (S.D. Cal. July 23, 2018) (similar). For example, the Supreme Court's decision in *Ramirez* will address Article III standing to sue under the "reasonable procedures" requirement of section 1681e(b) of the FCRA, specifically for a credit reporting agency's matching of consumers to the Office of Foreign Assets Control's list of Specially Designated Nationals and Blocked Persons ("OFAC list"). *See Ramirez*, 951 F.3d at 1024. The Supreme Court will also address standing to sue under the "disclosure" requirement of section 1681g(a), specifically for a disclosure "that purported to be their entire credit report, [yet] contain[ed] no mention of OFAC." *Id.* at 1030. Plaintiff here seeks to represent a putative class under both these provisions for similar conduct related to OFAC.

As no discovery has begun, Plaintiff will not suffer prejudice from a temporary stay—in fact, a stay will likely prevent wasted effort on fact discovery and class certification issues that may be mooted, or at least, re-tooled by the Supreme Court's holding. *See Matera*, 2016 WL 454130, at *4 (noting that "considerable resources on discovery and briefing . . . may be wasted if [the Supreme Court] ultimately requires dismissal (or modification) of Plaintiff's Complaint"). Similarly, the outcome of *Ramirez* will impact Credco's pending motion to dismiss, which may have to be re-briefed after the Supreme Court's ruling. *Hernandez v. San Gabriel Temp. Staffing Servs., LLC*, 2018 WL 1582914, at *9 (N.D. Cal. Apr. 2, 2018) ("Ultimately, it would prove to be an extraordinary waste of time and money to continue litigating this case

only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the Supreme Court determined did not apply.") (quoting *Robledo v. Randstad US, L.P.*, 2017 WL 4934205, at *5 (N.D. Cal. Nov. 1, 2017)) (cleaned up).

As the resolution of *Ramirez* will have a "direct impact" on this case, a stay here is appropriate to avoid inefficient, wasteful, and unnecessary proceedings for the parties and the Court. *See San Diego Padres Baseball P'ship v. United States*, 2001 WL 710601, at *1 (S.D. Cal. May 10, 2001) (citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)). Credco respectfully requests that the Court issue a temporary stay of proceedings in this matter pending the Supreme Court's decision in *TransUnion LLC v. Ramirez*, pursuant to its "inherent power to control the disposition of the [cases] on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).[1]

## II. BACKGROUND

### A. The *Ramirez* Action

In *Ramirez*, the plaintiff, Sergio Ramirez, attempted to purchase a vehicle with his wife but was denied when the car dealership conducted a credit check, because Mr. Ramirez was flagged as having "matched" a person on the OFAC list. *Ramirez*, 951 F.3d at 1017. The salesman refused to sell Mr. Ramirez the car, and instead, sold the vehicle directly to his wife. *Id.* Ramirez was "embarrassed, shocked, and scared" about learning his name being matched to someone on the OFAC list. *Id.* at 1018.

---

[1] On December 18, 2020, Defendant contacted Plaintiff to request the filing of a joint motion to stay this matter in light of the Supreme Court's grant of the petition for certiorari in *TransUnion LLC v. Ramirez*. On December 21, 2020, Plaintiff informed Defendant that he did not agree to join such a motion.

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTON TO STAY
ALL FURTHER PROCEEDINGS                                  Case No. 20-cv-1262-JM-AGS

Ramirez requested his credit report from TransUnion, the agency that provided the OFAC match to the vehicle dealership. *Id.* When Ramirez received his credit report from TransUnion, the report did not state whether Ramirez was a possible match on the OFAC list. The next day, however, Ramirez received a second disclosure from TransUnion, notifying him that the name on his credit profile "is considered a potential match" to information on the OFAC list. *Id.* at 1018–19.

