Sophia Rios (SBN 305801)
**BERGER MONTAGUE PC**
401 B Street, Suite 2000
San Diego, CA 92101
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

John G. Albanese, MN Bar No. 0395882*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5999
Fax: (612) 584-4470
jalbanese@bm.net
**pro hac vice*

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Marco A. Fernandez, individually and as a representative of the class,

Plaintiff,

v.

CoreLogic Credco, LLC,

Defendant.

Case No. 3:20-cv-1262-JM-AGS

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Judge: Hon. Jeffrey T. Miller
Hearing Date: September 20, 2021
Time: 10:00 a.m.
Courtroom: 5D

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTS ........ 4

III. ARGUMENT ........ 6

A. Plaintiff has Article III Standing ........ 6

1. Plaintiff did not invite publication of Defendant's inaccurate reporting, and invitation to publication is not a defense to Plaintiff's claims ........ 8

2. Plaintiff has standing for the disclosure and identification claims ........ 10

3. Dismissal is the wrong remedy for a lack of standing ........ 12

B. California Law Can be Applied ........ 13

C. Defendant's Choice-of-Law Analysis is Premature and Flawed ........ 15

1. Choice-of-law analysis at this stage is premature ........ 15

2. There are no material conflicts between Maryland and California consumer reporting laws ........ 16

3. California law should be applied ........ 18

D. The CCRAA Is Not Limited to Consumers with California Mailing Addresses ........ 21

E. Plaintiff Has Plausibly Alleged Actual Damages under the CCRAA ........ 23

F. Plaintiff Has Plausibly Alleged Standing under the UCL ........ 24

IV. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

Cases

*Abogados v. AT&T, Inc.*, 223 F.3d 932 (9th Cir. 2000) .......... 18
*Aho v. AmeriCredit Fin. Servs., Inc.*, 2011 WL 2292810 (S.D. Cal. June 8, 2011) 25
*Ausherman v. Bank of Am. Corp.*, 352 F.3d 896 (4th Cir. 2003) .......... 17
*Benton v. Clarity Servs., Inc.*, 2017 WL 345583 (N.D. Cal. Jan. 24, 2017) .......... 13
*Burnthorne-Martinez v. Sephora USA, Inc.*, 2016 WL 6892721 (N.D. Cal. Nov. 23, 2016) .......... 24
*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010) .......... 23
*Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562 (7th Cir. 2021) .......... 7
*In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224 (N.D. Cal. 2012) .......... 14
*Clay v. CytoSport, Inc*., 2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) .......... 20
*Clothesrigger, Inc. v. GTE Corp*., 236 Cal. Rptr. 605 (1987) .......... 14, 20
*Collazo v. Wen by Chaz Dean, Inc*., 2015 WL 4398559 (C.D. Cal. July 17, 2015) .......... 13, 14
*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) .......... 1
*Dahy v. FedEx Ground Pkg. Sys., Inc*., 2018 WL 6930263 (W.D. Pa. Nov. 2, 2018) .......... 13
*Ehret v. Uber Techs., Inc*., 68 F. Supp. 3d 1121 (N.D. Cal. 2014) .......... 14
*Estate of Saunders v. Comm'r*, 745 F.3d 953 (9th Cir. 2014) .......... 25
*Fehrenbach v. Hewlett Packard Co*., 2017 WL 11422106 (S.D. Cal. Jan. 5, 2017) .......... 15
*Forcellati v. Hyland's Inc*., 876 F. Supp. 2d 1155 (C.D. Cal. 2012) .......... 13, 14
*Foskaris v. Experian Info. Sols., Inc*., 808 F. App'x 436 (9th Cir. 2020) .......... 12
*Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) .......... 15
*Gadomski v. Patelco Credit Union*, 2020 WL 1433138 (E.D. Cal. Mar. 24, 2020) .......... 24

*Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212 (E.D. Cal. 2019) 19, 20
*Greenwood v. Trans Union, LLC*, 2021 WL 3516666 (N.D. Iowa Aug. 10, 2021) 11
*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) 23
*Hernandez v. Burger*, 162 Cal. Rptr. 564 (1980) 18
*In re iPhone 4S Consumer Litig.*, 2013 WL 3829653 (N.D. Cal. July 23, 2013) 14
*Jasmine Networks, Inc. v. Superior Court*, 103 Cal. Rptr. 3d 426 (2009) 12
*King v. Bank of Am., N.A.*, 2012 WL 4685993 (N.D. Cal. Oct. 1, 2012) 24, 25
*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) 10
*Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049 (7th Cir. 2019) 11
*Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997 (9th Cir. 2001) 12, 13
*Levinson v. Transunion LLC*, 2016 WL 3135642 (C.D. Cal. June 2, 2016) 24
*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) 13, 15, 18, 19, 20
*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) 13
*Moreland v. Corelogic Saferent LLC*, 2015 WL 12659910 (C.D. Cal. Mar. 31, 2015) 24
*Nat'l Paint & Coatings Assn. v. State of Cal.*, 68 Cal. Rptr. 2d 360 (1997) 12
*In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014) 4
*Patel v. Trans Union, LLC*, 2016 WL 6143191 (N.D. Cal. Oct. 21, 2016) 7
*People v. Rodriguez*, 377 P.3d 832 (2016) 21
*Poinsignon v. Imperva, Inc.*, 2018 WL 1709942 (N.D. Cal. Apr. 9, 2018) 23
*Polo v. Innoventions Int'l, Inc.*, 833 F.3d 1193 (9th Cir. 2016) 12
*Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020) 23
*Ramones v. Experian Info. Sols.*, 2021 WL 4050874 (S.D. Fla. Sept. 4, 2021) 9, 10
*Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) 10
*Rubio v. Cap. One Bank*, 613 F.3d 1195 (9th Cir. 2010) 25
*Sanchez v. Servis One*, 2019 WL 2373565 (S.D. Cal. June 4, 2019) 23

*Schepler v. Am. Honda Motor Co.*, 2019 WL 398000 (C.D. Cal. Jan. 29, 2019) ..... 15
*Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749 (9th Cir. 2018) ..... 19
*In re Tobacco II Cases*, 207 P.3d 20 (2009) ..... 21
*Toor v. Lynch*, 789 F.3d 1055 (9th Cir. 2015) ..... 21, 22
*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ..... *passim*
*Valencia v. Volkswagen Grp. of Am. Inc.*, 2015 WL 4760707 (N.D. Cal. Aug. 11, 2015) ..... 15
*White v. Trans Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) ..... 25
*Yost v. Forestiere*, 265 Cal. Rptr. 3d 175 (2020) ..... 21

