UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO A. FERNANDEZ, individually and as a representative of the class,<br><br>Plaintiff,<br><br>v.<br><br>CORELOGIC CREDCO, LLC.,<br><br>Defendant. | Case No.:  3:20-cv-1262-JM-(AGS)<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS** |

This matter comes before the court on Defendant's Motion to Dismiss First Amended Complaint (Doc. No. 35) and Motion to Strike Class Allegations from Plaintiff's First Amended Complaint (Doc. No. 36.)  The motions have been fully briefed and the court finds them suitable for determination on the papers in accordance with Civil Local Rule 7.1(d)(1).  For the reasons set forth below, Defendant's motions are denied.

## I.  PROCEDURAL BACKGROUND

On June 2, 2020, Plaintiff Marco A. Fernandez filed a putative class action complaint against Defendant CoreLogic Credco, LLC ("Credco") in San Diego Superior Court alleging violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681, *et seq.*; willful violations of the California Credit Reporting Agencies Act ("CCRAA"), CAL. CIV. CODE section 1785.1, *et seq.*, and violations of the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE section 17200, *et seq.* (Doc. No. 1-3 at 12-32.)  On

July 6, 2020, Defendant removed this action to federal court on the basis of federal question jurisdiction, 28 U.S.C. section 1331 and pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1453.  (Doc. No. 1.)

On September 28, 2020, Plaintiff filed the first amended putative class action complaint. (Doc. No. 14, "FAC".)  Initially, Defendant filed a Motion to Dismiss the FAC (Doc. No. 15), and then subsequently filed a Motion to Stay Proceedings Pending the Supreme Court's Decision in *Transunion LLC v. Ramirez*, (Doc. No. 23).

On April 8, 2021, this court granted Defendant's motion and ordered all proceedings in this action stayed pending the Supreme Court's decision in *Ramirez.*  (Doc. No. 27 at 8.) In light of the stay, and to assist in managing its own calendar, the court also denied without prejudice Defendant's pending motion to dismiss first amended complaint as moot.  (*Id*.) In doing so, the court provided that once the stay was lifted, any relevant motions attacking the complaint brought under Federal Rules of Civil Procedure 12 or 23 could be refiled. (*Id*.)

On June 25, 2021, the Supreme Court rendered its decision in *Ramirez.* Subsequently, on July 6, 2021, the parties provided this court with a joint status report (Doc. No. 31), and this court issued a scheduling order (Doc. No. 32).

In accordance with the scheduling order, on August 20, 2021, Defendant refiled its Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. No. 35) along with a separate Motion to Strike Class Allegations from Plaintiff's First Amended Complaint.  Plaintiff duly filed his responses in opposition, (Doc. Nos. 39, 40) and Defendant replied (Doc. Nos. 43, 44)[1].

---

[1] On August 25, 2021, the parties filed a Joint Motion to Amend Briefing Schedule and Continue Hearing Date, seeking two additional weeks for Plaintiff to file his oppositions and allowing Defendant an additional three weeks to file its replies. (Doc. No. 37.)  The court denied-in-part and granted-in-part the parties' request.  (Doc. No. 38.)

## II.    FACTUAL BACKGROUND

Plaintiff is a resident of Hanover, Maryland.  (FAC ¶ 15.)  He contends that in October 2019, he applied for a mortgage as part of the home-buying process.  (FAC ¶¶ 3, 24.)  Plaintiff alleges that in connection with his application, Pulte Mortgage, LLC requested a credit report from Defendant, and that the report Defendant supplied was inaccurate.  (*Id, ¶¶* 3, 26.)  Specifically, the report furnished by Defendant inaccurately stated that Plaintiff was a person on the United States Department of the Treasury, Office of Foreign Assets Control's list of Specially Designated Nationals and Blocked Persons ("OFAC/SDN").  (*Id.* ¶¶ 4, 32.)

Further, the report supplied by Defendant included a record belonging to "Mario Alberto Fernandez Santana," a resident of Mexico, born in May 1977.  (*Id.* ¶¶ 4, 37.)  Plaintiff complains that a "rudimentary review of the record" would reveal that his name, date of birth and address differ vastly from the Mario Alberto Fernandez Santana reported on the credit report furnished by Defendant.  (*Id.* ¶¶ 5, 38-41.)  Additionally, it is alleged that the OFAC/SDN Search Results section of the report generated by Defendant, falsely reported that Plaintiff "was a match to a suspected narcotics trafficker included on the OFAC -SDN & Blocked Persons List."  (*Id.* at ¶ 32.)

Plaintiff maintains that when he took steps to dispute the inaccurate report, including sending a letter via Certified U.S. Mail, Defendant did not respond.  (*Id.* ¶¶ 6, 42, 43.)  When Plaintiff later received his consumer file from Defendant, the "response did not include any information it reported to Pulte about Plaintiff being on the OFAC/SDN.  Nor did the response indicate that any report had been provided to Pulte."  (*Id*. at ¶ 7; *see also* ¶¶ 44-47.)

Plaintiff claims that by issuing the inaccurate report, Defendant violated section 1681e(b) of the FCRA and section 1785.14(b) of the CCRAA because it failed to employ reasonable procedures to ensure the maximum possible accuracy of its reports.  (*Id*. ¶¶ 8, 50, 52, 54, 55.)  Plaintiff also alleges that by failing to respond to Plaintiff's dispute, Defendant also violated the relevant provisions of the Acts.  (*Id.* ¶¶ 9-11, 56.)  As a result

of this inaccurate reporting and failure to fix the report or disclose that it had reported such inaccurate information, Plaintiff alleges he suffered "distress and embarrassment, damage to his reputation, and is concerned that the inaccurate reporting could recur." (*Id.* at ¶ 12.)

Based on these facts Plaintiff seeks to represent seven classes consisting of:

**Inaccurate Reporting Class**

All individuals who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database in the seven years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**Inaccurate Reporting FCRA Class**

All individuals who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**Inaccurate Reporting UCL Subclass**

All individuals who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database in the four years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**Failure to Disclose Class**

All individuals (1) who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject

of the report does not match the name or date of birth or address in the government database (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not disclose the OFAC/SDN information.  The class period is all persons who made requests to Defendant in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**Failure to Identify Class**

All individuals (1) who were the subjects of consumer reports furnished by Defendant (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not identify the user that procured the consumer report within the one-year period on which the request was made. The class period is all persons who made requests to Defendant in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**Failure to Disclose UCL Subclass**

All individuals (1) who were the subject of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not disclose the OFAC/SDN information.  The class period is all persons who made requests to Defendant in the four years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**Failure to Identify UCL Subclass**

All individuals (1) who were the subject of consumer reports furnished by Defendant (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not identify the user that procured the consumer report within the one-year period on which the request was made. The class period is all persons who made requests to Defendant in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

3:20-cv-1262-JM-(AGS)

FAC at 11-12[2].