On these facts, Ramirez sued TransUnion in a putative class action lawsuit under both the FCRA and the California Consumer Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 *et seq.* As pertinent to this motion, Ramirez sought to represent a nationwide class under section 1681g(a) for TransUnion's OFAC disclosures:

> All persons residing in the United States and its Territories who . . . had a consumer report sold about them by Trans Union, which included any OFAC record, and to whom Trans Union subsequently sent a file disclosure substantially similar in form to the February 28, 2011 file disclosure from Defendant to Plaintiff . . . .

Burk Decl., Exhibit 2 at 12 (Ramirez Complaint). Separately, Ramirez sought to represent a nationwide class under section 1681e(b) for TransUnion's OFAC matching procedures:

> All persons residing in the United States and its Territories with the first name "Sergio" and the last name "Ramirez" who . . . had a consumer report sold about them by Trans Union which included an OFAC record . . . .

*Id.* at 13–14.

The district court certified the class, which comprised 8,185 consumers, but only 1,853 of those consumers had their credit reports requested by any potential credit grantor during the class period. *Ramirez*, 951 F.3d at 1022. The case went to trial, and a jury found in favor of Ramirez, awarding each class member $984.22 in statutory
- 8 -
DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTON TO STAY
ALL FURTHER PROCEEDINGS                                    Case No. 20-cv-1262-JM-AGS

damages (about $8 million total) and $6,353.08 in punitive damages (about $52 million total). *Id.*

TransUnion appealed the decision to the Ninth Circuit, arguing, *inter alia*, that class members lacked Article III standing for lack of any real injury in fact. *Id.* at 1022–30. The Ninth Circuit rejected this argument for both sections 1681e(b) and 1681g(a). With regard to section 1681e(b) standing, the Ninth Circuit concluded that all class members "suffered a material risk of harm to their concrete interests" under the FCRA because of TransUnion's matching procedures, *id.* at 1025, including those class members whose information was never seen by a third party, *id.* at 1027. With regard to section 1681g(a) standing, the Ninth Circuit found the disclosures at issue "put every class member at a risk of real harm: not knowing that they were falsely being labeled as terrorists, drug dealers, and threats to national security." *Id.* at 1030.

Judge McKeown concurred in part with the majority in that she agreed that 1,853 class members whose OFAC match had been disclosed to a third party had standing to assert a claim under section 1681e(b). *See id.* at 1038 (McKeown, J., concurring in part). She disagreed, however, that Article III standing existed for the other class members on any other claim. *See id.* at 1041 ("At trial, class members lacking a constitutionally cognizable injury should not have been permitted to recover damages, yet TransUnion now owes 8,185 class members tens of millions of dollars based on the unfortunate and unrepresentative experience of a single plaintiff.").

**B.  Plaintiff's Complaint**

The facts alleged in plaintiff Fernandez's complaint in this case are strikingly similar to those at issue in *Ramirez*. Plaintiff alleges that, after applying for a mortgage, he learned Credco had informed the mortgage lender that he was a possible

match to a person on the OFAC list. FAC ¶ 3–4. Unlike Ramirez, however, Plaintiff does not allege he was denied credit or otherwise suffered economic harm as a result.

Tellingly, in February 2020 (the same month that the Ninth Circuit issued its opinion in *Ramirez*), Plaintiff (through his lawyers) requested his "consumer file and any consumer reports" from Credco. *See* FAC ¶ 44. Not long thereafter, Plaintiff—a resident of Maryland—sued Credco in California, ostensibly to take advantage of both the statutory damages under the CCRAA and the Ninth Circuit's expansive FCRA precedent. *See* FAC ¶ 1.