Rules & Statutes

Article III, U.S. Constitution ..... *passim*
15 U.S.C. § 1681, *et seq.* ..... *passim*
28 U.S.C. § 1447, *et seq.* ..... 3, 12
31 C.F.R. § 544.201 ..... 25
Fed. R. Civ. P. 9 ..... 25
Cal. Bus. & Prof. Code § 17200, *et seq.* ..... *passim*
Cal. Civ. Code § 1785, *et seq.* ..... *passim*
Md. Code Com. Law § 14-1200, *et seq.* ..... 17, 18

## I. INTRODUCTION

For over a decade, courts and juries have condemned consumer reporting agencies using automated name-only matching procedures to label consumers as being terrorists and drug traffickers included on the Office of Foreign Asset Control's Specially Designated Nationals List ("OFAC/SDN List"). In 2010, the Third Circuit found that mismatching individuals to the OFAC/SDN List based on name-only matching, failing to reinvestigate disputes of matches, and failing to include the reported OFAC/SDN information on consumers' copies of their own reports constituted violations of the Fair Credit Reporting Act ("FCRA"). *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010). In 2017, a jury awarded $60 million to a class of persons who had been mismatched to the OFAC/SDN list using name-only matching. The Ninth Circuit and the Supreme Court upheld the verdict with respect to class members – like Plaintiff here – about whom false OFAC/SDN information was transmitted to third parties. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

Despite court decisions finding name-only OFAC/SDN matching to be illegal, Defendant CoreLogic Credco, LLC ("Defendant") has refused to update its procedures. Defendant falsely reported Plaintiff Marco Fernandez ("Plaintiff") as a possible match to "Mario Alberto Fernandez Santana" born in May 1977, a member of the Flores drug trafficking operation, with an address in Zapopan, Jalisco, Mexico. Plaintiff is not named Mario Alberto Fernandez Santana, was not born in 1977, and has never lived in Mexico. To the contrary, Plaintiff is a sixteen-year veteran of the United States Navy, with a Top Secret security clearance. Defendant knew that Plaintiff's data did not match the data of the drug trafficker to whom he was matched, yet Defendant failed to take rudimentary measures to prevent its false reporting.

In this putative nationwide class action, Plaintiff has brought claims under the FCRA, the California Consumer Credit Reporting Agencies Act ("CCRAA"), and

the California Unfair Competition Law ("UCL"). (First Amended Complaint ("FAC"), ECF No. 14.) Defendant asks the Court to dismiss all but one of Plaintiff's claims. (Def.'s Motion to Dismiss ("MTD" or "Motion"), ECF No. 35-1.) This Motion should be denied.

First, despite the fact that Defendant removed Plaintiff's claims to this Court in the first instance, Defendant now asks the Court to dismiss Plaintiff's claims for lack of federal court jurisdiction pursuant to Article III. *Ramirez* confirms that, based on his claims, Plaintiff has standing. Faced with this on-point Supreme Court precedent, Defendant seeks to differentiate this case from *Ramirez* by accusing Plaintiff of somehow *causing Defendant* to make a defamatory communication by applying for credit because Plaintiff knew that a *different* consumer reporting agency had also falsely called him a terrorist in the past. This accusation has no basis in reality, much less in the FAC. Defendant notably ignores that before applying for credit and being victimized by Defendant's false report, Plaintiff *disputed with the other consumer reporting agency and that other agency corrected Plaintiff's report*. Plaintiff had no reason to suspect that, merely by applying for a loan, he would be forced to relive his prior negative experience with an entirely different company.

If accepted, Defendant's invented "invitation" argument would have disastrous consequences for consumers. What is a consumer in such a situation to do? Stop participating in the modern economy as soon as the first credit reporting error appears? Even such basic tasks as obtaining a cell phone, opening a bank account, or applying for a credit card result in credit checks. Is every consumer who ever has an error on their credit report supposed to just accept that they are powerless to stop any errors? Defendant's novel blame-the-victim theory has no basis in either Article III or the FCRA. Plaintiff is not deprived of a remedy or standing because more than one company violated the law in a similar way. Indeed, one explicit goal of the FCRA is to stop recurrent errors. *See* 15 U.S.C. § 1681i(a)(5)(B).

Plaintiff also has Article III standing for his disclosure and identification claims. Defendant's failure to disclose that it reported OFAC/SDN information about Plaintiff, and to whom it reported such information implicates core informational and privacy concerns protected by the FCRA. Defendant's violations were not the trivial "formatting errors" at issue in *Ramirez* but instead a complete and misleading refusal to provide vital information regarding Plaintiff's credit file.

Defendant's proposed remedy for Plaintiff's purported lack of standing also finds no support in the law. Where a claim is removed from state court and the federal court finds it lacks subject matter jurisdiction over that claim, the federal court is bound to *remand* the claim, not dismiss it. 28 U.S.C. §1447(c).

Defendant's second argument, that Plaintiff, as a Maryland resident, cannot bring claims under California law, fares no better. Plaintiff has alleged claims that have sufficient ties to California to invoke California law. Defendant is headquartered in San Diego, and all of the policies and procedures at issue in this case were created, designed, and implemented from Defendant's San Diego office. In any event, Defendant's argument is premature. Choice-of-law is a fact-intensive inquiry that is better addressed later. And this case is a textbook example of why additional factual development is required. The report unambiguously shows that it was sent to the lender's office in Fairfax, Virginia (not Maryland) and Plaintiff received correspondence regarding the report addressed from Colorado. More facts are necessary to do a proper choice-of-law analysis, and even if one were to be done, Defendant also overstates the differences between Maryland and California law.

Defendant's argument that the CCRAA only applies to California residents also falls flat. Per an express statutory limitation, the CCRAA does not require regulated entities to send certain consumers notices and disclosures unless the consumer has a California mailing address. Defendant argues that this provision somehow limits the entire statute to California residents. But the legislature plainly

limited *some* requirements of the CCRAA to consumers with California mailing addresses and did *not* similarly limit the requirements of the CCRAA at issue here.

Finally, Defendant's challenges to Plaintiff's allegations of harm under the CCRAA and UCL are unavailing. Defendant falsely reported to a potential creditor that Plaintiff was a drug trafficker. Plaintiff was angered, distressed, embarrassed, and experienced harm to his reputation as a result. As confirmed by applicable caselaw, these allegations are sufficient to constitute both actual damages under the CCRAA and the requisite injury under the UCL.