## III.   JUDICIAL NOTICE

As a preliminary matter, the court notes that Defendant has requested the court take judicial notice of the Class Action Complaint Plaintiff filed in United States District Court for the District of Maryland, *Fernandez v. RentGrow, Inc.,* Case No. 1:19-cv-01190-JKB (Doc. No. 35-3, Doc. No. 36-3) and Plaintiff's Memorandum in Opposition to Defendant's Motion to Stay Pending Supreme Court Decision, also filed in Case No. 1:19-cv-01190-JKB.

It appears that Defendant is asking the court to take judicial notice under Federal Rule of Evidence 201, claiming the authenticity of the documents are not subject to dispute. (Doc. No. 36-2). *See Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ([Courts] may take judicial notice of court filings and other matters of public record.”); *Johnson v. Altamirano*, 418 F. Supp. 3d 530, 546 (S.D. Cal. 2019) (“Court orders and filings are proper subjects of judicial notice.”) (quoting *Vasserman v. Henry Mayo Newhall Mem'l Hosp.,* 65 F. Supp. 3d 932, 942-43 (C.D. Cal. 2014)).  Plaintiff has not opposed the use of these documents or challenged their authenticity, and their accuracy cannot reasonably be questioned.  However, since the court has only referenced Exhibit A, the court only takes judicial notice of Exhibit A, filed in support of Defendant's Motion to Dismiss.  (Doc. No. 35-3 at 2-17; Doc. No 36-4 at 2-17.)

## IV.   MOTION TO DISMISS

Defendant moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *(See generally* Doc. No. 35-1.)

///

///

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

### A.  Legal Standards

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of L.A. v. Lyons,* 461 U.S. 95, 101 (1983). Article III requires that: "(1) at least one named plaintiff suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citation omitted). Plaintiff has the burden of establishing that the court has subject matter jurisdiction over an action. *Ass'n of Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000). "For purposes of ruling on a motion to dismiss for want of standing, both the trial judge and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)). "At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (citation and internal quotation marks omitted).

In contrast, under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). But, even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain

statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Discussion

The court will begin its analysis by focusing on the Rule 12(b)(1) arguments, before turning to those surrounding Rule 12(b)(6).

### 1. *Motion to Dismiss Under Rule 12(b)(1)*

Defendant moves for dismissal under Rule 12(b)(1), asserting Plaintiff lacks Article III standing to bring his claims under the FCRA, the CCRAA, and the UCL (Claims I, II, III, and VII.) (Doc. No. 35-1 at 11-,12, 17-22.) Defendant argues that Plaintiff's inaccurate reporting claims lack a cognizable injury-in-fact "because Plaintiff invited the publication of information which he knew, or had reason to know, was likely to be unfavorable to him" because a previous lawsuit filed against a Maryland credit reporting agency put him on notice that his name would trigger a possible OFAC/SDN notification/match. (Doc. No. 35-1 at 11-12.) Further, Defendant contends that Plaintiff has only alleged a bare procedural violation, and he was not deprived of a substantive right as Article III requires. (Doc. No. 35-1 at 12.)

There is no subject matter jurisdiction without standing, and the 'irreducible constitutional minimum' of standing consists of three elements." *Romero v. Securus Techns., Inc.,* 216 F. Supp. 1078, 1085 (S. D. Cal. 2016) (citation omitted). A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). In a class action at least one of the named plaintiffs must meet the Article III standing requirements. *Bates v.*

*United Parcel Servs., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007).  Defendants' arguments implicate the first element.

*i. Plaintiff has Standing to Bring the Inaccurate Reporting Claims*

Relying on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), as a launching point, Defendant argues that Plaintiff lacks Article III standing to bring his inaccurate reporting claims because he invited the publication of the allegedly harming OFAC/SDN notification.  (Doc. No. 35-1 at 17-21.)

In *Ramirez,* the Supreme Court shed light on what it considered a concrete harm for purposes of Article III, explaining that intangible harms such as reputational harm, disclosure of private information, and intrusion upon seclusion fall within this ambit.  141 S. Ct. at 2204.  Further, the Court elucidated that Congress's creation of a statutory provision or cause of action does not relieve courts of its duty to decide if a plaintiff has suffered a concrete harm under Article III because "under Article III, an injury in law is not an injury in fact." *Id*. at 2205.

In looking at the specific claims at issue, the *Ramirez* Court found that the 1,853 class members, whose credit reports had been distributed to a third party bearing a misleading OFAC report, had suffered a concrete injury in fact under Article III.  *Id*. at 2208.  The Court determined the "harm suffered" by distribution of the credit reports to third parties bore a "close relationship" "to the harm associated with the tort of defamation." *Id.* at 2209[3].   Thus, the Supreme Court concluded:

> The harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a 'terrorist.'  In other words, the harm from a misleading statement of this kind bears a sufficiently close relationship to the harm from a false and defamatory statement.

---

[3] "Under longstanding American law, a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published by a third party." *Ramirez,* 141 S. Ct. at 2208.

*Id*. at 2209.

Here, Defendant points to Plaintiff's prior complaint in RentGrow, asserting that when he applied for a mortgage at Pulte, he knew, based on prior experience, that his application would prompt the production of credit reports and OFAC/SDN checks, and there was a high likelihood that an OFAC/SDN notification would be triggered. (Doc. No. 35-1 at 19.)  Defendant contends that "[s]ince Plaintiff invited Credco's publication of an OFAC notification that he knew was likely to be unfavorable he cannot now complain when his fears come true." (Doc. No. 35-1 at 19.)  In this court's view, it makes no difference that an earlier report, published by a Maryland credit reporting agency, contained the same information[4].  This does not lessen the misleading statement made by Defendant nor does it excuse its actions.  Indeed, if one followed Defendant's argument to its logical conclusion, moving forward, Plaintiff must take his chances whenever he applies for housing, credit, or even a job, because now that he knows he has been flagged as a terrorist in the OFAC/SDN section of two reports generated by consumer reporting agencies, he has now invited publication of this information in the future and there is nothing he can do about it.  This is not so.  Plaintiff did not invite Defendant to erroneously label him a terrorist, and the prior suit does not absolve it of the responsibility to check the accuracy of information contained in the reports it issued.  *See e.g., Ramones v. Experian Info. Sols*., Civil Action No. 19-62949-Civ-Scola, 2021 WL 4050874, at *3 (S.D. Fla. Sept. 4, 2021) (rejecting defendant's 'invited publication' argument finding it a red herring because the harm claimed, i.e., a credit reporting agency providing misleading information to third parties, was already recognized by the Supreme Court in *Ramirez* as sufficient to plead a concrete injury under the FCRA before concluding "[s]uch a rule would defeat the purpose of the FCRA and render a concrete harm—the provision of false or misleading credit information to third parties—no longer actionable.").

---

[4] Plaintiff had successfully disputed RentGrow's erroneous report, had it corrected and sought a change in the company's procedures.