Plaintiff's class claims are dramatically more expansive than those at issue in *Ramirez* but relate to identical sections of the FCRA and near-identical conduct. Pursuant to section 1681e(b) of the FCRA, Plaintiff seeks to represent the following class:

> All individuals who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

FAC ¶ 57 ("Inaccurate Reporting FCRA Subclass"). Pursuant to section 1681g(a), Plaintiff seeks to represent the following class:

> All individuals (1) who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not disclose the OFAC/SDN information. The class period is all persons who made requests to Defendant in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

- 10 -

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTON TO STAY
ALL FURTHER PROCEEDINGS                                    Case No. 20-cv-1262-JM-AGS

*Id.* ("Failure to Disclose Class"). No discovery has taken place. The parties await the Court's decision on Credco's Motion to Dismiss Plaintiff's First Amended Complaint, which requests dismissal of all claims except for the two at issue in *Ramirez*, which are pursuant to sections 1681e(b) and 1681g(a) of the FCRA. Credco did not move to dismiss those claims only because of the Ninth Circuit's ruling in *Ramirez* and in fact noted in its Motion to Dismiss that Credco will challenge standing for Plaintiff's section 1681e(b) and 1681g(a) claims, should the Supreme Court overrule *Ramirez*. *See* Dkt. No. 15-1 at 25 n. 10.

## III. LEGAL STANDARD

This Court has the inherent power "to control the disposition of [cases] on its docket with economy of time and effort for itself, for counsel, and for litigants." *San Diego Padres Baseball P'ship*, 2001 WL 710601, at *1 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Pursuant to this power, the Court may stay proceedings "pending resolution of independent proceedings which bear upon the case" regardless of whether "the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979). In determining whether a stay is appropriate, courts consider three factors as enumerated in *Landis*:

> [1] the possible damage which may result from the granting of a stay,
>
> [2] the hardship or inequity which a party may suffer in being required to go forward, and
>
> [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc.*, 300 F.2d at 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). "The existence of another proceeding that may have a *substantial impact* on a pending case

is a particularly compelling reason to grant a stay." *Krejci*, 2018 WL 3533246, at *3 (citation omitted) (emphasis in original).

## IV. ARGUMENT

### A. THE COURT SHOULD STAY THIS ACTION BECAUSE *RAMIREZ* WILL HAVE A SUBSTANTIAL IMPACT ON THIS CASE

The Supreme Court granted the petition for writ of certiorari in *Ramirez* on the question of whether Article III or Rule 23 permits a damages class action for putative class members who received a possible "match" on the OFAC list under the FCRA. As this directly relates to Plaintiff's nearly-identical claims, the Supreme Court's decision will have significant impact on this case. *See Provo v. Rady Children's Hosp.-San Diego*, 2015 WL 6144029, at *1 (S.D. Cal. July 29, 2015) (Miller, J.) ("The question presented . . . is nearly identical to the issue of standing in this court.").

The guidance provided by *Ramirez* will affect the analysis both for Plaintiff's own Article III standing and for class certification under the FCRA. Whether Plaintiff has standing at all is a predicate to this Court's jurisdiction; and if there is jurisdiction, the viability of Plaintiff's claims proceeding as a class action is critically important to both the scope of discovery and the ultimate recovery available. District courts consistently stay actions where the outcome of a case pending review will influence the result of the case at bar. Here, where *Ramirez* relates so directly to Plaintiff's case, the reasons for a stay are even more compelling.

For example, in *Nguyen v. Marketsource, Inc.*, 2018 WL 2182633 (S.D. Cal. May 11, 2018) (Miller, J.), the district court stayed a putative class action pending the outcome of a Supreme Court decision that would determine the enforceability of an arbitration provision pursuant to the Federal Arbitration Act. Like this case, discovery had yet to commence in *Nguyen*, and the court agreed that there would be a concrete harm to force the defendant to "engage in collective and class action discovery, which

would be a waste of time and resources pending the outcome of" the Supreme Court's decision, *id.* at *6:

> Engaging in collective and class action discovery, not to mention handling disputes over conditional certification, potential class members, and the merits of the collective/class action allegations themselves, will require substantial effort on the part of all concerned, efforts that may well be unnecessary depending on the Supreme Court's ultimate decision . . . .