**II. FACTS**

In October 2019, Plaintiff applied for a mortgage with Pulte Mortgage LLC ("Pulte"). (FAC ¶ 24.) As part of the application process, Pulte procured a consumer report from Defendant. (*Id.* ¶ 25.) The face of the report indicates it was sent to Pulte's office in Fairfax, Virginia. (Ex. 1 at 19.)[1] Pulte is headquartered in Colorado and corresponded with Plaintiff about the report from Colorado. (*Id.* at 1.) Defendant is a Delaware LLC based in San Diego, California, and is the largest provider of merged credit reports in the country, supplying 19 of the top 20 mortgage lenders. (FAC ¶ 17.) Defendant's executive management team (with the exception of one individual) is based in San Diego, as are all of its management-level employees. (*Id.* ¶ 18.) The policies and procedures at issue in this case were developed, designed, and implemented in California. (*Id.* ¶ 19.) Plaintiff's report was generated, assembled, and disseminated from Defendant's office in California. (*Id.* ¶ 27.)

The U.S. Department of Treasury maintains the OFAC/SDN List, and individuals and businesses in the U.S. are generally prohibited from conducting

[1] The report at issue is attached as Exhibit 1 to the Declaration of John G. Albanese ("Albanese Decl."). The Court may consider this report on the Motion as the document is incorporated into the FAC. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014). Parts of the report showing private credit and other sensitive information have been redacted.

business with anyone on the OFAC/SDN List. (FAC ¶¶ 33-34.) As part of its consumer reports, Defendant sells a product called the "Credco ProScan OFAC Report." (*Id.* ¶ 30.) According to Defendant, the ProScan OFAC Report has "advanced match logic" that "reduces the likelihood of false positives" and "automatically checks all of your applicants against the OFAC database, and within seconds, returns easy-to-review results." (*Id.* ¶ 31.) Defendant reported that Plaintiff was a suspected narcotics trafficker included on the OFAC/SDN List. (*Id.* ¶ 32.)[2] Specifically, Defendant reported Plaintiff as a "possible" match to "Mario Alberto Fernandez Santana" born in May 1977, with an address in Zapopan, Jalisco, Mexico. (*Id.* ¶ 37 & Ex. 1 at 19.) Plaintiff's name is not Mario Alberto Fernandez Santana, he was not born in 1977, and he has never lived in Mexico. (FAC ¶¶ 38-40.) Per Defendant's report, the "search criteria" for the report were "Name & Address" (Ex. 1 at 19), but neither Plaintiff's name nor any of his addresses matched those of the person with whom he was matched.

Plaintiff was alarmed, distressed, embarrassed, angered, and frustrated that Defendant had falsely accused him of being a terrorist, and he suffered damage to his reputation as a result. (FAC ¶¶ 12, 42.) He disputed the contents of his report by mailing a dispute to Defendant's consumer relations department in San Diego. (*Id.* ¶ 43.) Defendant never responded to Plaintiff's dispute. (*Id.*) Plaintiff then sent further correspondence to Defendant's San Diego office requesting a copy of his full file, including any consumer reports issued by Defendant. (*Id.* ¶ 44.) After forcing Plaintiff to jump through more hoops, Defendant eventually sent Plaintiff a copy of his "consumer report." However, the version of the report Defendant sent Plaintiff did not contain any OFAC/SDN information. (*Id.* ¶¶ 45-47.) Nor did the version

---

[2] Defendant states that it received the "OFAC Report" from a third party. (MTD at 4). That fact is not alleged in the FAC and there has been no discovery about if (and from whom) Defendant may have purchased the product it sold on its report.

Defendant sent Plaintiff show Defendant had sent Pulte (or anyone else) his report. (*Id.*) Because Defendant never responded to Plaintiff's dispute and failed to correct its report, Plaintiff is at risk of this inaccurate reporting reoccurring. (*Id.* ¶¶ 48-49.)

Defendant's factual recitation in its Motion improperly attempts to bring in facts and draw inferences from Plaintiff's pending lawsuit in Maryland against a different and unrelated consumer reporting agency, RentGrow, Inc. None of these facts are included in the FAC. Nor are they relevant to Plaintiff's standing or properly considered on this Motion. Nonetheless, the facts from that case do not advance Defendant's position. In November 2018, Plaintiff applied to rent an apartment in Maryland. The landlord obtained a report from RentGrow—a company with no affiliation to Defendant—that falsely labeled him as a "possible" match to the OFAC/SDN List. (ECF No. 36-4 ¶¶ 21-36). Plaintiff disputed the report and it was corrected in December 2018. (*Id.* ¶ 41.) Plaintiff sued RentGrow in April 2019 and by May 2019, RentGrow changed its matching policies for OFAC/SDN information to require strict name and date-of-birth matching. (Albanese Decl., Ex. 2.) Defendant makes incorrect statements about the RentGrow case, including that "RentGrow had twice produced reports identifying a possible connection between Plaintiff and a person on the OFAC list." (MTD at 3.) There was only one Rentgrow report. Defendant also implies that Plaintiff has brought Maryland law claims against RentGrow. (*Id.* at 15.) The only claims asserted against RentGrow are FCRA claims.

## III. ARGUMENT

### A. Plaintiff has Article III Standing.

The Supreme Court confirmed in *Ramirez* that people who are the subject of a report that has been disseminated to third parties and that inaccurately matches them with OFAC/SDN information have a concrete injury sufficient for Article III standing. 141 S. Ct. at 2209. The *Ramirez* class included both (1) people whom TransUnion had reported as possible matches to the OFAC/SDN List to third parties,

and (2) people about whom TransUnion had never reported such information to third parties but whose internal files at TransUnion merely contained the inaccurate OFAC/SDN designation. The Court had "no trouble" concluding that the former—class members who had their report disseminated to a third party—had Article III standing. *Id.* In so doing, the Court found that these class members "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation." *Id.* Post-*Ramirez*, the Seventh Circuit has also found that the dissemination of an inaccurate report is sufficient for standing. *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 566 n.3 (7th Cir. 2021).

The Court's decision in *Ramirez*, and its characterization of the decision as an easy one, was a rejection of TransUnion's argument that Article III requires more than just dissemination of an inaccurate report. TransUnion strenuously advocated that downstream consequences beyond mere dissemination were required to satisfy Article III. Br. for Pet. TransUnion LLC, No. 20-297 (Feb. 1, 2021), 2021 WL 409753, *42 (arguing "Ramirez never presented a single piece of evidence showing that any absent class member suffered any injury on account of having a credit report containing a 'potential match' alert disseminated to a third party" and that it could be that, "the potential creditor or employer who received such a report quickly dismissed the 'potential match' alert after cross-checking it against additional information, such as a birthdate - just as TransUnion instructed.").