1    Plaintiff has alleged that he applied for a mortgage as part of the home-buying
2    process. (FAC ¶¶ 3, 24.) As part of Plaintiff's application, Pulte Mortgage ,LLC requested
3    a credit report from Defendant, and the report Defendant supplied was inaccurate and stated
4    Plaintiff was on the OFAC/SDN list. (*Id.* ¶¶ 3, 4 26, 32*.*) Defendant's report included
5    information pertaining to "Mario Alberto Fernandez Santana," a resident of Mexico, born
6    in May 1977, which differs vastly from his personal information and that the OFAC/SDN
7    search results section reported Plaintiff as "a match to a suspected narcotics trafficker. (*Id.*
8    ¶¶ 4, 5, 37-41.) In other words, Defendant published Plaintiff's credit report to a third
9    party, in this case, Pulte Mortgage, LLC, that contained the OFAC/SDN alert that he was
10   a "potential terrorist." Thus, the report allegedly contained a misleading statement about
11   Plaintiff that was akin to the harm caused from a defamatory statement. These allegations
12   sufficiently allege a concrete injury in fact for Article III standing purposes. Accordingly,
13   the court **denies** Defendant's motion to dismiss Counts I, II, and VII under Rule 12(b)(1).

14                *ii.    Plaintiff has Standing to Bring the Failure to Disclose and*
15                        *Failure to Identify Claims*

16   Next, Defendant argues that Plaintiff lacks standing to bring his failure to disclose
17   and failure to identify claims under the FCRA and UCL. (Doc. No. 35-1 at 21-22.)
18   Defendant again argues that Plaintiff invited the OFAC/SDN notification, and prior to
19   requesting a copy of his consumer file from it, he had already been provided a copy of the
20   OFAC/SDN Report by Pulte.

21   The court is not persuaded. Plaintiff requested a copy of his full credit report from
22   Defendant, as was his right, in February 2020. (FAC ¶ 44.) At first, he did not receive a
23   response. (*Id.* ¶¶ 45-46.) The consumer report that was ultimately provided to Plaintiff
24   "did not include any information it reported to Pulte about Plaintiff being on the
25   OFAC/SDN. Nor did the response indicate that any report had been provided to Pulte."
26   (*Id.* at ¶ 7; *see also* ¶ 47.) The fact that Plaintiff was furnished a copy of his credit report
27   by a third party does not excuse Defendant from performing its duties as set forth in the
28   FCRA.

And, unlike in *Ramirez,* Plaintiff has not simply alleged that he received the information in the wrong format.  Rather, the information provided to Plaintiff did not contain the required information i.e., the required responsive OFAC/SND information and it did not provide Plaintiff with a complete list of recipients.  These allegations sufficiently allege a concrete injury in fact for Article III standing purposes.  *See, e.g., Greenwood v. Trans Union, LLC*, No. C19-3039-LTS, 2021 WL 3516666, at *3 n.1 (N.D. Iowa, Aug. 10, 2021) (finding plaintiff had standing and noting "*Ramirez* distinguishes between plaintiffs who allege they failed to receive required information and plaintiffs who allege only that they received the information in the wrong format.").  Accordingly, the court **denies** Defendant's motion to dismiss Counts III, VII under Rule 12(b)(1).

### 2.  *Motion to Dismiss Under Rule 12(b)(6)*

Defendant moves for dismissal under Rule 12(b)(6), contending that Plaintiff has failed to plead the necessary elements for each of his California state law claims under the CCRAA or UCL, (Counts I, V, VIII).  Specifically, it claims: (i) Maryland's credit reporting and consumer protection laws apply; (ii) Plaintiff lacks statutory standing to sue under the CCRAA as he is not a resident of California and does not have a mailing address as required by the statute; (iii) Plaintiff lacks statutory standing to sue under the CCRAA or UCL because he has failed to plead a sufficient nexus to California, with the only connection to California being Defendant has its principal place of business here (iv) Plaintiff has failed to plead actual damages under the CCRAA; and (v) Plaintiff has failed to plead loss of money or property as required by the UCL.  (Doc. No. 35-1 at 12, 13, 22-34; Doc. No. 43 at 6, 7, 9, 10.)

### i.  *Do Maryland's Consumer Protection Laws Apply to this Case?*

Defendant's first rule 12(b)(6) argument, that California's choice of law analysis precludes Plaintiff from pursuing his claims under California law, appears to "conflate two issues: the extraterritorial application of California consumer protection law (or the ability of a nonresident plaintiff to assert a claim under California law), and choice of law

analysis." *Opperman v. Path, Inc.* 87 F. Supp. 1018, 1040 (N.D. Cal. 2014) (quoting *Forcellati v. Hyland's Inc.,* 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012)).

The court first addresses the choice of law issue, as to which credit and consumer protection laws – California or Maryland – apply to this case. Based on the Ninth Circuit's decision in *Mazza v. American Honda Company,* 666 F.3d 581 (9th Cir. 2012), Defendant contends that choice of law analysis requires Plaintiff to seek redress under Maryland's consumer protection laws[5] because they contain a comprehensive scheme of entirely different procedures and remedies than California's consumer protection laws. (Doc. No. 35-1 at 22-27.) In sum, Defendant argues that "on their face," the difference in Maryland's consumer protection and credit reporting acts reflect "'varying policy choices made by state legislatures' on this paradigmatic subject of state concern, constitute a material conflict of law." (*Id.* at 25.) This court is not persuaded.

Here, Defendant removed the instant action pursuant to federal question jurisdiction and CAFA. (Doc. No. 1 at 2-5.) For these reasons, the court applies the choice-of-law rules of the forum state—here, California. *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("In a federal question action involving supplemental jurisdiction over state law claims, we apply the choice of law rules of the forum state."); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1249 (N.D. Cal. 2019) ("Where [as here] the underlying basis for CAFA jurisdiction is diversity, the forum state's choice of law rules apply.").

In California, courts have "adopted and consistently applied the so-called 'governmental interest' analysis as the appropriate general methodology for resolving choice-of-law questions." *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1091 (9th Cir. 2021) (quoting *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68 (Cal. 2010)); *see also Mazza*, 666 F.3d at 590.

---

[5] Maryland Consumer Protection Act, "MCPA", MD. CODE. ANN., COM. LAW §§ 13-101, *et seq*. and Maryland Consumer Credit Reporting Agencies Act, "MCCRAA", MD. CODE. ANN., COM. LAW §§ 14-1201, *et seq.*

This approach generally involves three steps:

First, the court must determine whether the substantive law of California and the foreign jurisdiction differ on the issue before it. Second, if the laws do differ, then the court must determine what interest, if any, the competing jurisdictions have in the application of their respective laws. If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a "false conflict" and the law of the interested jurisdiction is applied. But if more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the comparative impairment of the interested jurisdictions. This third step requires the court to identify and apply the law of the state whose interest would be the more impaired if its law were not applied.