*Id.* (quoting *Cook v. Rent-A-Ctr., Inc.*, 2017 WL 4270203, at *4 (E.D. Cal. Sept. 26, 2017)); *accord Hernandez*, 2018 WL 1582914, at *9; *McElrath v. Uber Techs., Inc.*, 2017 WL 1175591, at *6 (N.D. Cal. Mar. 30, 2017).

Similarly, in *Matera v. Google Inc.*, 2016 WL 454130, the district court granted a stay of a putative class action at the motion to dismiss stage pending the Supreme Court's decision regarding Article III standing in *Spokeo, Inc. v. Robins*, 575 U.S. 982 (2015). The *Matera* court granted a stay despite *Spokeo* involving a different statute with a different statutory injury. *Id.* at *3 (granting stay "because regardless of which path the U.S. Supreme Court ultimately takes, *Spokeo* may provide substantial guidance as to what statutory violations (if any) confer Article III standing"). And, as no discovery had taken place and only motions to dismiss had been filed, the district court concluded that exercising discretion to stay the case was "appropriate" notwithstanding any claimed prejudice to plaintiff. *Id.* at *5; *see also Hartranft v. TVI, Inc.*, 2015 WL 13847485, at *2 (C.D. Cal. Nov. 16, 2015) ("But *Spokeo* goes not to the merits of this case, but the jurisdictional question whether this Court can even hear this case in the first place. The prospect—however uncertain—of the parties and Court engaging in costly litigation over the next few months, only to have the jurisdictional

rug pulled out from under them by a Supreme Court ruling, counsels for a stay."). Those same circumstances are present here.[2]

A stay is particularly appropriate here where Plaintiff seeks to certify multiple nationwide classes which may contain members who lack Article III standing. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("No class may be certified that contains members lacking Article III standing."). The Supreme Court's decision as to whether class members have Article III standing for their allegedly wrongful match to the OFAC list is necessary for this Court's certification analysis. In *Gustavson v. Mars, Inc.*, 2014 WL 6986421 (N.D. Cal. Dec. 10, 2014), the district court granted a stay because "the need to re-brief class certification and potentially re-open discovery would involve a significant expenditure of time and resources" if the landscape of class certification changed based on a pending case before the Ninth Circuit. *Id.* at *3. "Whether the Court grants or denies any class certification motion, the decision [by the Ninth Circuit] is likely to prompt further briefing as to whether any certified class should be decertified, or whether a class should be newly certified." *Id.*; *see also Gabriella v. Wells Fargo Fin., Inc.*, 2009 WL 188856, at *1 (N.D. Cal. Jan. 26, 2009) ("If the [California] Supreme Court holds that meal and rest period claims may proceed on a class basis, plaintiffs will seek reconsideration of the Court's order denying class certification. While there may be some discovery that can proceed during the stay, the Court largely agrees with plaintiffs that the [Supreme Court's]

---

[2] District courts have even granted stays where the petition for writ of certiorari was still pending (whereas here it has been granted). *See, e.g.*, *Rodriguez v. Cleansource, Inc.*, 2015 WL 12434307, at *4 (S.D. Cal. Feb. 26, 2015) (granting stay pending the Supreme Court's review of the petition because the issues in the petition mirrored those before the district court); *see also NGV Gaming, Ltd. v. Harrah's Operating Co.*, 2008 WL 4951587, at *1 (N.D. Cal. Nov. 18, 2008) (same).

- 14 -

decision will affect the scope of discovery."). Here too, Plaintiff's class claims, and his own, are dependent upon the standard provided by the Supreme Court's decision, and any litigation efforts would be moot or need significant revision to the extent they are affected by the outcome of *Ramirez*.

Therefore, this Court should follow the long line of cases staying proceedings similarly situated because doing so "is efficient for its own docket and the fairest course for the parties." *Larroque v. First Advantage Lns Screening Sols., Inc.*, 2016 WL 39787, at *1 (N.D. Cal. Jan. 4, 2016) (quoting *Leyva*, 593 F.2d at 863).