Defendant's footnote six, arguing that no one may have read Defendant's erroneous reporting, is contrary to *Ramirez,* which held that the dissemination, not the reading, of erroneous OFAC/SDN information on a consumer report was sufficient for standing. As put by one court in the OFAC context, "there is harm in the first passing on of such derogatory untruths" regardless of downstream consequences. *Patel v. Trans Union, LLC*, 2016 WL 6143191, at *3 (N.D. Cal. Oct. 21, 2016) ("The core harm is in the sharing of erroneous and inherently damning

information about the plaintiff — regardless of how widely it is broadcast.”).

Here, Defendant issued an inaccurate consumer report that falsely labeled Plaintiff as a terrorist. Under *Ramirez*, Plaintiff has Article III standing.

1. Plaintiff did not invite publication of Defendant’s inaccurate reporting, and invitation to publication is not a defense to Plaintiff’s claims.

Defendant attempts to elude the holding of *Ramirez* by pulling portions of it out of context, attempting to import other – wholly inapplicable – law, and distorting the facts. Defendant’s arguments must fail.

Defendant argues that Plaintiff invited Defendant’s publication of inaccurate information by applying for a real estate loan. Defendant then claims that, since *Ramirez* held that because the harm from an inaccurate report was *similar* to the harm from defamation, the defense of “invitation” must be a defense to Article III standing. (MTD at 7-9.) This is all wrong. The fact that Plaintiff sought credit, and presumably knew that a credit report would be run on him, is simply not the same as inviting Defendant to erroneously call him a terrorist. A person applying for housing, credit, or a job does not choose (or even know) which consumer reporting agency the landlord, creditor, or employer will use. And there is no one universal OFAC report. OFAC/SDN information included on consumer reports is generated by consumer reporting agencies (or their vendors) which each use different and proprietary matching procedures to determine whether to report that the subject of their report appears on the OFAC/SDN List. Consumer reporting agencies each independently decide what information is included or excluded from the report. *Law-abiding* companies use far stricter criteria than name-only matching to prevent erroneous results.

Nevertheless, Plaintiff has been the unfortunate victim of two separate consumer reporting agencies which, at the relevant time, each used name-only matching for OFAC/SDN information, despite the fact that such matching violates

the FCRA. At the time Pulte obtained Plaintiff's report from Defendant, Plaintiff had already disputed RentGrow's erroneous report, RentGrow had corrected the report, and RentGrow had changed its procedures in response to Plaintiff's lawsuit. As a factual matter, Plaintiff had no reason to suspect that a completely unrelated company would also violate the FCRA. Defendant's request that the Court draw this state-of-mind inference against Plaintiff, at the pleading stage, is unsupported by the allegations of the FAC, by applicable law governing motions to dismiss, and by common sense. While it may be true that Plaintiff may have invited the publication of a consumer report generally by applying for a mortgage, there is no credible sense in which Plaintiff invited the publication of a consumer report that inaccurately called him a terrorist. To hold otherwise would lead to the absurd result that a consumer could be continuously defamed by multiple companies violating the law but have no remedy against any but the first violator. Unsurprisingly, at least one other court has rejected the "invited publication" argument, finding "[s]uch a rule would defeat the purpose of the FCRA and render a concrete harm—the provision of false or misleading credit information to third parties—no longer actionable." *Ramones v. Experian Info. Sols.*, 2021 WL 4050874, at *3 (S.D. Fla. Sept. 4, 2021).

Even if Defendant's claims had some logical factual or legal basis, which they do not, Defendant's imaginary invitation would not defeat standing anyway. The Supreme Court's analysis of whether an injury resulting from a statutory violation is sufficient to satisfy Article III looks to whether the alleged injury is analogous to an injury recognized at common law. But that analysis does not import every defense that may have existed at common law into the modern statutory scheme. In other words, a defense *on the merits* to an analogous *common* law claim is not magically rendered a defense *on standing* to a *statutory* claim merely because the Court identified the common law claim as analogous to the statutory one. Nor can the *Court's analysis* result in new *defenses* not envisioned by Congress. The Court's

endeavor is analysis, not the creation of new defenses to standing or the merits. "*Spokeo* does not require an exact duplicate in American history and tradition." *Ramirez*, 141 S. Ct. at 2204; *see also Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1115 (9th Cir. 2017) (stating even if "FCRA's cause of action and those recognized at common law" differ, "the relevant point is that Congress has chosen to protect against a harm that is at least closely similar *in kind* to others that have traditionally served as the basis for lawsuit") (emphasis in original); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (the "inquiry is focused on types of harms protected at common law, not the precise point at which those harms become actionable."); *Ramones,* 2021 WL 4050874, at *3 ("Nor did *Ramirez* hold that an FCRA plaintiff must adequately allege every element of a tort not-pled just because the harm 'traditionally recognized' in that tort bears a "close relationship" to the actually-asserted harm."). For Article III purposes, what is important is that erroneously calling someone a terrorist is broadly analogous to defamation. That analysis does not render the minutiae of common law doctrine or defenses suddenly relevant here. Invited publication is a common law doctrine that has no applicability to Plaintiff's FCRA claims or to his standing.

2. <u>Plaintiff has standing for the disclosure and identification claims.</u>

Defendant's standing argument with respect to Plaintiff's § 1681g claims oversimplifies some facts, ignores others, and overlooks relevant precedent. Defendant argues that its failures to (1) disclose the erroneous OFAC/SDN information in Plaintiff's file, and (2) disclose to whom it sent that information, did not cause harm because, at the time of the request, Plaintiff already had a copy of the erroneous report, and knew that Pulte had received it. (MTD at 11-12.)

First, a chronology. Defendant issued its erroneous report to Pulte, falsely labeling Plaintiff a terrorist, on October 18, 2019. (FAC ¶¶ 26, 37.) Plaintiff received a copy of the report from Pulte soon thereafter. (*Id.* ¶ 42.) In November 2019,

Plaintiff filed a dispute with Defendant about its reporting. (*Id.* ¶ 43.) Defendant never responded to Plaintiff's dispute. (*Id.*) In February 2020, Plaintiff requested a copy of his full file, and, in response, Defendant made its incomplete disclosure. (*Id.* ¶¶ 44-47.) The chronology makes clear the flaw in Defendant's argument. Plaintiff made a request for his file two months after he disputed the erroneous information with Defendant and received no response to the dispute. By failing to provide a complete response to the file request, including OFAC/SDN information and a complete list of recipients, Defendant made it impossible for Plaintiff to know (1) if his dispute had been successful and, therefore, to know if future reports would be erroneous, and (2) precisely to whom Defendant had told the inaccurate information – that is, if Defendant failed to disclose that it had provided the erroneous report to Pulte, it may have also provided erroneous information to other third parties. Plaintiff simply (even to this day) has no way of knowing.