*McCann*, 48 Cal. 4th at 87-88.

*Mazza* demonstrates that a detailed and fact-intensive inquiry is necessary to determine the substantive law applicable to Plaintiff's individual claims. Where "there is no material difference, there is no choice of law problem and the court may proceed to apply California law." *Frontier Oil Corp. v. RLI Ins. Co.,* 153 Cal.App.4th 1436 (2007).

> a. *Material Differences Among States' Credit and Consumer Protection laws*

In their papers, the parties dispute whether a material conflict of law exists. The consumer protection statutes at issue do contain differences, i.e., California's provides for injunctive relief while those in Maryland do not, and they set forth different enforcement provisions, *compare* Cal. Civ. Code § 1785.13(b) *with* Md. Code. Ann., Com. Law §§ 14-1221, 14-1225. 14-1226; and *compare* Cal. Bus & Prof. Code §§ 17000 and Cal. Civ. Code § 1785.1(b) *et seq*. *with* Md. Code. Ann., Com. Law §§ 13-1-1, *et seq*. and 14-1201 *et seq*. Yet both the MCCRA and CCRAA allow for the recovery of actual damages, punitive damages (in a range defined in California yet undefined in Maryland), court costs, and reasonable attorney's fees. *See* Cal. Civ. Code § 1785.31(a) *with* Md. Code. Ann., Com. Law §14-1221.

And while Defendant has made general references to the differences in the remedies and enforcement provisions and cited to sections of both Maryland and California code as

well as numerous cases[6], it has failed to provide the court with a robust analysis that demonstrates how the differences are material to *this* litigation.  *See Corbett v. Pharmacare*, 544 F. Supp. 3d 996, 1013 (S.D. Cal. June 17, 2021) (denying defendant's motion to dismiss and motion to strike on grounds that plaintiffs should be given opportunity to perform discovery and finding defendant had "failed to provide a sufficient choice of law analysis on California's consumer fraud statutes and breaches of express and implied warranty claims."); *Forcellati*, 876 F. Supp. 2d at 1161(noting that because "choice-of-law analysis is a case-and fact-specific inquiry, Defendants cannot meet their burden merely by citing cases in which other defendants have met this burden in factually different circumstances.")

At bottom, both the CCRAA and MCCRAA are based on the FCRA and provide that a consumer reporting agency shall follow reasonable procedures to assure maximum accuracy of the information concerning the individual about whom the report relates.  *See, e.g.*, *Ausherman v. Bank of Am., Corp.*, 352 F.3d 896, 899-900 (4th Cir. 2003) ("relief under the [MCCRAA] precisely parallels that under the FCRA," with both statutes containing "virtually identical provisions."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010) ("the CCRAA is substantially based on the Federal Fair Credit Reporting Act") (internal citations and quotation marks omitted).  On the scant factual record before it, the court would be prematurely speculating about whether the differences

---

[6] Specifically, it argues that the UCL and the MCPA have previously been held to materially conflict with each other because the UCL allows for private injunctive relief, whereas the MCPA provides an administrative system of enforcement in which a claimant indirectly seeks injunctive relief through state actors.  (*Id*. at 23-24.)  Additionally, Defendant claims a material difference between the CCRAA and the MCCRA, in that the CCRAA makes injunctive relief available to any aggrieved consumer, whereas the MCCRAA, like the FCRA, provides no such remedy.  (*Id*. at 24.)  Further, Defendant generally points to the differing ranges of permissible punitive damages without providing any specificity and the elaborate administrative scheme provided by the MCCRAA to address violations that is not paralleled in either the CCRAA or federal law.  (*Id*. at 24-25.)

identified between the two states' credit reporting and consumer protection laws are material to this case.  *See, e.g.*, *Lessin v. Ford Motor Co*., Case No.: 3:19-cv-01082-AJB-AHG, 2021 WL 3810584, at *16 (S.D. Cal. Aug. 25, 2021) (finding issue of "whether Michigan law differs from the laws of other states in a way that is material to this litigation is not a proper inquiry at the pleading stage.").

### b.  Interests of Foreign Jurisdiction

Even assuming Maryland law and California law materially differ, Defendant still needs to demonstrate that a true conflict exists.  "Every state has an interest in having its laws applied to its resident claimants." *Mazza,* 666 F.3d at 591 (quoting *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1187, *amended* 273 F.3d 1266 (9th Cir. 2001)).  Under California law, "a jurisdiction ordinarily has the predominate interest in regulating conduct that occurs within its borders." *Mazza,* 666 F.3d at 592.  (internal quotation marks and citation omitted); *see also Deirmenjian v. Deutsche Bank, A.G.,* No. CV 06-00774, 2010 WL 3034060, at *13 (C.D. Cal. July 30, 2010) (internal citations omitted) (courts continue to "recognize that a jurisdiction ordinarily has the predominate interest in regulating conduct that occurs within its borders.").

Here, it is alleged that a Maryland resident received a credit report containing incorrect information from Defendant, a company that has its principal place of business headquartered in California.  Clearly, California has an interest in "setting the appropriate level of liability for companies conducting business within its territory." *Mazza*, 666 F.3d at 592.  Similarly, Maryland has an interest in affording its citizens legal protections from false credit reports generated by out of state companies.  Both states' interests are squarely implicated in this case.

### c.  Where the Wrongful Act Occurred

In California, courts recognize that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *See Hernandez v. Burger,* 102 Cal.App.3d 795, 802 (1980) (cited with approval by *Abogados v. AT & T, Inc.,* 223 F.3d 932, 935 (9th Cir.2000)).  Under California law, the "place of the wrong" is

determined by looking at the state where the last event necessary to make the actor liable occurred. *See, e.g., McCann,* 48 Cal.4th at 94 n. 12 (the geographic location of an omission is the place of the transaction where it should have been disclosed); *Zinn v. Ex–Cell–O Corp.,* 148 Cal.App.2d 56, 80 n. 6 (1957) (concluding in fraud case that the place of the wrong was the state where the misrepresentations were communicated to the plaintiffs, not the state where the intention to misrepresent was formed or where the misrepresented acts took place).

Here, the parties dispute where the wrong occurred, with Defendant originally contending that "the last place of the alleged wrong in this case is Maryland – where Plaintiff resides, applied for a mortgage, received the allegedly inaccurate disclosure about his credit report, and suffered purported harm." (Doc. 35-1 at 27.)  Plaintiff refutes this contention, claiming further discovery is necessary before the court can rule on this.  The parties also make references to Virginia and Colorado in their papers (Doc. Nos. 39 at 21; Doc. No. 43 at 9); and disagree regarding California's interest in the dispute.  The court finds Plaintiff's argument to be the most persuasive on this issue.  At this stage of the proceedings, too little is known for the court to conclude with any amount of certainty as to where the final act occurred.  For example, is unclear the location from where Plaintiff's file should have been disclosed, where the reinvestigation into the inaccurate information took place, and where the purportedly required written notices are usually generated. The parties' disagreements as to where the last wrongful act occurred provide additional support in favor of delaying the choice-of-law analysis until after more discovery has occurred.