### B. ALL THREE *LANDIS* FACTORS WEIGH IN FAVOR OF STAYING THIS ACTION

Under the three-factor framework provided in *Landis*, 299 U.S. at 254–55, the district court may stay an action pending the resolution of a proceeding that would bear upon the case at bar. *See Mediterranean Enters., Inc.*, 708 F.2d at 1465 (citing *Leyva*, 593 F.2d at 863–64). All three factors weigh in favor of granting a stay here.

#### 1. Staying This Action Will Not Significantly Damage Plaintiff

Plaintiff will not be injured if the case is temporarily stayed. As evidenced by his First Amended Complaint—and described more fully in Credco's Motion to Dismiss (Dkt. 15)—Plaintiff has yet to plead any economic or financial harms caused by Credco's allegedly wrongful conduct. Moreover, the alleged "shock" or "emotional distress" that Plaintiff does allege will not be aggravated by the delay. Not even the "concern that the inaccurate reporting could recur," *see* FAC ¶ 12, can amount to the necessary "possible damage" under the *Landis* factors. *Matera*, 2016 WL 454130, at *4 (noting the insufficiency of possible recurring harm where "'Plaintiff has not moved for a preliminary injunction, and any prospective injunctive relief is unlikely to be addressed by this Court' before the U.S. Supreme Court issues a decision") (quoting *Gustavson*, 2014 WL 6986421, at *3).

Even if Plaintiff were entitled to any monetary recovery (he is not), "the Ninth Circuit has held monetary recovery cannot serve as the foundation to deny a stay." *McElrath*, 2017 WL 1175591, at *5. Moreover, a stay would not result in an indefinite delay of any such recovery. The customary timeline for the Supreme Court to adjudicate a petition is an appropriate schedule as to not cause any prejudice. *See Provo*, 2015 WL 6144029, at *2 ("The Supreme Court is likely to issue a decision within one year and neither party will be significantly prejudiced by a less than one year delay."); *accord McElrath*, 2017 WL 1175591, at *5–6.

Further, this case is in the early stages of litigation. No discovery has been conducted. Plaintiff will not be harmed by waiting for the Supreme Court to provide guidance on his claims before expending significant resources on discovery efforts. This guidance—even if the Supreme Court affirms *Ramirez*—will bear upon the scope of the case and provide for a more efficient use of resources. A stay may also result in a faster final resolution of this case, as it would eliminate time-consuming appeals, reconsideration requests, and other re-litigation that could ensue related to the Supreme Court's decision. *See Rodriguez*, 2015 WL 12434307, at *4 ("If this Court reaches conclusions contrary to those reached by the Supreme Court, it would result in significant confusion and would likely extend litigation in order to address the inconsistent decisions.").

Neither Plaintiff, nor his putative class, will be prejudiced by waiting for the Supreme Court's decision in *Ramirez*. To the contrary, allowing the parties to wait for a ruling will allow this Court and the parties to proceed in a well-informed manner, thereby saving resources and effort. Thus, the first *Landis* factor favors a stay.

### 2. If the Court Does Not Stay This Action, Credco Will Likely Suffer Hardship or Inequity in Unnecessary Litigation Expenses

*Ramirez* will guide this Court's analysis of whether Plaintiff or purported class members have standing under either Article III or Rule 23. As Credco cannot know

exactly what standard the Supreme Court will apply, Credco will suffer hardship in attempting to defend against Plaintiff's action. Plaintiff and Credco will both expend resources in building a factual record related to standing and class certification, but this burden will fall largely on Credco.