The holding of *Ramirez* with respect to § 1681g is distinguishable. In *Ramirez*, the Court held that no standing existed when the defendant sent some information responsive to the file request in one envelope, and then sent the required responsive OFAC/SDN information in a second envelope. 141 S. Ct. at 2213. The Court found no concrete harm because "plaintiffs did not allege that they failed to receive any required information. They argued only that they received it *in the wrong format*." *Id.* at 2214 (emphasis in original). Here, Plaintiff is not complaining about the right information being in the wrong envelope. Instead, he alleges that he failed to receive the required information *at all* and that Defendant's omission was misleading. (FAC ¶ 49.) *See Greenwood v. Trans Union, LLC*, 2021 WL 3516666, at *3 n.1 (N.D. Iowa Aug. 10, 2021) (finding standing and noting "*Ramirez* distinguishes between plaintiffs who allege they failed to receive required information and plaintiffs who allege only that they received the required information in the wrong format."); *Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049, 1053 (7th Cir. 2019) (finding standing

where consumer failed to receive *any of required disclosures* and as opposed to an "incomplete" disclosure). Without this information, a consumer does not know what a consumer reporting agency is reporting about them and to whom it reported that information. *Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 438-439 (9th Cir. 2020) (finding standing for § 1681g claim where plaintiff sufficiently pleaded that he suffered a material risk of harm to such interest when he alleged that he was confused by the lack of information and was unable to monitor Experian's disclosure of his credit information to third parties without the information). These "rights to know" serve Congress's core purposes in passing the FCRA of protecting the consumer's privacy. 15 U.S.C. § 1681(a)(4).

By failing to provide (1) a complete accounting of whom Defendant falsely told that Plaintiff was a drug trafficker and (2) a disclosure that made clear whether or not Defendant was going to continue falsely identifying Plaintiff as a drug trafficker, Defendant concretely harmed Plaintiff.

3. <u>Dismissal is the wrong remedy for a lack of standing</u>.

In the event that the Court finds that Plaintiff lacks standing for any of his claims, the Court should sever those claims and remand them back to San Diego Superior Court, where they originated. In general, when a court finds that the plaintiff lacks Article III standing in a case removed from state court, the case must be remanded. 28 U.S.C. §1447(c); *Polo v. Innoventions Int'l, Inc.*, 833 F.3d 1193, 1196 (9th Cir. 2016). California courts do not impose the same standing requirements as Article III. *See, e.g.*, *Jasmine Networks, Inc. v. Superior Court*, 103 Cal. Rptr. 3d 426, 432 (2009); *Nat'l Paint & Coatings Assn. v. State of Cal.*, 68 Cal. Rptr. 2d 360, 364-365 (1997).

Defendant argues in a footnote "[b]ecause Plaintiff lacks Article III standing for some but not all of his claims, the Court need not remand Plaintiff's claims to state court." (MTD at 11 n.7 (citing *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1006–

07 (9th Cir. 2001)). Defendant has not moved to dismiss Plaintiff's individual claim under § 1681i of the FCRA for Defendant's failure to reinvestigate his dispute of the OFAC/SDN information, despite asserting that Plaintiff has no standing to bring his class action claims regarding Defendant's reporting of that same information.

If the Court finds that it lacks jurisdiction over any of Plaintiff's claims, dismissal is not appropriate. The claims should be severed and remanded back to state court. *Lee*, 260 F.3d at 1007 ("A case that is properly removed in its entirety may nonetheless be effectively split up when it is subsequently determined that some claims cannot be adjudicated in federal court."); *Benton v. Clarity Servs., Inc.*, 2017 WL 345583, at *2 (N.D. Cal. Jan. 24, 2017) (severing and remanding FCRA claims); *Dahy v. FedEx Ground Pkg. Sys., Inc.*, 2018 WL 6930263, at *2 (W.D. Pa. Nov. 2, 2018) (same). Certainly, in no event can any claims for which the court lacks jurisdiction be dismissed with prejudice. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

**B. California Law Can Be Applied.**

"Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contracts with the plaintiff's claims." *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012)). "In deciding whether California's consumer protection laws should apply, courts consider the defendant's residency, the plaintiff's residency, and where decisions about the behavior in question were made." *Collazo v. Wen by Chaz Dean, Inc.*, 2015 WL 4398559, at *3 (C.D. Cal. July 17, 2015) (quotation and citation omitted). A defendant carries a "burden to defeat the presumption that California law applies and to show a compelling reason justifying displacement of California law." *Forcellati*, 876 F. Supp. 2d at 1160 (modification and quotation omitted).

In *Collazo*, the court held that the non-resident "Plaintiffs' UCL and FAL [c]laims [did] [n]ot [s]eek [e]xtraterritorial [a]pplication of California [l]aw" because the defendant's wrongful conduct "originated" from its principal place of business in California. 2015 WL 4398559, at *3-5. As the court described, where, as here, there is "no dispute that Plaintiffs neither live nor suffered their alleged injuries inside California," the "critical issue" in determining if California law applies is "where did the decisions regarding the alleged misconduct occur?" *Id.* at *3. Here, Plaintiff alleges that Defendant's decisions and wrongful conduct occurred in and emanated from Defendant's "principal office" in San Diego, California – where its leadership team, and IT are located; from which it developed and designed the policies challenged here; and from which it (failed to) send correspondence to Plaintiff regarding his dispute and file request. (FAC ¶¶ 17-19, 27, 43-46). No further allegations are needed to justify the application of California law at this early stage. *See, e.g.*, *Forcellati*, 876 F. Supp. 2d at 1160 (denying motion to dismiss California claims where plaintiff alleged "that Defendants are headquartered in Los Angeles, California"); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) (denying motion to dismiss California claims where defendant's misrepresentations "emanated from California"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1238 (N.D. Cal. 2012) (denying motion to dismiss where plaintiffs pled "that Clorox's conduct originated in or had strong connections to California"); *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *7-8 (N.D. Cal. July 23, 2013) (holding out-of-state plaintiffs could assert California claims and collecting cases).[3]

---

[3] *See also Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr. 605, 619-20 (1987) (reversing order denying class certification and concluding that non-California residents could assert claims under California law when the defendant's principal officers were in California and the alleged fraudulent misrepresentations were prepared in California).