Looking to the allegations of the FAC, Plaintiff asserts, and Defendant does not dispute, that Defendant's principal place of business, along with management level employees, are located in San Diego, CA.  (FAC ¶¶ 17, 18.)  Further, Plaintiff has alleged that "Defendant's information technology operations used to generate its reports, servers, and related personnel are based in San Diego", as are the employees who maintain the servers and technical documents.  (*Id.* ¶ 18.)  Additionally, it is alleged that 214 of

Defendant's 322 employees are based in San Diego. (*Id.* ¶ 18.) Relatedly, Plaintiff has alleged that the "policies and procedures at issue in this case were developed, designed, and implemented in California." (*Id.* ¶ 19.) Moreover, the San Diego office is where Plaintiff, and his attorney sent all communications challenging the consumer report at the heart of this case and requested a complete copy of it once the false reporting was discovered. (*Id.* at 17-19, 27, 43-46.).

These allegations involve a California defendant, creating a California generated (to some degree) credit report about a non-resident containing false information, with that same defendant failing to subsequently disclose or correct the credit report. The allegations demonstrate wrongful conduct in California and are sufficient at the pleading stage to buttress any concerns regarding: (1) any attenuation of California's connections to Plaintiff's claims, and (2) the application of California law.

### d. Conclusion regarding Defendant's choice-of-law argument

In sum, the court finds dismissal of Plaintiff's claim would be premature at this juncture. Rather, Plaintiff should be given the opportunity through discovery to demonstrate that his claim can be litigated under the laws of California rather than Maryland. *See Thomas v. Dun & Bradstreet Credibility Corp.,* 100 F. Supp. 3d 937, 947 (denying defendant's motion to dismiss Plaintiff's UCL claim, "[b]ecause Defendant can only meet [its] burden by engaging in an analytically rigorous discussion of each prong of California's 'governmental interests' test based on the facts and circumstances of this case, and this plaintiff's allegations, the Court finds Defendant's cursory reference to Oregon's limitations period insufficient to show a compelling reason to justify displacing California law.") (internal quotation marks omitted); *Corbett,* 544 F. Supp. 3d at 1013; *Johnson v. Triple Leaf Inc.,* No. C-14-1570 MMC, 2014 WL 4744558, at *7 (N.D. Cal. Sept. 23, 2014) ("Where 'the laws of multiple states could conceivably apply to the same claim,' *see Cotter v. Lyft, Inc.,* 2014 WL 3884416, at *1 (N.D. Cal. Aug. 7, 2014), the determination as to the choice of state law applicable to such claims is dependent on the facts of the particular case and thus typically is addressed in the context of a motion for class certification, *see,*

*e.g., J.P. Morgan & Co. v. Super. Ct.,* 113 Cal. App. 4th 195, 221–22 (2004)"); *Forcellati,* 876 F. Supp. 2d at 1161 (denying defendant's motion to dismiss plaintiff's claims under California law).  Accordingly, Defendant's motion to dismiss on these grounds is **denied without prejudice.**

> ii.   *Should Plaintiff's CCRAA Claims be Dismissed for Lack of Statutory Standing?*

In Defendant's second Rule 12(b)(6) argument, it contends Plaintiff lacks statutory standing to sue under the CCRAA, professing it only applies to California residents.

California's CCRAA prohibits the furnishing of incomplete or inaccurate information to a Credit Reporting Agency ("CRA") stating "a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."  CAL. CIV. CODE § 1785.25(a). The CCRAA defines "consumer" as "a natural individual" and the term "file" as "all of the information on that consumer recorded and retained by a consumer credit reporting agency, regardless of how the information is stored." CAL. CIV. CODE § 1785.3(b) and (g).  Section 1785.10(a) of the CCRAA states that "[e]very consumer credit reporting agency shall, upon request and proper identification of any consumer, allow the consumer to visually inspect all files maintained regarding that consumer at the time of the request."  *See also* CAL. CIV. CODE § 1785.15(a) ("A consumer credit reporting agency shall supply files and information required under Section 1785.10 during business hours and upon reasonable notice.").  Section 1785.15 similarly states, "the consumer has the right to request and receive ... all information in the file at the time of the request...." CAL. CIV. CODE § 1785.15 (a) & (a)(1).

Furthermore, procedures are provided in the statute for consumers who wish to challenge the accuracy of information contained in a report, with CAL. CIV. CODE § 1785.16(a) providing that the credit reporting agency; "shall notify any person who provided information in dispute at the address and in the manner specified by the person."

Moreover, as provided in subdivision (b)(2) of section 1785.15, when the request is made by the consumer in writing for disclosure by mail, the consumer may ask that the files and information be sent to any "specified" address, and that may be the address for the consumer's attorney or other representative.

Here, Defendant claims that the CCRAA only applies to California residents.  It relies on section 1785.6 of the CCRAA which provides:

> The notices and disclosures to consumers provided for in this title shall be required to be made only to those consumers who have a mailing address in California.

The court is not persuaded.

The court reads this provision to mean that users of an investigative consumer credit report, such as a creditor or potential employer, must make the mandatory "notices" and "disclosures" provided for in the CCRAA to those consumers who have a mailing address in California.  *See* California Civil Practice Business Litigation. §56.21.  For example, if consumer credit or insurance for personal, family, or household purposes is denied or the charge for consumer credit is increased in anyway because of the adverse credit information obtained from a person other than a consumer credit reporting agency, the user of the information owes certain obligations to the consumer.  CAL. CIV. CODE §§ 1786.16, 1786.40.  Similarly, if the screening process of a prospective employer includes an applicant's credit history, the employer must give certain notices and disclosures to a job applicant if the employer intends to use the applicant's consumer credit report to decide whether to hire the applicant.  *See* CAL. CIV. CODE §§ 1786.16, 1786.28; 1786.40.  Indeed, section 1786.16 specifically references "disclosures" and discusses notifying the consumer that an investigative consumer report has been requested.

Support for this interpretation is also garnered from looking at other provisions of the CCRAA. None of the provisions limit the CCRAA to consumers with California mailing addresses, choosing instead to refer to "any consumer."  Subdivision (b)(2) of section 1785.15, provides that when a written request is made by the consumer for disclosure by mail, the consumer may ask that the files and information be sent to any

"specified" address, and that may be the address for the consumer's attorney or other representative.  Nothing limits the "specified address" to one in California.