This is especially true for purportedly nationwide class discovery. If this case were to proceed without the Supreme Court's guidance, Credco may need to undertake expensive and laborious discovery efforts related to its practices. These efforts and resources would be unnecessary if the Supreme Court determines that such class claims cannot be brought under the FCRA.[3] Such a ruling will affect motions to dismiss, discovery and related motions, and other proceedings in this Court. These facts are "considerable" where, as here, absent a stay Credco "would be required to defend a large class action and undergo discovery which could be rendered moot if the Supreme Court reverses the Ninth Circuit." *Hernandez*, 2018 WL 1582914, at *9 (quoting *Robledo*, 2017 WL 4934205, at *4); *see also Larroque*, 2016 WL 39787, at *2 ("Defendant will suffer significant hardship if the case is not stayed because it will be required to defend a large putative class action—engaging in expansive discovery and possibly class certification briefing—that may be rendered moot and unnecessary . . . ."). Under these circumstances, this *Landis* factor weighs in favor of a stay.

---

[3] Additionally, an Article III ruling in *Ramirez* may call into question whether Plaintiff or putative class members have standing to bring any CCRAA claims. *See Matera*, 2016 WL 454130, at *3 (granting stay pending Article III decision regarding separate statute, with separate statutory harm).

### 3. Staying This Action Serves the Interests of Justice Because It Will Simplify the Issues, Proof and Questions of Law in This Case

District courts consistently find that the interests of justice weigh in favor of a stay where the issues awaiting resolution may substantially impact the outcome of the case at bar. *See, e.g.*, *Krejci*, 2018 WL 3533246, at *3 (when a pending case "will certainly have a substantial impact," the third *Landis* factor "weighs strongly in favor of a stay"); *Robledo*, 2017 WL 4934205, at *4 ("This factor clearly weighs in favor of granting a stay because the decision [by the Supreme Court] could be dispositive of whether Plaintiffs' claims should be litigated or arbitrated."); *Larroque*, 2016 WL 39787, at *2 ("Because the *Spokeo* decision is squarely on point, the orderly course of justice likewise weighs in favor of a stay."). Staying this case pending the resolution of *Ramirez* will promote the orderly course of justice.

As described above, *Ramirez* presents questions of standing and class certification directly relevant to Plaintiff's claims. "[A] stay of this action will potentially streamline this case by identifying controlling legal principles, and identifying the scope of discovery." *Provo*, 2015 WL 6144029, at *2. Once *Ramirez* is decided, this Court will be better empowered to analyze the issues, identify the appropriate scope of any remaining claims and discovery, and articulate the appropriate legal standards. Without a stay, re-litigation of certain issues is a virtual certainty. Plaintiff may seek to amend his class claims in light of the Supreme Court's guidance, or class certification may require an additional round of briefing. Thus, a stay would prevent duplication and "conserve judicial resources that might otherwise be unnecessarily expended litigating issues in this Court." *Hernandez*, 2018 WL 1582914, at *9. As Article III standing is at issue, "[j]udicial resources also may be unnecessarily expended reviewing the adequacy of the pleadings, resolving discovery disputes, and considering class certification in a case that the Court may not have subject matter jurisdiction to entertain." *Larroque*, 2016 WL 39787, at *2; *see also*

*Nguyen*, 2018 WL 2182633, at *7 ("Indeed, it would prove to be 'an extraordinary waste of time and money' to continue litigating this case 'only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the [Supreme Court] determined did not apply.'") (quoting *Meijer, Inc. v. Abbott Labs.*, 2009 WL 723882, at *4 (N.D. Cal. Mar. 18, 2009)); *see also* Dkt. No. 15-1 at 25 n. 10 (expressing Defendant's intention to challenge Plaintiff's standing if *Ramirez* is reversed). Thus, the third and final *Landis* factor weighs in favor of granting a stay.

## VI. CONCLUSION

Because the Supreme Court's decision in *Ramirez* bears directly on this case, and all three *Landis* factors weigh in favor of this Court exercising its inherent power to promote the economy of time and effort, Credco respectfully requests that this Court stay all proceedings in this action until the resolution of *Ramirez*.

Dated: January 8, 2021

HUESTON HENNIGAN LLP

By: /s/ Moez M. Kaba
Moez M. Kaba
Josh Burk
Abigail Majane
*Attorneys for Defendant*
*CoreLogic Credco, LLC*