**C. Defendant's Choice-of-Law Analysis is Premature and Flawed.**

"Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member." *Mazza*, 666 F.3d at 589 (internal quotation omitted). Once this showing is made, the burden shifts to the other side to demonstrate "that foreign law, rather than California law, should apply to class claims." *Id.* at 590 (quotation omitted). California law may be applied if "the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* (citations omitted).

1. Choice-of-law analysis at this stage is premature.

Defendant urges the Court to engage in a detailed and fact-specific choice-of-law analysis at the pleading stage. (MTD at 12-17.) However, in general, choice-of law determinations are premature at this stage. "Whether California law differs from the laws of other states in a way that is material *to this litigation* is not a proper inquiry at the pleading stage." Instead, "[s]uch a deeply factual inquiry is more appropriately addressed at the class certification stage, which was, incidentally, the posture of the *Mazza* action when it was appealed to the Ninth Circuit." *Valencia v. Volkswagen Grp. of Am. Inc*., 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015). *See also Fehrenbach v. Hewlett Packard Co*., 2017 WL 11422106, at *6 (S.D. Cal. Jan. 5, 2017) ("Such a detailed choice-of-law analysis should occur during the class certification stage, after discovery.") (internal quotation omitted).

Defendant cites some cases involving false advertising where courts have taken up the choice-of-law issue at the pleadings stage. *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007-08 (N.D. Cal. 2014) (dismissing California claims for false advertising); *Schepler v. Am. Honda Motor Co.*, 2019 WL 398000, at *6-7 (C.D. Cal. Jan. 29, 2019) (same). But claims under the CCRAA and FCRA – which do not have reliance requirements and are intended to protect consumers from having

misrepresentations made about them to *third parties* – are far different from claims based on misrepresentations made directly to consumers.

Defendant also gives short shrift to the factual analysis necessary to determine the "place of the wrong" relevant to the claims *in this case* by failing to even examine the elements necessary to state a CCRAA or FCRA claim. Instead, Defendant makes the conclusory claim that "the last place of the alleged wrong in this case is Maryland – where Plaintiff resides, applied for a mortgage, received the allegedly inaccurate disclosure about his credit report, and suffered purported harm." (MTD at 17.) Defendant cites no cases holding that the last event necessary for a liability for a FCRA or CCRAA (or a UCL claim based on violations of the FCRA or CCRAA) claim occurs where the consumer is located. The erroneous report regarding Plaintiff was sent to Pulte's office in Fairfax, Virginia and then transmitted to Plaintiff from Pulte's headquarters in Colorado. (Ex. 1 at 1 (reflecting Pulte's Colorado letterhead), 2 (stating that report was "Prepared For" for "11 PMLLC – MID-ATLANTIC" at a Fairfax, Virginia address).) Defendant's contention that the alleged conduct was "triggered by his request in Maryland" (MTD at 16) is therefore unsupported at this stage. By incorrectly asserting all these events occurred in Maryland, Defendant also fails to examine if Virginia or Colorado may have an interest in applying their law to Plaintiff's claims. That Defendant overlooks these facts exemplifies why the choice-of-law analysis should occur only after discovery is complete.[4]

2. <u>There are no material conflicts between Maryland and California consumer reporting laws</u>.

Even accepting Defendant's unsupported assertion that Maryland is the only

---

[4] Defendant attempts to preemptively address this argument in a footnote, arguing that Plaintiff's argument means that Virginia law applies. (MTD at 17 n. 10.) But that misses the larger point: further discovery of the facts is needed before the Court can rule on this issue. Defendant also does not compare Virginia and California law.

other state with a potential interest in Plaintiff's claims, Defendant's legal analysis of the conflict of laws is inaccurate and incomplete. Defendant posits that the Maryland Consumers Credit Reporting Agencies Act ("MCCRAA") and the California laws materially conflict because the MCCRAA contains "a comprehensive scheme providing for entirely different procedures and remedies than California's laws." (MTD at 13.) That assertion is wrong.

Both California's and Maryland's credit reporting laws are closely based on the FCRA. As the Fourth Circuit has stated, "relief under the [MCCRAA] precisely parallels that under FCRA," and the two statutes contain "virtually identical provisions." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899-900 (4th Cir. 2003). Similarly, the CCRAA provisions at issue here are also nearly identical to the corollary provisions in the FCRA. Below are the relevant provisions.

| | |
|---|---|
| **Cal. Civ. Code § 1785.14(b)**<br>Whenever a consumer credit reporting agency prepares a consumer credit report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. | **Md. Code Com. Law § 14-1205(b)**<br>Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. |
| **Cal. Civ. Code § 1785.16(a)**<br>If the completeness or accuracy of any item of information contained in his or her file is disputed by a consumer, and the dispute is conveyed directly to the consumer credit reporting agency by the consumer or user on behalf of the consumer, the consumer credit reporting agency shall within a reasonable period of time and without charge, reinvestigate and record the current status of the disputed information before the end of the 30-business-day period . . . unless the | **Md. Code Com. Law § 14-1208(a)(1)**<br>If the completeness or accuracy of any item of information contained in his file is disputed by a consumer, and the dispute is directly conveyed to the consumer reporting agency in writing by the consumer, the consumer reporting agency shall within 30 days reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. |

| | |
|---|---|
| consumer credit reporting agency has reasonable grounds to believe and determines that the dispute by the consumer is frivolous or irrelevant . . . . | |

Lastly, as Defendant concedes, there are only small differences in the damages provided under each statute. (MTD at 14-15.) Both the MCCRAA and CCRAA allow for the recovery of actual damages, court costs, reasonable attorneys' fees, and, for willful violations, punitive damages. *See* Cal. Civ. Code § 1785.31(a) *and* Md. Code Com. Law § 14-1221. The only difference in damages to which Defendant points is that California provides a range of acceptable punitive damages for willful violations, from $100–$5,000, as "the court deems proper." It is not clear that this range reflects a conflicting policy choice by the California legislature as compared to Maryland's law, which also provides for punitive damages in the same circumstances. Indeed, punitive damages imposed under Maryland's law could be higher or lower than those that could be imposed under California's law. Further, Defendant points out the differences in injunctive relief provided under the CCRAA, UCL, and MCRAA. (MTD at 14.) While the UCL and CCRAA explicitly provide for injunctive relief, the MCRAA is silent on the issue. More importantly at this stage, however, Defendant has not shown that these differences are material.

3. <u>California law should be applied</u>.