Moreover, if the California legislature had intended liability under the CCRAA to be available to only those with mailing addresses within the state, it could easily have said so.  The parsing of the notices and disclosures requirement to consumers who have a mailing address in California into its own discrete section necessitates the court's presumption that this act was intentional.  *See Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 452 (2002) (When particular language is included in one section of a statute but omitted in another section of the same statute, it is generally presumed that the legislature acts intentionally and purposely in the disparate inclusion or exclusion).  Finally, the court notes that it can find no case law in support of Defendant's novel proposition that the CCRAA only affords protection to consumers with a California mailing address when the consumer is attempting to access and correct the false information contained in his/her file which is within the control of a credit reporting agency.  Absent such case law, this court is reluctant to hold a California mailing address is a prerequisite for filing a CCRAA claim against a credit reporting agency for alleged failure to (1) assure maximum possible accuracy in a consumer report, or (2) reinvestigate a disputed item.

Accordingly, Defendant's motion to dismiss on this ground is **denied.**

> iii.   *Should Plaintiff's CCRAA and UCL Claims be Dismissed for Failure to Plead a Sufficient Nexus?*

Defendant's third Rule 12(b)(6) argument is that the CCRAA and UCL claims fail because Plaintiff has failed to plead a sufficient nexus to California, with the only connection to California being that Defendant has its principal place of business here.

The California Supreme Court has stated that California's laws do not purport to govern occurrences outside the state, "unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000),

aff'd, 361 F.3d 566 (9th Cir.2004) ("California law embodies a presumption against the extraterritorial application of its statutes.")   Generally, non-California residents are foreclosed from bringing claims under California's consumer protection laws, such as the UCL, "where none of the alleged misconduct or injuries occurred in California." *Churchill Village,* 169 F. Supp. 2d at 1126 (citing *Norwest Mortg. Inc. v. Super Ct.,* 72 Cal.App.4th 214, 222 (1999)); *see also Tidenberg v. Bidz.com, Inc.,* No. 08–cv–5553, 2009 WL 605249, *4 (C.D. Cal. Mar. 4, 2009) ("The critical issues here are whether the injury occurred in California and whether the conduct of the Defendants occurred in California. If neither of these questions can be answered in the affirmative, then Plaintiff will be unable to avail herself of [the UCL and FAL].").   To determine whether application of California's consumer protection laws would be appropriate courts consider "where the defendant is located, where the [plaintiff] is located, and where decisions about the behavior in questions were made." *Wilson v. Frito–Lay N. Am., Inc.,* 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025 (N. D. Cal. 2013) ("In determining whether the UCL … appl[ies] to non-California residents, courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which [the relevant] decisions were made."); *see also Collazo v. Wen by Chaz Dean*, Case No. 2:15-CV-01974-ODW-AGR, 2015 WL 4398559, at *3 (C.D. Cal. July 17, 2015).

As discussed above, here, Plaintiff alleges, and Defendant does not dispute, that Defendant's principal place of business, along with management level employees and two thirds of the workforce, are located in San Diego, CA.  (FAC ¶¶ 17, 18.)  Further, Plaintiff has alleged that "Defendant's information technology operations used to generate its reports, servers, and related personnel are based in San Diego," as are the employees who maintain the servers and technical documents.  (*Id.* ¶ 18.)  Relatedly, Plaintiff has alleged that the "policies and procedures at issue in this case were developed, designed, and implemented in California." (*Id*. ¶ 19.)  Moreover, the San Diego office is where Plaintiff and his attorney sent all communications challenging the consumer report at the heart of

this case and requested a complete copy of it once the false reporting was discovered.  (*Id.* at 17-19, 27, 43-46.).

The allegations outlined above are enough at the pleadings stage to create a plausible inference that the unlawful conduct emanated from California.  *See Short v. Hyundai Motor Co.*, No. C19-0318JLR, 2020 WL 6132214, at *5 (W.D. Wash. Oct. 19, 2020) (plaintiff's allegations that defendants were headquartered in California and distributed, marketed, leased, warranted, and oversaw regulatory compliance and warranty servicing of vehicles from its California headquarters were "sufficient to plausibly allege that the actionable conduct occurred in California."); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) (finding plaintiff had alleged a "sufficient nexus" between California and the misrepresentations which formed the basis of plaintiff's claims under the UCL and CLRA where plaintiff alleged misrepresentations were developed in California, contained on a website and application maintained in California, and that billing went through servers located in California).  In sum, Plaintiff has sufficiently alleged why a non-California plaintiff could sue a California credit reporting agency for a consumer report containing false information that was generated in California.

For purposes of this motion to dismiss, the court, accepting the allegations in the FAC as true, therefore, concludes extraterritorial application of the UCL and CCRAA is appropriate at this time.  Accordingly, Defendant's motion to dismiss on this ground is **denied**.

>            iv.    *Should Plaintiff's Claims Be Dismissed for Failure to Plead Actual Damages Under the CCRAA?*

Defendant's fourth Rule 12(b)(6) argument is that Plaintiff's CCRAA claims fail to adequately allege actual damages under the CCRAA.  (Doc. No. 39 at 32-33.)

California Civil Code section 1785.31(a) provides for "actual damages including court costs, loss of wages, attorney's fees, and when applicable, pain and suffering" in the case of negligent violation of the CCRAA.  CAL. CIV. CODE § 1785.31(a); *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (holding that emotional

3:20-cv-1262-JM-(AGS)

distress constitutes actual damages); *Sanchez v. Servis One*, Case No: 18cv586 JM(JMA), 2019 WL 2373565, at \*6-7 (S.D. Cal. June 4, 2019) (holding allegations of emotional distress, invasion of privacy, humiliation, embarrassment, anxiety, loss of sleep, pain and suffering, damage to creditworthiness, hours spent reviewing reports and disputing incorrect information on credit reports, along with incurred attorneys' fees and other expenses were sufficient to plead actual damages under the plain language of the CCRAA); *Montgomery v. Wells Fargo Bank,* No. C12-3895 THE, 2012 WL 5497950, at \*6 (N.D. Cal. Nov. 12, 2012) (finding allegations of difficulties in accessing credit and necessary products and services were sufficient to state a claim for actual damages).

Notwithstanding Defendant's assertion to the contrary, Plaintiff has pled damages beyond the inaccurate reporting and its inevitable consequences.  Plaintiff alleges that as a result of Defendant's inaccurate reporting, he was alarmed, distressed, embarrassed, frustrated, and suffered harm to his reputation.  (FAC at ¶¶ 12, 42.)  Plaintiff also claims he "spent time and effort" disputing the inaccurate report, requesting his file (*id.* at ¶¶ 43-47) and additionally incurred attorneys' fees and other expenses (*id.* at 22).  Therefore, Plaintiff has pled the actual damages as required by the plain language of the CCRAA. Accordingly, Defendant's motion to dismiss the CCRAA claims on this ground is **denied**.

v.     *Should Plaintiff's Claim Be Dismissed for Failure to Plead Actual Damages Under the UCL?*

Defendant's final Rule 12(b)(6) argument is that Plaintiff's UCL claim fails to adequately allege actual damages under the CCRAA.  (Doc. No. 39 at 34.)