If there is a material conflict of law, California law may only be used if "the interests of other states are not found to outweigh California's interest in having its law applied." *Mazza*, 666 F.3d at 590 (citations omitted). California recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *See Hernandez v. Burger*, 162 Cal. Rptr. 564, 568 (1980), *cited with approval by Abogados v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000). The "place of the wrong" is the state where the last event necessary to

make the actor liable occurred. *Mazza*, 666 F.3d at 593.

To determine which state has a predominant interest in Plaintiff's claims, the Court must examine where the last event necessary to make the actor liable for each claim occurred. First, Plaintiff alleges that Defendant violated the CCRAA, Cal. Civ. Code § 1785.14(b), and the FCRA, 15 U.S.C. § 1681e(b), by "failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports" regarding Plaintiff and class members. (FAC ¶¶ 68, 73.) Second, Plaintiff alleges that Defendant violated the CCRAA, Cal. Civ. Code § 1785.16, and the FCRA, 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(6), by failing to conduct a reinvestigation to determine if the information it reported was accurate, by failing to correct inaccurate information (*id.* ¶¶ 83, 88), and for the FCRA claim, failing to provide written notice to Plaintiff of the results of the reinvestigation within five business days (*id.* ¶ 93). Third, Plaintiff alleges that Defendant violated the FCRA, 15 U.S.C. § 1681g(a)(3)(A), by failing to disclose upon request "all information in the consumer's file" including the identification of each person that had requested Plaintiff's consumer report in the preceding year before the request was made. (*Id.* ¶ 78.) Lastly, Plaintiff alleges that Defendant violated the UCL because Defendant's conduct violated the FCRA and CCRAA, (*id.* ¶ 100), and was unfair and fraudulent (*id.* ¶¶ 103, 104).

The place of the wrong for all of Plaintiff's claims is California. First, "[l]iability under th[e] reasonable procedures provision 'is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information.'" *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 755 (9th Cir. 2018) (citation omitted).[5] Second, under the reinvestigation provisions, a consumer

[5] "[S]ections 1785.16 and 1785.14 under the CCRAA are substantially identical to Sections 1681i and 1681e under the FCRA." *Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212, 1217 (E.D. Cal. 2019).

reporting agency "must conduct a free and reasonable reinvestigation within thirty days of a consumer informing the [consumer reporting agency] of disputed information." *Id.* at 756. Third, under the disclosure provisions, a consumer reporting agency is required to disclose "[a]ll information in the consumer's file at the time of the request" in a manner that is "understandable to the average consumer." *Id.* at 759. Thus, for all claims, Defendant's liability is not dependent on Plaintiff's conduct. California was the place where Defendant failed to use reasonable procedures, failed to disclose required information, and failed to correct false reporting.

California courts have certified nationwide classes asserting claims under California law in similar circumstances. For example, *Clay v. CytoSport, Inc.*, 2018 WL 4283032 (S.D. Cal. Sept. 7, 2018), is an informative false advertising case where reliance was not an issue. There, the court distinguished *Mazza* because it was "likely that many class members were never exposed to the allegedly misleading advertisements." *Id.* at *16 (quoting *Mazza*, 666 F.3d at 595). In *Clay*, "[a]ll allegedly false representations were made on Defendant's product labels, and all products were sold with labels." *Id.* at *17. In *Clay*, as here, "[a]ll final decisions regarding the labels were made and approvals were given in California, where Defendant is incorporated and maintains its principal place of business," and "Defendant distributed its products nationwide." *Id.* at *17. Thus, "[t]he fact that some products were purchased in one state rather than another should be immaterial to the choice of law under the facts of the present case, because the alleged misconduct occurred entirely in California." *Id.*

Here, as in *Clay*, there are no questions regarding Plaintiff's reliance and all the alleged misconduct occurred entirely in California. Applying California law to a California-resident corporation "does not impede other states in applying their policies, whether through consumer-friendly or business-friendly legislation, to the

conduct that occurs within their borders." *Id.* at *17. *See also Clothesrigger*, 236 Cal. Rptr. at 609 (recognizing "California's interest in deterring fraudulent conduct by businesses headquartered within its borders and protecting consumers from fraudulent misrepresentations emanating from California"); *In re Tobacco II Cases*, 207 P.3d 20, 38 (2009) ("[t]he substantive right extended to the public by the UCL is the right to protection from fraud, deceit and unlawful conduct, and the focus of the statute is on the defendant's conduct") (internal quotation and citation omitted). For these reasons, even if there is a material conflict of law (there is not), California has the predominant interest in Plaintiff's claims and its laws should apply.

### D. The CCRAA Is Not Limited to Consumers with California Mailing Addresses.

Defendant argues that the CCRAA claims must be dismissed because "the statute applies only to California residents." (MTD at 17.) Defendant's sole support in the statute for this argument is Cal. Civil Code § 1785.6 which provides that "[t]he notices and disclosures to consumers provided for in this title shall be required to be made only to those consumers who have a mailing address in California." Plaintiff has not brought any CCRAA claims alleging that Defendant failed to deliver "notices" or "disclosures" to him. Nevertheless, Defendant argues that §1785.6 somehow bars all of Plaintiff's CCRAA claims.

Defendant's position is contrary to the text of the statute. *People v. Rodriguez*, 377 P.3d 832, 839 (2016) ("We interpret that section by starting, as we must in all problems of statutory interpretation, with its text."). "When a legislature includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposefully in the disparate inclusion or exclusion." *Yost v. Forestiere*, 265 Cal. Rptr. 3d 175, 187 (2020) (internal quotations and modifications omitted); *see also Toor v. Lynch*, 789

F.3d 1055, 1062 (9th Cir. 2015) (stating similar). Here, the California legislature specified that "notices and disclosures" need only be provided to consumers with a California mailing address. Defendant points to no other sections of the statute that provide similar exclusions. Thus, under rules of statutory interpretation, the legislature did not limit the scope of the entire statute to only those persons with California mailing addresses.

Defendant argues that the "only reasonable construction of section 1785.16(a) is that the California legislature intended for the reinvestigation and notice of that reinvestigation to go hand-in-hand." (MTD at 19.) Defendant further states that although "the words 'notice' and 'disclosure' do not appear on the face of section 1785.14(b), the CCRAA's statutory scheme demonstrates that the legislature intended to grant the statute's substantive rights to California residents exclusively." (*Id.*) There are rational reasons why notice and disclosure requirements are limited to California residents but other provisions are not. Sending notices and disclosures imposes costs, including paper and postage, and it would make sense that the notice and disclosure requirements under the CCRAA, which are more expansive than those required by the FCRA, including those notices involved with reinvestigations,[6] are limited to the persons with California addresses. But for the provisions which mirror the FCRA, such as Cal. Civ. Code § 1785.16(a), § 1784.14(b), no additional costs are imposed upon consumer reporting agencies based in California if such provisions apply nationwide. Thus, it was perfectly logical for the legislature to single out its more expansive notice and disclosure protections as being limited to people with California mailing addresses.