Ordinarily, a plaintiff who seeks monetary relief under the UCL must allege actual injury i.e., injury sustained in fact or lost money or property.  *Trujillo v. First Am. Registry, Inc.,* 157 Cal. 4th 628, 639 (2007) (disapproved on other grounds in *Connor v. First Student, Inc.* 5 Cal. 5th 1026 (2018).  In instances where only injunctive relief is sought under the UCL, a plaintiff need not allege the defendant directly took money in order to confer standing to sue for a UCL violation.  *See White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006) (The perpetration of Credit Reports containing inaccurate

or erroneous information regarding "due and owing" debts is a sufficient injury to grant Plaintiffs standing); *Bontrager v. Showmark Media LLC*, Case No. CV 14-01144 MMM (Ex), 2014 WL 12600201, at *8 (C.D. Cal. June 20, 2014) (concluding "fact that the first amended complaint does not allege that Showmark directly took money from Bontrager, such that he is entitled to restitution if he prevails on his claims, does not preclude the possibility that Bontrager has standing to sue under the UCL and FAL."); *Finelite, Inc. v. Ledalite Architectural Prods.*, No. C-10-1276 MMC, 2010 WL 3385027, at *2 (Aug.26, 2010) ("As the California Supreme Court has more recently explained [] 'the right to seek injunctive relief under section 17200 is not dependent on the right to seek restitution; the two are wholly independent remedies.'").

Here, it is alleged Defendant published Plaintiff's credit report to a third party, in this case, Pulte Mortgage, LLC, and it contained the OFAC/SDN alert that Plaintiff was a "potential terrorist." As *Ramirez* demonstrates, the publication of an inaccurate credit report to a third party gave Plaintiff standing to sue. *See also White*, 462 F. Supp. 2d at 1083 (holding that although plaintiffs "would be required to show that [defendant] took money directly from them in order to obtain [restitution], no such burden exists [ ] where [p]laintiffs seek only injunctive relief" under § 17200). Allegedly, Plaintiff then spent time and undisclosed resources investigating and challenging the inaccuracies in his credit report. (FAC ¶¶ 12, 43-47.) Plaintiff's sole requested remedy of injunctive relief serves as a sufficient basis for his UCL claim to proceed. Accordingly, Defendant's motion to dismiss the UCL claim on the ground Plaintiff has failed to allege a loss of money or property (or seek restitution) is **denied**.

### C. Conclusion Regarding Motion to Dismiss

For the reasons stated above, Defendant's Motion to Dismiss brought under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) is **DENIED.** (Doc. No. 35.)

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    MOTION TO STRIKE

In a separately filed motion, Defendant moves to strike class allegations filed pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A) and 23(d)(1)(D).  (*See generally* Doc. No. 36-1.)

### A. Legal Standard

Federal Rule of Civil Procedure Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispersing with those prior to trial …" *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517 (1994)).  However, striking the pleadings is considered "an extreme measure," and Rule 12(f) motions are, therefore, generally "viewed with disfavor and infrequently granted." *Stanbury Law Firm v. IRS,* 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States,* 570 F.2d 221, 229 (8th Cir. 1977)); *see also* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2010) ("Both because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." (footnotes omitted)).  A motion to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.  If there is any doubt whether the portion to be stricken might bear on an issue in litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  The court is to "view the pleadings in the light most favorable to the non-moving party." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1152 (C. D. Cal. 2003).

1

**B. Discussion**

2   Defendant makes three main arguments in support of its motion to strike.  First, it

3   contends that Plaintiff's failure to disclose and failure to identify class claims (counts III,

4   VII) under the FCRA, 15 U.S.C. § 1681g(a) and the UCL, CAL. BUS. CODE §§ 17200, *et*

5   *seq.*  are overbroad, lack typicality and cannot satisfy Rule 23(b)'s requirements on their

6   face and should, therefore be stricken.  Second it maintains that Plaintiff's nationwide

7   FCRA class claims, 15 U.S.C. §§ 1681e(b) & 1681g(a) (Counts II, III) should be stricken

8   because, Plaintiff "is an atypical and inadequate representative for California consumers

9   given the CCRAA's statutory scheme which precludes Californians from bringing claims

10  where an FCRA action is already pending."  (Doc. No. 36 at 2.)  Third, it moves to strike

11  Plaintiff's Inaccurate Reporting Class," "Inaccurate Reporting FCRA Subclass," "Failure

12  to Disclose Class," and "Failure to Identify Class" to the extent the definitions exceed the

13  applicable statutes of limitations and repose.  (*See generally*, Doc. No. 36-1.)  Plaintiff

14  opposes.  (Doc. No. 40.)

15  Dismissal of a class at the pleading stage is rare because 'the class determination

16  generally involves considerations that are enmeshed in the factual and legal issues

17  comprising the plaintiff's cause of action.'"  *Mirkarimi v. Nevada Prop.1, LLC*, No.

18  12cv2160-BTM-DHB, 2013 WL 3761530, at *4 (S.D. Cal. July 15, 2013) (quoting *Gen.*

19  *Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  *See also Thorpe v. Abbott Labs.,*

20  *Inc.,* 534 F. Supp. 2d 1120, 1125 (N.D.Cal.2008) (at the pleadings stage, class allegations

21  are generally not tested, rather they are usually tested after one party has filed a motion for

22  class certification); *In re Wal—Mart Stores, Inc. Wage & Hour Litig.,* 505 F. Supp. 2d 609,

23  615 (N.D.Cal.2007).  However, as the Supreme Court has explained, "[s]ometimes the

24  issues are plain enough from the pleadings to determine whether the interests of the absent

25  parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v.*

26  *Falcon,* 457 U.S. 147, 160 (1982).  Accordingly, a court may grant a motion to strike class

27  allegations if it is clear from the complaint that the class claims cannot be maintained. *See*

28  *e.g., Sanders v. Apple, Inc.,* 672 F. Supp. 2d 978, 990–91 (N.D.Cal.2009).  Generally,

"[a]lthough it is not *per se* improper for a defendant to move to strike class allegations before the motion for class certification, most courts decline to grant such motions because the shape and form of a class action evolves only through the process of discovery." *Simpson v. Best W. Int'l, Inc.*, No. 3:12-cv-4672-JCS, 2012 WL 5499928, at *9 (N.D. Cal. Nov. 13, 2012) (internal citation and quotations omitted).