[6] *Compare* Cal. Civ. Code § 1785.16 (requiring post-reinvestigation notice that contains "a notice that the dispute will remain on file with the agency as long as the credit information is used" and "a statement about the details of the dispute will be furnished to any recipient as long as the credit information is retained in the agency's data base"), *with* 15 U.S.C. § 1681i(a)(6)(B) (containing no such requirements).

**E. Plaintiff Has Plausibly Alleged Actual Damages under the CCRAA.**

Defendant further argues that Plaintiff has not sufficiently alleged "actual damages" under the CCRAA. (MTD at 17-19.) The CCRAA defines actual damages as: "including court costs, loss of wages, attorney's fees and, when applicable, pain and suffering." Cal. Civil Code § 1785.31(a). The Ninth Circuit has found that actual damages include emotional distress. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).[7] Defendant reported that Plaintiff was a drug trafficker on the OFAC/SDN List. As noted by the Ninth Circuit, "[i]t is difficult to conceive of information on a credit report that is more damaging to a consumer than a statement that the consumer is potentially prohibited from transacting business in the United States because the consumer is a criminal or a threat to national security." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1027 (9th Cir. 2020).

Plaintiff alleges that as a result of this false report, he was alarmed, distressed, embarrassed, angered, frustrated, suffered harm to his reputation. Given Defendant's failure to correct, Plaintiff worries that the inaccurate reporting could recur. (FAC ¶¶ 12, 42.) The FAC also describes Plaintiff's time and effort in disputing his report and requesting his file. (*Id.* ¶¶ 43-47.) Finally, Plaintiff seeks his attorneys' fees and costs as relief. (*Id.* at Prayer for Relief, (j).) *See Poinsignon v. Imperva, Inc.*, 2018 WL 1709942, at *4 (N.D. Cal. Apr. 9, 2018) ("CCRAA explicitly defines 'actual damages' to 'includ[e] court costs, loss of wages, attorney's fees and, when applicable, pain and suffering'").

These allegations are sufficient to plead actual damages. *See Sanchez v. Servis One*, No. 18-586, 2019 WL 2373565, at *6–7 (S.D. Cal. June 4, 2019)

[7] "[B]ecause the CCRAA is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (internal quotations marks omitted).

(Miller, J.) (finding plausible actual damages when plaintiff plead "emotional distress," "embarrassment," "pain and suffering," "humiliation," and "defamation of character."); *Moreland v. Corelogic Saferent LLC*, 2015 WL 12659910, at *3 (C.D. Cal. Mar. 31, 2015) (denying summary judgment when plaintiff provided "testimony concerning her efforts to 'clean up the mess' created by the inaccuracies on her report, and the emotional distress the report caused"); *King v. Bank of Am., N.A.*, 2012 WL 4685993, at *6 (N.D. Cal. Oct. 1, 2012) ("…Plaintiff's allegation of pain and suffering satisfies any requirement to plead actual damages.").

Defendant also relies on the decision in *Gadomski v. Patelco Credit Union*, 2020 WL 1433138 (E.D. Cal. Mar. 24, 2020). There, the plaintiff alleged that the defendant had misreported the status of a credit card account as "charged off" rather than "[d]ischarged in [b]ankruptcy." *Id.* at *1. The court found that "[w]hile it may be possible to state a claim for emotional distress as a result of the inaccurate reporting and unreasonable investigation of the disputed credit information, Plaintiff has failed to state any facts indicating she personally suffered distress as a result of Defendant's actions." *Id.* at *4. This case is a far cry from a creditor misreporting the status of a single delinquent credit card account discharged in bankruptcy. Defendant's other cases involve facts far less egregious than those here. *Burnthorne-Martinez v. Sephora USA, Inc.*, 2016 WL 6892721, at *3 (N.D. Cal. Nov. 23, 2016) (alleging that defendant provided a notice that a background check would be procured on plaintiff that contained "extraneous" information); *Levinson v. Transunion LLC*, 2016 WL 3135642, at *1 (C.D. Cal. June 2, 2016) (alleging creditor falsely reported four months of payments as late).

**F. Plaintiff Has Plausibly Alleged Standing under the UCL.**

Defendant argues that Plaintiff has failed to allege an adequate injury to have standing under the UCL. (MTD at 24.) Defendant focuses on Plaintiff's allegations regarding emotional distress, but ignores the gravamen of the FAC: Defendant

issued an inaccurate credit report on Plaintiff to a potential creditor. Courts have found that the "perpetration of [c]redit [r]eports containing inaccurate erroneous information" is sufficient for standing under the UCL. *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006) (cited with approval in *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010)); *Aho v. AmeriCredit Fin. Servs., Inc.*, 2011 WL 2292810, at *2 (S.D. Cal. June 8, 2011) (finding "negative credit report constitutes injury for standing purposes" where report reflects inaccurate information); *King*, 2012 WL 4685993, at *8 ("Allegations of a diminished credit score have been found to satisfy the UCL's standing requirement.").

A false accusation of being a terrorist or drug trafficker on the OFAC/SDN List is perhaps the most damaging possible information on a credit report. Financial institutions are forbidden from doing business with such persons. 31 C.F.R. § 544.201. Were the report true, Plaintiff would be denied credit nationwide.[8]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

Dated: September 8, 2021

Respectfully submitted,

/s/John G. Albanese
John G. Albanese,
MN Bar No. 0395882*
E. Michelle Drake,
MN Bar No. 0387366**
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205

[8] Defendant argues Plaintiff's claim for a fraudulent violation of the UCL does not satisfy Fed. R. Civ. P. 9(b). (MTD at 25 n.12.) Arguments only set forth in footnotes are waived. *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 (9th Cir. 2014). The fraudulent act here was reporting Plaintiff as a terrorist based on "Name & Address" search criteria when neither matched. The FAC satisfies Rule 9(b).

Minneapolis, MN 55413
Tel: (612) 594-5999
Fax: (612) 584-4470
jalbanese@bm.net
emdrake@bm.net
**pro hac vice*
***pro hac vice forthcoming*

Sophia Rios
**BERGER MONTAGUE PC**
401 B Street, Suite 2000
San Diego, CA 92101
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

*Attorneys for Plaintiff*