Here, Defendant does not argue that Plaintiff's failure to disclose and failure to identify class claims are "redundant, immaterial, impertinent, or scandalous." Rather, it makes the conclusory assertion that "on the face of the Complaint, Plaintiff's proposed failure to disclose and failure to identify classes (Counts III, VII) are overbroad, lack typicality, and cannot satisfy the requirements of Rule 23(b)." (Doc. No. 36-1 at 14-17.) In support, Defendant relies on the holding regarding the disclosure class in *Ramirez*, (Doc. No. 36-1 at 15), while ignoring the differences in the posture of the two cases. Unlike here. the *Ramirez* plaintiffs had: (1) been given the opportunity, yet failed to demonstrate that receiving the requested information (albeit not in the format required by the statute but via two mailings) caused a harm traditionally recognized as providing the basis for a lawsuit; (2) put forth no evidence, that had they been sent the information in the proper format, they would have tried to correct their credit file; and (3) not demonstrated that the "alleged information deficit hindered their ability to correct information because it was later sent to third parties." *Ramirez*, 141 S. Ct at 2213-14.

Defendant also asks the court to, in essence, perform a classwide standing analysis and declare on the limited information before it, that (1) not a single class member has suffered a cognizable injury under the FCRA and CCRAA, (2) the proposed definition is facially overbroad, and (3) Plaintiff is atypical of these classes under Federal Rule of Civil Procedure 23(a)(3). (*Id.* at 15-17.) The court declines to do so. Rather, it agrees with Plaintiff that Defendant's motion is premature and that a motion for class certification is the more appropriate vehicle for these types of arguments. *See Jessop v. Giggle, Inc.*, Case No.: 3:14-CV-2659-CAB-RBB, 2015 WL 1162242, at *2 (S.D. Cal. Feb. 2, 2015) (finding defendant's arguments in support of a motion to strike class allegations "more appropriate

for a motion for class certification after some discovery."); *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-cv-485 JM (JMA), 2013 WL 5816410, at *16 (S.D. Cal. Oct. 29, 2013) ("Class allegations are generally not tested at the pleadings stage and instead are usually tested after one party has filed a motion for class certification."); *see also Mirkarimi*, 2013 WL 3761530, at *4 (denying motion to strike class allegations, stating "this matter is proper after appropriate time for briefing and discovery has occurred.").

Similarly, Defendant's second argument to strike the nationwide FCRA class (Doc. No. Doc. No. 36-1 at 17-20) is equally unpersuasive.  Defendant maintains that Plaintiff lacks standing to bring his CCRAA claim, lacks standing to assert any claims under the CCRAA for himself or for the putative class of California citizens, and therefore:

> if Plaintiff is allowed to proceed with his FCRA nationwide class claims on behalf of California class members, the CCRAA preclusion bar will prevent each and every class member in California from pursuing a CCRAA claim in the future based on the same acts or omissions.  Plaintiff, will in effect, select those Californians' remedies and limit their recovery, if any, to that provided under the FCRA only.

(Doc. No. 36-1 at 19.)   Because Defendant's Rule 12(f) motion is based on the appropriateness of maintaining a class action, the court declines to dismiss Plaintiff's class allegations at the precertification stage. *See Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (denying a Rule 12(f) motion to strike class allegations because "class suitability issues are best resolved during a motion for class certification"); *Valdez v. Harte-Hankes Direct Mktg./Fullerton, Inc.*, Case No. SA CV 17-0525-DOC (KESx), 2017 WL 10592135, at *4 (C.D. Cal. Dec. 21, 2017). ("Even where plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery.").

Additionally, Defendant's argument overlooks the proposition that there is nothing untoward with a plaintiff bringing a FCRA claim and a CCRAA claim in the same action. *See Cisneros v. U.D. Registry, Inc.*, 39 Cal.App.4th 548, 581 (1995) (Section 1785.34 "is intended to … apply to a circumstance where there is a prior action pending under the

federal law, and someone brings a later action under the state law…"); *Ramirez v. Trans Union LLC,* 899 F. Supp. 2d 941, 944-45 (N.D. Cal. 2012) (denying motion to dismiss simultaneous CCRAA and FCRA claims in the same complaint).   Defendant's position also ignores the fact that no member of the public is prevented from filing their own lawsuit until the proposed putative class is certified, at which point the availability of the opt-out determines "whether alleged conflicts are real or speculative.   It avoids [testing] class certification [] for conflicts that are merely conjectural and, if conflicts do exist, resolv[ing] them by allowing dissident class members to exclude them from the action." *Braintree Lab.s, Inc. v. McKesson Corp.*, No. 11-80233 MISC JSW (JSC), 2011 WL 5025096, at *2 (N.D. Cal. Oct. 20, 2011) (quoting *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Intern., Ltd.*, 247 F.R.D. 253, 268 (quoting 1 Herbert B. Newbery & Alba Conte, Newberg on Class Actions § 3.30 (4th Ed. 2002)).

Defendant's final argument to strike Plaintiff's class claims to the extent they exceed the relevant statutes of limitations and repose, (Doc. No. 36-1 at 20-23), is to assert the alleged class periods are overbroad and are not susceptible to classwide determination on their face.   This contention fares no better than Defendant's other requests to strike and, once again, provides no argument to support the Rule 12(f) standard that the claims are "redundant, immaterial, impertinent, or scandalous."   The FCRA statute of limitations is "the earlier of -- (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.   The CCRAA allows for actions to be brought "within two years from the date the plaintiff knew of, or should have known of, the violation of this title, but not more than seven years from the earliest date on which liability could have arisen…" CAL. CIV. CODE. § 1785.33.   At this stage of the proceedings, the court cannot resolve questions regarding when putative class members would have (or should have) discovered the inaccurate reportings.   The determination of what the actual class period should be, if this case proceeds, would best be decided after a period of reasonable discovery, and ruling on that now would be premature.   See *Rattler v. MH Sub*

*1, LL,* Case No. 20-cv-02444-EMC, 2020 WL 3128899, at * 3 (N.D. Cal. June 12, 2020) (denying motion to strike Plaintiff's FCRA class claims beyond the shorter two-year statute of limitations period "without prejudice to opposing class certification or seeking to limit the scope thereof at the appropriate juncture.")*; See also Bebault v. DMG Mori USA, Inc.,* No. 18-CV-02373-JD, 2020 WL 2065646, at *3 (N.D. Cal. Apr. 29, 2020) (modifying a FCRA class to comply with the two-year statute of limitations at the class certification stage).

### C. Conclusion Regarding Motion to Strike

For the reasons stated, the court construes the FAC in the light most favorable to the Plaintiff, as it must on a Rule 12(f) motion, and concludes Plaintiff's class allegations are sufficient.  Accordingly, the court orders as following:

1. Defendant's request to strike the failure to disclose and failure to identify class claims is **denied**;

2. Defendant's request to strike the nationwide FCRA class is **denied**; and

3. Defendant's request to strike the class allegations on statute of limitation grounds is **denied without prejudice**.

## VI.   CONCLUSION

In accordance with the foregoing, Defendant's Motion to Dismiss (Doc No. 35) and Motion to Strike (Doc. No. 36) are **DENIED**.  Defendant has up to and including April 8, 2022, to file an answer to the FAC.

IT IS SO ORDERED.

Dated:  March 25, 2022

_____
Hon. Jeffrey T. Miller
United States District Judge