UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARCO A. FERNANDEZ, individually and as a representative of the class,

Plaintiff,

v.

CORELOGIC CREDCO, LLC.,

Defendant.

Case No.:  3:20-cv-1262-JM-(SBC)

**ORDER ON PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Presently before the court is Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.  (Doc. No. 295.)  A hearing on the motion was held on December 13, 2023.  For the reasons set forth on the record, and as explained in more detail below, the motion is **granted**.

## I.    BACKGROUND

### A.  FACTUAL AND PROCEDURAL BACKGROUND

This dispute centers around the consumer credit reports Defendant CoreLogic Credco ("Credco") sent to its customers and the alleged inaccurate information contained within these reports.

Defendant Credco is a California-based consumer reporting agency ("CRA"). Defendant sells consumer reports to mortgage lenders, mortgage brokers, auto dealers, and other entities seeking to evaluate consumers creditworthiness.  (Doc. No. 49 ¶¶ 2, 17.)

As a CRA, Defendant is subject to the provisions of the Fair Credit Reporting Act ("FCRA"), 84 Stat. 1125, as amended, 15 U.S.C. section 1681 *et seq.*[1], and the California Consumer Credit Reporting Agencies Act ("CCRAA"). The FCRA "imposes a host of requirements concerning the creation and use of consumer reports." *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 335 (2016). A handful of the FCRA's requirements are relevant to this case. The Act requires CRAs to "follow reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).[2]

The consumer reports Defendant sent to its customers included products called: "ProScan OFAC Report," "Bureau OFAC," "LoanSafe Fraud Manager," "LoanSafe Risk Manager OFAC," and "ProScan ID Index OFAC" (collectively "OFAC reports"). OFAC is the United States Treasury Department's Office of Foreign Assets Control. *See* Home | Office of Foreign Assets Control (treasury.gov). OFAC maintains a list of "specially designated nationals" ("SDN") who threaten America's national security. *See id.* Individuals on the OFAC list include terrorists, drug traffickers, and other serious criminals. *Id.* Generally, it is unlawful to transact business with any person on the list. 31 C.F.R. pt. 501, App. 1 (2020).

On June 2, 2020, Plaintiff Marco A. Fernandez filed a putative class action complaint against Defendant in San Diego Superior Court alleging a violation of the FCRA; willful

---

[1] The FCRA seeks to promote "fair and accurate credit reporting," protect consumer privacy, and regulates the consumer reporting agencies that compile and disseminate personal information about consumers. *See TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2200 (2021); 15 U.S.C. § 1681(a).

[2] Under the FCRA, consumers can bring a cause of action to sue and recover damages for certain violations. Pursuant to § 1681g(a) a CRA is required to disclose to consumers the contents of their consumer files at the time of the request, including the identities of companies that had requested reports about them in the previous year. *See* 15. U.S.C. § 1681g(a).

violations of the CCRAA, CAL. CIV. CODE section 1785.1, *et seq.*[3], and violations of the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE section 17200, *et seq.* (Doc. No. 1-3 at 12-32[4].)  On July 6, 2020, Defendant removed this action to federal court on the basis of federal question jurisdiction, 28 U.S.C. section 1331 and pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1453.  (Doc. No. 1.)

On September 28, 2020, Plaintiff filed the First Amended Putative Class Action Complaint.  (Doc. No. 14, "FAC".)  In October 2019, Plaintiff contends he applied for a mortgage as part of the home-buying process.  (FAC ¶¶ 3, 24.)  Plaintiff alleges that in connection with his application, Pulte Mortgage, LLC requested a credit report from Defendant, and that the report Defendant supplied was inaccurate.  (*Id.*  ¶¶ 3, 26.) Specifically, the report furnished by Defendant inaccurately stated Plaintiff was a person on the United States Department of the Treasury OFAC's SDN list.  (*Id.* ¶¶ 4, 32.)

Further, the report supplied by Defendant included a record belonging to "Mario Alberto Fernandez Santana," a resident of Mexico, born in May 1977.  (*Id.* ¶¶ 4, 37.) Plaintiff complains that a "rudimentary review of the record" would reveal that his name, date of birth and address differ vastly from the Mario Alberto Fernandez Santana reported on the credit report furnished by Defendant.  (*Id.*  ¶¶ 5, 38-41.)  Additionally, it is alleged that the OFAC/SDN Search Results section of the report generated by Defendant, falsely

---

[3] The CCRAA defines a credit report in almost the same terms as 15 U.S.C. § 1681(a)(d). *See* CAL. CIV. CODE § 1785.3(c) ("'Consumer credit report' means any written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: (1) credit to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) hiring of a dwelling unit [], or (4) other purposes authorized in Section 1785.11.").

[4]  Document numbers and page references are to those assigned by CM/ECF for the docket entry.

reported that Plaintiff "was a match to a suspected narcotics trafficker included on the OFAC-SDN & Blocked Persons List." *Id.* at ¶ 32.

Initially, Defendant filed a Motion to Dismiss the FAC (Doc. No. 15), and then subsequently filed a Motion to Stay Proceedings Pending the Supreme Court's decision in *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), (Doc. No. 23).  On April 8, 2021, this court granted Defendant's motion and ordered all proceedings in this action stayed pending the Supreme Court's decision in *Ramirez.*  (Doc. No. 27 at 8.)[5]

On March 25, 2022, this court denied both Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and its Motion to Strike Class Allegations from Plaintiff's First Amended Complaint.  (Doc. No. 48)

On November 11, 2022, Defendant filed its Motion to Deny Class Certification. (Doc. No. 101).  On February 17, 2023, Plaintiff filed his response in opposition, (Doc. No. 146) and Defendant duly replied (Doc. No. 157).

On February 13, 2023, Plaintiff filed his Motion to Certify Class.  (Doc. No. 138.) On May 8, 2023, Defendant filed its response in opposition, (Doc. No. 235) and Plaintiff duly replied (Doc. No. 251).[6]

---

[5] In light of the stay, and to assist in managing its own calendar, the court also denied without prejudice Defendant's pending Motion to Dismiss First Amended Complaint as moot.  (Doc. No. 27 at 8.)  In doing so, the court provided that once the stay was lifted, any relevant motions attacking the complaint brought under Federal Rules of Civil Procedure 12 or 23 could be refiled.  (*Id.*)  On June 25, 2021, the Supreme Court rendered its decision in *Ramirez.*  Subsequently, on July 6, 2021, the parties provided this court with a Joint Status Report (Doc. No. 31), and this court issued a Scheduling Order (Doc. No. 32).

[6] On February 23, 2023, the Parties filed a Joint Motion to Modify Amended Scheduling Order and Continue Hearing and Related Briefing Schedule.  (Doc. No. 166.)  The Parties represented that they wished to reset the hearing on the Parties' Cross Motions on the issue of Class Certification because they wished to conserve resources in advance of the private mediation set for April 27, 2023.  (*Id.*)  The court denied-in-part and granted-in-part the Parties' request, with the hearing on the motions being reset to June 5, 2023.  (Doc. No. 172.)

The Parties participated in numerous settlement negotiations, (*see* Doc. No. 295 at 11), which helped lead to the proposed Settlement currently before the court.

On December 13, 2023, the court held a hearing on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement where the court expressed numerous concerns about the Parties proposal.  (*See generally* Doc. No. 300.)  In response to the questions raised at oral argument, on December 19, 2023, the court issued an order requesting additional briefing on four key areas, namely: (1) to explain why the administration of the Inaccurate Reporting Class should not proceed under the typically recognized opt out procedure; (2) to demonstrate that requiring only the Inaccurate Reporting Class to file a claim form, along with an attestation, is a reasonable administrative requirement which generally does not impose an undue burden on members of this proposed class as compared to the other classes in the Settlement; (3) to address specific questions regarding the Settlement Administrator's range of fees; and (4) the rationale for including an Opt-Out Threshold Provision that allows Defendant to rescind the Settlement if a certain number of Inaccurate Reporting class members opt out.  (Doc. No. 301.)  The Parties duly responded (Doc. No. 306) and submitted an Amended Settlement Agreement and related documents (Doc. No. 306-1).  The court has reviewed the Amended Settlement Agreement and Notices and is satisfied that the appropriate changes have been made and its concerns have been redressed.

**B.  Settlement Agreement Terms**

On October 23, 2023, Plaintiff filed the instant Motion for Preliminary Approval of Class Action Settlement.  (Doc. No. 295.[7])  The motion contained drafts of the claim form

---

[7] In connection with Plaintiff's Motion, Plaintiff also filed a Motion to Seal (Doc. No. 296), seeking to seal one portion of the original settlement agreement which concerned the opt-out threshold provision.  Good cause appearing, the court **GRANTS** Plaintiff's Unopposed Motion to Seal Documents Related to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. No. 296).  *See In re Yahoo ! Inc. Sec. Litig.,* No. 17-CV-00373-LHK, 2018 WL 11349976, at *2 (N.D. Cal. May 9, 2018)

3:20-cv-1262-JM-(SBC)

and notices to potential class members that would be emailed, mailed, and posted on a website.  (Doc. No. 297, Exhibit A, B, E, F, at 38-43, 55-66.)

On January 23, 2024, following the hearing on the pending motion, and in response to the request for additional briefing, the Parties filed a Joint Response to Request for Additional Briefing (Doc. No. 306) along with an Amended Settlement Agreement ("the Agreement") and Amended Proposed Notices to the Classes (Doc. No. 306-1[8]).

Defendant provided data to Plaintiff regarding its OFAC Reports and has produced data related to consumer file and report requests, along with agreed upon supplemental data. The Parties refer to this information as the "Class Data."  Doc. No. 306-1 ¶ 4.2.2. Plaintiff has provided the Class Data to the Settlement Administrator. *Id*.  The information in the Class Data is needed in order to compile the "Settlement Class Notice List," which is the list of those consumers to whom notice shall be sent. *Id*. ¶ 2.32, 4.2.2.  Settlement class members who are listed on the Settlement Class Notice List will be eligible for a cash payment.  *Id*. ¶ 4.3.1.1.  A settlement class member who is not on the Settlement Class Notice List, but who submits a Claim Form and provides reasonable proof of class membership, is eligible for a cash payment.  *Id*.

---

("There are compelling reasons to keep the opt-out threshold number confidential 'in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.'") (citation omitted).

[8]  In connection with their Joint Response to Request for Additional Briefing, the Parties filed a Joint Motion to Seal Documents Related to Joint Response to Request for Additional Briefing (Doc. No. 307).  The Parties seek to seal one portion of the Amended Settlement Agreement concerning the opt-out threshold provision, specifically the precise numeric threshold of this provision.  Good cause appearing, the court **GRANTS** Joint Motion to Seal Documents Related to Joint Response to Request for Additional Briefing (Doc. No. 307) (Doc. No. 296).  *See In re Yahoo ! Inc. Sec. Litig.,* 2018 WL 11349976, at *2.

In the Agreement, the Parties changed the class definitions from those set forth in the FAC[9].

_____

[9] In the FAC Plaintiff seeks to represent seven classes consisting of:

**1. Inaccurate Reporting Class**

All individuals who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database in the seven years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**2. Inaccurate Reporting FCRA Class**

All individuals who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**3. Inaccurate Reporting UCL Subclass**

All individuals who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database in the four years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**4. Failure to Disclose Class**

All individuals (1) who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not disclose the OFAC/SDN information.  The class period is all persons who made requests to Defendant in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**5. Failure to Identify Class**

All individuals (1) who were the subjects of consumer reports furnished by Defendant (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not identify the user that procured the consumer report

The agreement (Doc. No. 306-1) whittles the seven classes identified in the FAC down to three, defined as follows:

- **Inaccurate Reporting Class:**
  All individuals who were the subject of an OFAC Report that Defendant disseminated to a third party from June 3, 2013 through August 28, 2023, where the OFAC Report reported at least one hit, match, possible match, or "record for review."
- **Failure to Disclose Class:**
  All individuals (i) who were the subject of an OFAC Report that Defendant disseminated to a third party from June 3, 2015 through August 28, 2023, where the OFAC Report reported at least one hit, match, possible match or "record for review"; and (ii) who made a request to Defendant for their consumer file or report after such OFAC Report had been disseminated.

within the one-year period on which the request was made.  The class period is all persons who made requests to Defendant in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**6. Failure to Disclose UCL Subclass**

All individuals (1) who were the subjects of consumer reports furnished by Defendant which contained public record information in the "OFAC/SDN" section of the reports where the name or date of birth or address of the subject of the report does not match the name or date of birth or address in the government database (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not disclose the OFAC/SDN information.  The class period is all persons who made requests to Defendant in the four years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

**7. Failure to Identify UCL Subclass**

All individuals (1) who were the subjects of consumer reports furnished by Defendant (2) who made a request to Defendant for their consumer file or report and (3) for whom Defendant did not identify the user that procured the consumer report within the one-year period on which the request was made.  The class period is all persons who made requests to Defendant in the five years predating the filing of the initial Complaint in this matter and continuing through the date the class list is prepared.

FAC at 11-12.

- **Failure to Identify Class:**
  All individuals who, from June 3, 2015 to June 30, 2021, made a request to Defendant and to who Defendant provided a consumer file disclosure.

Doc. No. 306-1 ¶ 2.31.  The Inaccurate Reporting Class and Failure to Disclose Class have a Class Period of June 3, 2013, through August 28, 2023, whereas the Failure to Identify Class Period spans from June 3, 2015 to June 30, 2021.  *Id*.

According to the Agreement, there will be 7,400 Failure to Identify class members who will each receive an award of $500.  Doc. No. 306-1 ¶¶ 4.1, 4.3.1.2.  Additionally, there are 3,600 Failure to Disclosure class members who will each receive a $1,000 award.  *Id*.  Finally, 705,000 putative class members have been identified in the Inaccurate Reporting Class, and each shall receive a pro rata payment from the Net Settlement Fund.  *Id*.  If an individual is a member of multiple Settlement Classes, they will receive payment for each settlement class for which they are a member.  *Id*.  ¶ 4.3.1.1.

The Agreement requires Defendant pay a gross settlement amount of $58,500,000, provided by its insurance carriers, allocated as follows: $20,000 as an incentive award for Plaintiff and no greater than 25% of the Settlement Fund ($14,625,000) anticipated to be awarded to Plaintiff's counsel.  *Id*.  ¶¶ 4.3.1, 5.3.  Under the terms of the Settlement, Angeion Group ("Angeion") will be used as the Settlement Administrator and will be paid from the Settlement Fund.  *Id*.  ¶ 4.3.1.  The Parties state that:

> Angeion now anticipates that the cost to provide notice and administration services will be approximately $2,150,000 [] stem[ming] from: (1) the costs of postage and printing to mail checks to hundreds of thousands of Class Members who will now receive payment automatically []; (2) the costs associated with a second distribution to Settlement Class Members who cash checks from the initial distribution or who have elected to receive payments through alternate means; and (3) the cost of the paid mediate campaign.[10]

---

[10]   In the original submission, that required the 705,000 members of the Inaccurate Reporting Class to file a claim form and attestation in order to receive any cash payment, the Parties stated that "[t]he precise amount of administration costs [would] depend on the

Doc. No. 306 at 10-11.

Settlement class members have ninety (90) days after their checks are mailed to negotiate them.  (Doc. No. 306-1 ¶ 4.3.1.4.)  Any remaining amounts left in the Settlement Fund, including those resulting from uncashed or returned checks, shall be redistributed as a second payment to each Inaccurate Reporting settlement class member who cashed their original paper check or received payment through electronic means, if the distribution would be at least $5.  *Id.*  Should redistribution be infeasible or should amounts remain in the Fund even after redistribution, the Settlement Administrator shall donate any residual amounts left in the Settlement Fund to the Lawyers' Committee for Civil Rights as a *cy pres* recipient.  *Id.*  The *cy pres* recipient shall agree to use the funds for non-litigation purposes.  Under no circumstances shall any amount of the Settlement Fund revert to the Defendant.  *Id.*

As part of the Settlement Defendant has agreed to: (1) maintain procedures meant to ensure that no ProScan OFAC reports state "possible match" when the only matching data element is the name; (2) maintain procedures meant to ensure that its ProScan OFAC reports do not state "possible match" where the only matching element between the consumer and countries/vessels is the consumer's name; and (3) remove the "Search Criteria" field from its ProScan OFAC reports.  Doc. No. 306-1 at 57-59 (Consent Injunctive Relief Order).  In sum, Defendant will improve its matching criteria for its ProScan OFAC reporting and the formatting of its reports.

In exchange for their share of the Settlement, all class members are deemed to release Defendant from claims relating to the subject matter of this action, including under the FCRA, California law, common law, or under any other principle of law or equity resulting

ultimate claims rate, but for a claims rate of 7%-10%, Angeion "has agreed to a 'not to exceed' amount' of $1,425,000."  Doc. No. 295 at 14.

from, arising out of, or related to any allegations in the FAC.  Doc. No. 306-1 ¶¶ 2.28, 4.4.2, 4.4.

## II.   DISCUSSION

### A.  Preliminary Certification of Rule 23 Class

Before approving the Settlement, the court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S 338 (2011).  In the settlement context, the court "must pay undiluted, even heightened, attention to class certification requirements."  *Id.*  In addition, the court must determine whether class counsel is adequate (Fed. R. Civ. P. 23(g)), and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997)).

### 1.  Federal Rules of Civil Procedure 23(a)'s Requirements

The court will begin with the threshold task of determining if Rule23(a)'s four requirements have been met.

#### i.  *Numerosity*

The "numerosity" requirement is satisfied if the "class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[P]roposed classes of less than fifteen are too small while classes of more than sixty are sufficiently large."  *Harik v. Cal. Teachers Ass'n,* 326 F.3d 1042, 1051-52 (9th Cir. 2003).

Here, the Parties anticipate the Inaccurate Reporting Class will be made up of approximately 705,000 members, the Failure to Disclose Class consists of approximately 3,600 individuals, and that there are roughly 7,400 class members making up the Failure to Identify Class.  Doc. No. 306-1 ¶ 4.1; *see also* Doc. No. 295 at 26.

Considering the information supplied by Plaintiff and applying common sense, the court is comfortable concluding that the proposed classes will be comprised of enough members to be sufficiently large. *See, e.g., Walker v. Hewlett-Packard Co.,* 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008). ("A class greater than forty members often satisfies this requirement ….."); *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 256 (C.D. Cal. 2008) ("Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity requirement, mere speculation as to the number of parties involved is insufficient.") (citation omitted). *See also* 1 Newberg on Class Actions, § 3:13 ("[A] good-faith estimate of the class size is sufficient when the precise number of class members is not readily ascertainable. The estimate generally should be supported by more than speculation …"). Joinder of all these potential plaintiffs would be impracticable. Accordingly, the numerosity requirement has been met.

### ii. Commonality

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "What matters to class certification … is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart,* 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 132 (2009)) (emphasis in original). Class members' claims must "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

As the court outlines in detail below, here, the commonality requirement is satisfied because the class claims involve common questions of law and fact regarding Defendant's OFAC reports.

12

### a. Inaccurate Reporting Class

A central issue common to the Inaccurate Reporting Class is whether Defendant's OFAC reports should be considered consumer reports under the FCRA and CCRAA. Another central issue common to all putative class members is whether Defendant's name-only matching procedure was reasonable to ensure the maximum possible accuracy of the information furnished by Defendant to its customers. *See Ramirez v. Trans Union, LLC,* 301 F.R.D. 408, 418 (N.D. Cal. 2014) ("[T]he question of whether using the name-only matching logic assures maximum accuracy is [] a [common] question."). Put another way, did Defendant follow the industry standard and practice in how it ran OFAC searches, or should it have run these searches by setting the search parameters to compare all available customer inputs against the entries on the OFAC Lists? *See Adan v. Insight Investigation, Inc.,* No. 16cv2807-GPC(WVG), 2018 WL 467897, at *12 (S.D. Cal. Jan. 18, 2018) (denying defendant's motion for summary judgment on claim of willful FCRA section 1681 violation based on first and last name and date of birth criminal record matching); *Patel v. Trans Union, LLC,* 308 F.R.D. 292, 304 (N.D. Cal. 2015) (commonality found where one of the "most central questions" in suit was "were there reasonable procedures in place (here, the name only logic) to ensure the maximum possible accuracy of the information?"). This leads to a further, related, common question: if Defendant did follow industry practice, does conforming to these industry standards shield it from FCRA liability? Accordingly, the commonality requirement has been met for the Inaccurate Reporting Class.

### b. Failure to Disclose and Failure to Identify Classes

Turning to the Failure to Disclose Class, the underlying common question is whether Defendant violated 15 U.S.C. section 1681g(a) by failing to disclose OFAC report results to consumers who requested their files or consumer reports. As for the Failure to Identify Class, the common question underlying all class member's claims is whether Defendant violated the FCRA by failing to disclose inquiry history to all individuals making "consumer file disclosure requests." Defendant's anticipated defense poses a common

question that can be resolved with common proof.  Additional common questions include whether Defendant's 15 U.S.C. section 1681g(a) violations were willful and the proper measure of statutory and punitive damages.

Further, like the Inaccurate Reporting Class, these classes involve common questions surrounding Defendant's patterns and procedures.  For example, a common question is whether the disclosure was accurate. Another common question surrounds whether Defendant consistently failed to disclose the OFAC reports "possible matches" reporting to consumers who requested their files in violation of § 1681g(a).  This is sufficient to establish commonality.  *See Patel,* 308 F.R.D. at 304 (concluding commonality met for 15 U.S.C. § 1681g violation subclass because a "central issue" was whether defendant disclosed the potential OFAC hit reporting to consumers who requested their files); *Larson v. Trans Union, LLC*, No. 12–cv–05726–WHO, 2015 WL 3945052, *10 (N.D. Cal. June 26, 2015) ("The question of whether Trans Union violated section 1681g's clear and accurate disclosure requirement is sufficient to establish commonality."). In sum, Defendant's pattern and practices in responding to disclosure requests for OFAC reports published to consumers comprise the proverbial "glue" holding these classes together.  Accordingly, the commonality requirement has been met for the Failure to Disclose and Failure to Identify classes.

### iii. Typicality

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be identical."  *Hanlon,* 150 F.3d at 1020.  Typicality "refers to the nature of the claim or defense of the class representative, and not to specific facts from which it arose or the relief sought."  *Parsons v. Ryan,* 754 F.3d 657, 865 (9th Cir. 2014).  Typicality can be measured by looking at "'whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members

have been injured by the same course of conduct.'"   *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiff's claims are typical of the classes he seeks to represent, as set forth in the FAC.   For the Inaccurate Reporting Classes, it is alleged Defendant prepared and disseminated OFAC reports to third parties that falsely identified Plaintiff and each putative class member as "possible matches" to the OFAC SDN list.   *See e.g., Kang v. Credit Bureau Connection, Inc.,* No. 1:18-cv-01359-AWI-SKO, 2022 WL 658105, *4 (E.D. Cal. Mar. 4, 2022) (finding plaintiff's claims typical of class where "defendant prepared a report about [plaintiff] and each class member that included an inaccurate OFAC 'Hit' generated by its 'similar name' matching script and published that OFAC information to its customers.").   For the Failure to Disclose and Failure to Identify Classes, the disclosures Plaintiff and the putative class members received were allegedly incomplete and did not meet the regulatory requirements.   *See, e.g., Larson,* 2015 WL 3945052, at *13 (finding typicality met where plaintiff alleged that defendant provided inadequate OFAC disclosures and "[plaintiff's] claims are reasonably coextensive with those of absent class members.").   At bottom, Defendant's patterns and procedures, the alleged willfulness of Defendant's conduct, and the alleged resulting violations of the applicable statutory provisions are logically consistent amongst class members.   *Cf. Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) ("[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.") (citation omitted).

Additionally, the defenses that apply to Plaintiff and putative class members will be similar, if not identical.   Furthermore, although Plaintiff and each putative class member's individualized experience will differ slightly, this need not defeat typicality.   Finally, an additional positive weighing in favor of typicality is that all members would benefit from the injunctive relief requested.   Accordingly, for purposes of settlement, the typicality requirement has been met.

### iv. Adequacy

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that the court address two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *In re Mego*, 213 F.3d at 462. A court certifying a class must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the class." *Id.* at 23(g)(1)(B).

Here, there is no obvious conflict between Plaintiff's interests and those of the classes. Plaintiff has demonstrated that he has fairly and adequately protected the interests of the other members of the classes as required by Rule 23. He has vigorously assisted counsel in litigating this case, responded to discovery, and participated in the mediation and settlement negotiations. *See* Doc. No. 295-1 at ¶ 9. Plaintiff's counsel maintain they have "diligently investigated and litigated the claims at issue here," *id.* at ¶ 6, "zealously represent[ing]" the settlement classes "for well over three years of labor-intensive litigation with no guarantee of a successful resolution," thereby "show[ing] laudable dedication" to the settlement classes. Doc. No. 295 at 17, 18. The court has no reason to doubt the qualifications or legal acumen of the firm of Hueston Hennigan to represent the classes. *See id.* at ¶¶ 6, 8, 10-15, 17-19. Accordingly, the court finds this element satisfied for the purposes of preliminary approval.

### 2. Federal Rules of Civil Procedure Rule 23(b)(3)'s Requirements

Having determined that Rule 23(a)'s requirements have been met, the court will next consider if Rule 23(b)(3)'s have been satisfied.

1  "Rule 23(b)(3) permits a party to maintain a class action if . . . the court finds that

2  the questions of law or fact common to class members predominate over any questions

3  affecting only individual members, and that a class action is superior to other available

4  methods for fairly and efficiently adjudicating the controversy." *Conn. Ret. Plans & Trust*

5  *Funds v. Amgen Inc.,* 660 F.3d 1170, 1173 (9th Cir. 2011), *aff'd* 133 S. Ct. 1184 (2013)

6  (citing Fed. R. Civ. P. 23(b)(3)).   The "predominance inquiry tests whether proposed

7  classes are sufficiently cohesive to warrant adjudication by representation."   *Hanlon,*

8  150 F.3d at 1022 (quoting *Amchem Prods, Inc.,* 521 U.S. at 623).   An examination into

9  whether there are "legal or factual questions that qualify each class member's case as a

10  genuine controversy" is required.   *Id.*   The superiority inquiry "requires determination of

11  whether the objectives of the particular class action procedure will be achieved in particular

12  the case."   *Id.* at 1023.

### i. *Predominance*

14  Here, there are three core questions common to all settlement classes, namely: "(1)

15  whether [Defendant's] conduct violated the applicable provision of the FCRA/CCRAA;

16  (2) whether [Defendant's] conduct was willful; and (3) the proper measure of statutory and

17  punitive damages."   Doc. No 295 at 30.   *See, e.g.*, *Kang,* 2022 WL 658105, at *6 (finding

18  the predominance requirement met where "[t]he primary common question is whether

19  Credit Bureau's 'similar name' matching script system was a reasonable procedure to

20  assure maximum possible accuracy of the OFAC information it prepared for its

21  customers."); *Patel,* 308 F.R.D. at 308 (concluding that common questions including "Was

22  there a disclosure?," "Was the disclosure accurate?," "Were there reasonable procedures

23  in place (here the name only logic) to ensure the maximum possible accuracy of the

24  information" and "Did [the CRA] include the [OFAC] alert information when it sent

25  disclosures to consumers who had [OFAC] 'alerts' in the[ir consumer] reports?"

26  predominate); *Martinez v. Avantus, LLC,* NO. 3:20-CV-1772 (JCH), 2023 WL 112807, at

27  *9 (D. Conn. Jan. 5, 2023) ("[T]he core inquiries in this case – whether the name-matching

28

logic runs afoul of the FCRA and whether the violation was willful – can be resolved through generalized proof and are more substantial than any individualized issue.”).

Additionally, the defenses that Defendant will likely raise appear to be common to the classes and suggest class action treatment is the correct course of action.  *See Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 490 (E.D. Cal. 2006) (concluding that common issues predominated where defendant asserted affirmative defense that it alleged would potentially bar recovery for certain claims).  Further, since Plaintiff is seeking only statutory and punitive damages, the need for individualized damage determinations is obviated.  This decision illustrates that common damages predominate, lending further support in favor of class treatment.  *See Martinez*, 2023 WL 112807, at *9 (“common issues also predominate the question of damages, because the class-wide pursuit of statutory and punitive damages greatly diminish the need for individual inquiry.”).

### ii. *Superiority*

In this instance, the class-action is superior because (1) individual members of the classes have no interest in controlling the prosecution of this case; (2) Plaintiff’s counsel is unaware of any similar suits brought against Defendant related to its OFAC reports and consumer disclosures; and (3) bringing all potential class member’s claims in one action saves judicial resources.  (Doc. No. 295 at 30-31.)  *See e.g., Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974) (“The individual if aware of all of his claims under the [Truth in Lending] Act is bound to have some reluctance to sue in his own name the supplier with whom he continues to do business and one who could be in a position to visit harsh remedies on the buyer in the event of a subsequent default.”)  *See* 7 Newberg on Class Actions § 21:4 (6th ed. 2022) (“FCRA matters remain good candidates for class actions – they tend to involve a large number of harmed individuals with small claims, often disbursed throughout the country.  Absent a class suit, many FCRA violations would remain un-remedied.”).

In sum, the relatively limited potential recovery for the class members as compared with the costs of litigating the claims support the preliminary conclusion that a class action is superior to other methods for adjudicating this controversy.

In accordance with the above, for purposes of settlement, Plaintiff has satisfied the requirements for certification of classes under Rule 23.  Accordingly, the settlement classes are **CERTIFIED** for settlement purposes only.

## B. Preliminary Approval of Settlement and Federal Rule of Civil Procedure 23(e)

Having certified the settlement classes, the court will now consider the terms of the Settlement Agreement itself and make a preliminary determination as to whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

When reviewing a proposed settlement, the court's primary concern "is the protection of those class members, including the named plaintiff, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.,* 688 F.2d 615, 624 (9th Cir 1982).  Ultimately, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

In making the determination of whether the proposed settlement is fundamentally "fair, adequate and reasonable," the court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.* 696 F.3d 811, 818-19 (9th Cir. 2012).  Because a "settlement is the offspring of compromise, the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Since the court is unable to completely assess all factors until after the final approval hearing, "[a]t the preliminary approval stage, a full fairness analysis is unnecessary." *Zepeda v. Paypal, Inc.,* No. C 10-1668 SBA, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (internal quotation marks and citation omitted). Thus, "[c]loser scrutiny is reserved for the final approval hearing." *Sciortino v. PepsiCo, Inc.,* No. 14-cv-00478-EMC, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016).

### 1. Adequacy of Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. For the court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice,* 688 F.2d at 624 (citation omitted).

Through direct notice, along with digital and social media, the Settlement Administrator hopes to contact all reasonably identifiable class members via email and mail. *See* Doc. No. 295 at 6-11; Doc. No. 306 at 6-8. After the court expressed concern at the hearing that the original notices submitted might confuse class members, the original notices submitted have been modified to include additional information about the claims in this case (*compare* Doc. No. 297 at 41-43 *with* Doc. No. 306-1 at 45-48). Similarly, in partnership with the Settlement Administrator, the Parties have reworked the Long Form Notice, Mail Notice, and Email Notice to better describe the case itself, the Settlement, and

the steps available to class members.  Additionally, the Settlement Administrator intends to implement a Settlement Website and toll-free hotline dedicated to informing class members of their rights and options under the Settlement.  *Id.*

Thus, the court agrees that the revised Notice Plan "is the best notice that is practicable under the circumstances" and that a review of the Notice itself indicates that it contains all of the information usually contained in such documents.

### 2. Adequate Representation

Next, the court considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

As discussed above, Plaintiff's counsel are experienced attorneys in the FCRA class action arena, Plaintiff has been actively involved in this litigation since its inception, and the court is unaware of any evidence of a conflict between Plaintiff or his counsel and the rest of the settlement classes.  (Doc. No. 295-1 at ¶¶ 6, 9.)  Thus, pursuant to Rule 23(e), the court finds that Plaintiff and his counsel will fairly and adequately protect the interests of the settlement classes.  *See In re: Cathode Ray Tube (CRT) AntiTrust Litig.,* No. 07- cv- 05944-JST, 2020 WL 1873554, at *8 (N.D. Cal. Mar 11, 2020) (concluding Rule 23(e)(2)(A) satisfied where "Plaintiffs have demonstrated that the representative parties and their counsel will fairly and adequately protect the interests of the [] Classes.").

### 3. Arm's Length Negotiations

Rule 23(e)(2)(B) requires the court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

Here, settlement occurred following participation in mediation and subsequent arms- length negotiations.  The Parties participated in numerous settlement negotiations, including before Magistrate Judges Schopler and Burkhardt.  Two additional mediation sessions before a third party neutral ultimately led the Parties to continue arms-length negotiations culminating in the Agreement before the court. (Doc. No. 295 at 11, 18.)  The fact that the settlement was reached after extensive discovery was completed and with the help of several third-party mediators weighs against collusion and in favor of preliminary

approving the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C). *See also Loreto v. Gen. Dynamics Info. Tech., Inc.,* No. 3:19-cv-01366-GPC-MSB, 2021 WL 3141208, at *4 (S.D. Cal. July 26, 2021) (concluding this factor is likely satisfied as the settlement was "the result of an arm's length negotiation facilitated by an experience mediator after the exchange of sufficient discovery to allow the parties to ascertain Defendant's potential exposure"); *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 170 (N.D. Cal. 2019) ("The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were 'armed with sufficient information about the case' to broker a fair settlement.") (quoting *Acosta v. TransUnion, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)).

Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### i.   *Consideration of the views of counsel*

The court also considers "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026. Here, Class Counsel advocate in favor of settlement, describing the settlement as "the second largest recovery in the history of the FCRA," and claiming that the "the overall settlement amount [is] impressive." Doc. No. 295 at 19. Accordingly, given the complexity of this litigation and the experience of counsel, for preliminary approval purposes, this factor weighs in favor of settlement.

### 4. Adequacy of Relief Provided to the Classes

### i.   *Strength of Plaintiff's case and costs, risks and delay of trial and appeal*

When assessing "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon,* 150 F.3d at 1026. "The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case." *Nat'l Rural Telecomms. Coop. v.* 221 F.R.D. at 527 (citation omitted).

Here, the motion represents that "establishing liability in this case was far from certain, as Defendant has raised numerous defenses that, if accepted by a judge or jury, would undermine Plaintiff's claims." Doc. No. 295 at 21.  Additionally, Plaintiff maintains that the settlement's monetary and injunctive release is especially impressive when weighed against the significant costs, risks and delays of continued litigation, trial, and appeal. *Id.* 21-22.  Plaintiff has survived a motion to dismiss and strike, fully briefed cross motions on the issue of class certification, analyzed voluminous documents and data, and completed complex expert discovery spanning over three years of litigation.  This has resulted in Plaintiff's counsel expending $850,000 in expenses.  Throughout this litigation, Defendant has vigorously defended against Plaintiff's claims.  Thus, the risks of continuing this litigation are known to all involved.  Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### ii.  Effectiveness of any proposed distribution method

The court must also consider "the effectiveness of any proposed methods of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii).  "Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

The papers make it clear that the $58.5 million settlement amount will only be used to pay: (1) the submitted claims of the 705,000 Inaccurate Reporting Class on a pro-rata basis; (2) the 7,400 Failure to Identify class members $500 each; (3) the 3,600 Failure to Disclose class members $1,000 each; (4) Angeion Group, the settlement claims

administrator; (5) any amounts that may be awarded as service fees; and (6) Class Counsel for any award of attorneys' fees, costs and expenses incurred in this action.

The Parties have generated what they call "Class Data" from data Defendant provided to Plaintiff from OFAC reports, consumer file and report requests, and supplemental data. Doc. No. 306-1 ¶ 4.2.2. Plaintiff has provided the Class Data to the Settlement Administrator. *Id.* The Class Data contains the information needed for the "Settlement Class Notice List." *Id.* Class Members who are listed on the Settlement Class Notice List will be eligible for a cash payment. *Id.* ¶ 4.3.1.1. A settlement class member who is not on the Settlement Class Notice List, but who submits a Claim Form and provides reasonable proof of class membership will be eligible for a cash payment. *Id.*

The Settlement Administrator will mail the Notice, postage prepaid, to all individuals on the Settlement Class Notice List. *Id.* ¶ 4.2.3. The Settlement Administrator shall also use commercially reasonable methods to locate email addresses for all Settlement class members and shall send them the Email Notice regarding settlement. *Id.* ¶ 4.3.2.1. A Settlement Website will also be created and maintained by the Settlement Administrator. *Id.* ¶ 4.2.4. If an individual is a member of multiple settlement classes, they will receive payment for each settlement class for which they are a member. *Id.* ¶ 4.3.1.2. The Settlement Administrator shall receive and process all Claims Forms and shall reject any forms that do not meet the submission requirements. *Id.* ¶ 4.3.1.3. Prior to disallowing the Claim, the Settlement Administrator shall notify the Claimant and give them the change to remedy any deficiencies. *Id.*

Each class member's allocation of the Net Settlement Fund default payment method will be paper checks, unless the settlement class member has returned a Claim Form electing an alternative payment method including but not limed to Venmo, PayPal, Zelle, and/or prepaid card. *Id.* ¶¶ 4.3.1.2., 4.3.1.3.; Doc. No. 306-1 at 42-43 (Claim Form). The method of distributing relief is, therefore, simple and effective. *See Walters v. Target Corp.*, No. 3-16-CV01678-L-MDD, 2019 WL 6696192, at *7 (S.D. Cal. Dec. 6, 2019) (finding "the effectiveness of the proposed method for processing and distributing the class

relief adequate because of its clear processing guidelines and automatic distribution to absent class members."). Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### 5. Terms of Attorneys' Fees

As part of evaluating the settlement terms, the court must also consider "the terms of any proposed award of attorneys' fees" to determine "whether the attorneys' fees arrangement shortchanges the class." *Briseno v. Henderson,* 998 F.3d 1014, 1024 (9th Cir. 2021) (in part quoting Fed. R. Civ. Pro. 23(e)(2)(C)(iii)). Courts "must balance the proposed award of attorney's fees vis-à-vis the relief provided to the class in determining whether the settlement is adequate for class members." *Id.*

Here, the Settlement provides that Class Counsel will not seek fees greater than $14,625,000.00 or 25% of the Settlement Fund. Doc. No. 306-1 ¶ 5.3. The Agreement is silent as to whether Defendant will oppose Class Counsel's motion for attorneys' fees. Thus, the Settlement is not conditioned upon the court awarding the benchmark 25% courts look to when employing the percentage-of-recovery method and appears to not contain a clear-sailing provision. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d. 935, 947-48 (9th Cir. 2011) (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)) (courts are wary of "clear sailing agreements," in which the defendant agrees not to oppose a fee motion as long as it does not exceed a set amount, because of the concern that counsel may have "bargained away something of value to the class" in exchange for "red-carpet treatment on fees"). Moreover, the amount of fees the court ultimately determines is reasonable will not revert to Defendant and will be added to the Net Settlement Amount and be used for the benefit of the Inaccurate Reporting class members. Doc. No. 306-1 ¶ 5.3; *cf. Bluetooth*, 654 F.3d at 949 (noting the unfairness of "kicker" provisions that allow reversion to defendant in the case of a lesser attorney's fee award).

Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### 6.  Equitable Treatment of Class Members

Rule 23(e) also requires examination as to whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P 23(e)(2)(D).  Therefore, the court considers if the proposal "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment).

Both the Failure to Disclose and Failure to Identify Classes will receive automatic cash payments from Defendant of either $1000 or $500, respectively.  Doc. No. 306-1 ¶¶ 4.1, 4.3.1.2.  The 705,000 Inaccurate Reporting class members, however, will each receive a *pro rata* share of the Settlement Fund, *id.* ¶ 4.3.1.2, with each class member receiving an automatic payment of approximately $47, Doc. No. 306 at 4-5.  If 50% of this Class cash their original checks or receive an electronic payment, "the Parties anticipate that there [will] be a redistribution in which each Inaccurate Reporting Class Member who cashed their check or received payment by electronic means [will] be issued a second payment of approximately $47." Doc. No. 306 at 5.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (court approved settlement distribution plan that "'fairly treats class members by awarding a *pro rata* share' to the class members based on the extent of their injuries.'") (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005)); *In re High-Tech Employee Antitrust Litig.*, No. 11- CV- 02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (*pro rata* distribution of fractional share based upon class member's total base salary as fair and reasonable approved by court); *Four in One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (court approved "plan of

3:20-cv-1262-JM-(SBC)

allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable"); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1045-46 (N.D. Cal. 2008) (securities class action settlement allocation approved on a "per-share basis").

Additionally, the Agreement and Notice Plan require the Settlement Administrator to use numerous steps to obtain current contact information for all settlement class members so that they can be issued payment. For any settlement class members, whose Mail Notice is returned as undeliverable, the Settlement Administrator will send as many as four Email Notices, informing the class members that the Administrator has been unable to reach them by mail, and needs more information to issue payment. *See* Doc. No. 306-1 ¶ 4.2.3.1. According to the Settlement Administrator these reminder emails, when sent after final approval, are a "highly effective method for ensuring that class members actually receive their payments." Doc. No. 306-3 ¶ 43.

Based on the above, the court finds that the Agreement likely provides equitable relief to all class members based on the loss they incurred as a result of Defendant's alleged actions. Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### i.  *Equity between unnamed members and class representative*

The $20,000 service fee to be awarded to the named Plaintiff does not appear to be facially unreasonable nor does it render the settlement inequitable. The requested service award—along with attorneys' fees and Claims Administration fees upon court approval—will be deducted from a $58.5 million Settlement Fund. This represents a small portion of the Settlement Fund and is reasonable considering Plaintiff's participation in this litigation for 3 ½ years. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action."). At the final approval hearing Plaintiff must provide sufficient evidence to allow the court to evaluate his award "individually, using relevant factors includ[ing] the actions

the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation...." *Staton,* 327 F.3d at 977 (internal quotation marks omitted).

Because incentive awards are not per se unreasonable, for preliminary approval purposes, this factor weighs in favor of settlement. *See Rodriguez*, 563 F.3d at 958 (finding "[i]ncentive awards are fairly typical in class action cases").

### ii. Release

The Agreement contains a release which provides: all class members are deemed to release Defendant from claims relating to the subject matter of this action, including under the FCRA, California law, common law, or under any other principle of law or equity resulting from, arising out of, or related to any allegations in the FAC.  Doc. No. 297 ¶¶ 2.6, 4.4.

This release seems appropriate as all the claims stem from the identical predicate facts, namely Defendant's provision of credit reports which included OFAC potential match results in the OFAC Reports it disseminated.  Further, the CCCRA is California's equivalent to the FCRA, with the CCRAA defining a credit report in almost the same terms as the FCRA.  *Compare* 15 U.S.C § 1681(a)(d) *with* CAL. CIV. CODE § 1785.3(c).

Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

### 7.  Relief Provided

"The relief that the settlement is expected to provide to class members is a central concern," despite not being specifically enumerated as a Rule 23(e) factor.  2018 Advisory Notes.  The court, therefore, considers "the amount offered in the settlement."  *Hanlon,* 150 F.3d at 1026.

Here, Plaintiff's counsel argues that the relief "provided under the settlement is far more than adequate – it is exceptional. [] [T]o Plaintiff's knowledge, the proposed settlement amount of $58.5 million is the second largest recovery in the history of the FCRA."  Doc. No. 295 at 18-19.

The court agrees that the relief provided to the class is more than adequate. The 7,400 Failure to Identify class members will receive a cash payment of $500. Doc. No. 306-1 ¶ 4.3.1.2. Similarly, the 3,600 Failure to Disclose class members are eligible for a cash payment of $1,000. *Id.* The largest class, the 705,000 Inaccurate Reporting class members will each receive a *pro rata* share of the Settlement Fund, Doc. No. 306-1 ¶ 4.3.1.2, with each class member receiving an automatic payment of approximately $47, *see* Doc. No. 306 at 4-5. The Parties anticipate that a secondary distribution will occur, with each Inaccurate Reporting class member who cashed their initial check or received an electronic payment, potentially, receiving an additional $47. Doc. No. 306 at 5.

Within the papers, it is also argued that the settlement provides important injunctive relief. Under the terms of the Agreement, Defendant has agreed to: (1) maintain procedures meant to ensure that no ProScan OFAC reports state "possible match" when the only matching data element is the name; (2) maintain procedures meant to ensure that its ProScan OFAC reports do not state "possible match" where the only matching element between the consumer and countries/vessels is the consumer's name; and (3) remove the "Search Criteria" field from its ProScan OFAC reports. Doc. No. 306-1 at 57-59 (Consent Injunctive Relief Order). In sum, Defendant will improve its matching criteria for its ProScan OFAC reporting and the formatting of its reports.

Thus, for preliminary approval purposes, both the monetary amount secured and the injunctive relief agreed upon weigh in favor of settlement.

### 8. Class Administrator Fees

Finally, the Court turns to the Parties' approximate fees related to the Settlement Administrator. In their Joint Response to the Court's Request for Additional Briefing the Parties state the Settlement Administrator, Angeion, will incur fees and costs of approximately $2,150,000. (Doc. No. 306 at 11.) *See also* Doc. No. 306-3. Although this estimate appears high it is reasonably on par with what Angeion has claimed in other cases. For example, in *In re Lenovo Adware Litigation*, No. 4:15-md-02624-HSG, 2020 U.S. Dist. LEXIS 198956, at *10 (N.D. Cal. Oct. 26, 2020), Angeion estimated it would cost $92,000

to send checks to 102,150 claimants.  If one multiplies this by 7 to get to the 700,000 claimants here, this is close to the $644,000 Angeion is asking for to mail notice to just over 700,000 people.  *See also*, *Stewart v. Apple Inc.*, No. 19-cv-04700-LB, 2022 U.S. Dist. LEXIS 139222, at *22 (N.D. Cal. Aug. 4, 2022) (approving $2,400,000 in administration costs to Angeion for administration of 16,900,000 class members); *Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 WL 16823044, at *11 (N.D. Cal. Nov. 8, 2022) (approving $1,211,719.26 in administration costs to Angeion for administration of 5,647,781 class members.); *In re Facebook Internet Tracking Litig*., No. 5:12- md- 02314- EJD, 2022 WL 16902426, at *2 (N.D. Cal. Nov. 10, 2022) (Angeion submitted attestation that it would incur a total of $2,353,535.26  for administration of 1,558,805 valid claims).

Moreover, the court has examined Angeion's Projected Proposal Schedule of Fees and Charges, Doc. No. 306-3 at 21-23, and notes that the bulk of its requested fees are assigned to the mailing of the notices to class members and two rounds of distributions to the Inaccurate Reporting Class, which by themselves account for $1.3-$1.4 million.  Given Angeion's own statements that claimants strongly prefer digital payments over traditional checks, it seems unlikely that it will cut 716,000 checks.  Thus, the court anticipates that the actual settlement administration costs will be lower than projected.  And, in light of the amount approved by other courts to Angeion for comparably much larger classes, the court expects Angeion will not exceed the $2,135,228 projected and that the actual fees and costs will be lower.  The court, therefore, cautions the Parties—and Angeion—that it will closely scrutinize any settlement administration fees that exceed the estimated amount set forth in the papers.

## III.   CONCLUSION

In light of the foregoing, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement is **GRANTED**.  (Doc. No. 295.)  Accordingly, the Court hereby **ORDERS** as follows:

**A.** The court preliminarily finds that the provisions of the Amended Settlement Agreement and Release (hereinafter "Agreement"), filed with the court as Exhibit 1 (Doc. No. 306-1) to the Joint Response to Request for Additional Briefing (Doc. No. 306) are fair, just, reasonable, and adequate and, therefore, meet the requirements for preliminary approval.

**B.** For purposes of this Order, the court adopts all defined terms as set forth in the Agreement.

**C.** The court conditionally certifies, for settlement purposes only, the following Rule 23(b)(2) classes:

**Inaccurate Reporting Class**
All individuals who were the subject of an OFAC Report that Defendant disseminated to a third party from June 3, 2013 through August 28, 2023, where the OFAC Report[11] reported at least one hit, match, possible match or "record for review."

**Failure to Disclose Class**
All individuals (i) who were the subject of an OFAC Report that Defendant disseminated to a third party from June 3, 2015 through August 28, 2023, where the OFAC Report reported at least one hit, match, possible match, or "record for review"; and (ii) who made a request to Defendant for their consumer file or report after such OFAC Report had been disseminated.

**Failure to Identify Class**
All individuals who, from June 3, 2015 to June 30, 2021, made a request to Defendant and to whom Defendant provided a consumer file disclosure.

**D.** The court finds, for settlement purposes only, that Defendant has acted on grounds that apply generally to the settlement classes, so that the injunctive relief to which the Parties have agreed, is appropriate in respect to the settlement classes as a whole.

---

[11] An OFAC Report is a report disseminated by Defendant that included any one of only the following products sold by Defendant: ProScan OFAC, Bureau OFAC (meaning OFAC reporting involving any of Equifax, Experian or TransUnion), LoanSafe Fraud Manager, LoanSafe Risk Manager OFAC, and ProScan ID Index OFAC.  Doc. No. 306-1 ¶ 2.22.

**E.**     The court appoints, for settlement purposes only, Marco A. Fernandez as Class Representative for all Settlement Classes.

**F.**     The court appoints E Michelle Drake, John G. Albanese, Sophia M. Rios, David. Langer, Zachary M. Vaughan, Sonjay Singh, and Ariana B. Kiener of the law firm law firm Berger Montague PC as Class Counsel for purposes of settlement.

**G.**     The court appoints Angeion Group as the Settlement Administrator.  The Settlement Administrator shall administer the notice procedures and distribute payments and shall abide by the terms of and conditions of the Agreement regarding the duties of Settlement.  All reasonable fees and costs of the Settlement Administrator shall be paid from the Settlement Fund.

**H.**     Within fourteen (14) days after this order Defendant (or its insurance carrier) shall advance $1,210,000 to the Settlement Administrator to effectuate the Notice Plan. Per the Agreement, the Settlement Fund will be funded by Defendant (or its insurance carriers) 30 days after the Effective Date.

**I.**     As provided in Section 4.2.2 of the Agreement, Defendant has provided the Class Data to Plaintiff.  Plaintiff, in turn, has provided the Class Data to the Settlement Administrator.  The Class Data shall only be used to compile the Settlement Class Notice List.  The Settlement Administrator shall send the agreed upon Notices to the Settlement Class Members who appear on the Settlement Class Notice List.

**J.**     The Updated Class Notices, filed with the court Exhibit B (Doc. No. 306-1 at 44-48), Exhibit E (Doc. No. 306-1 at 60-67), Exhibit F (Doc. No. 306-1 at 68-72), Exhibit I (Doc. No. 306-1 at 88-90), and Exhibit J (Doc. No. 306-1 at 91-92) are approved.  The Court approves, as to form and content, the updated Settlement Class Notices for the purpose of notifying the Settlement Classes as to the proposed Settlement, the Final Approval Hearing, and the rights of Settlement Class Members.  The court finds that the Settlement Class Notices are reasonable, constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and that they meet the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.  Specifically, the court finds that the

3:20-cv-1262-JM-(SBC)

Settlement Class Notices comply with Rule 23(e) of the Federal Rules of Civil Procedure as they are a reasonable manner of providing notice to those Settlement Class Members who would be bound by the Agreement.   The court also finds that the manner of dissemination of notice complies with Rule 23(c)(2), as it also the most practicable notice under the circumstances, provides individual notice to all settlement class members who can be identified through a reasonable effort, and is reasonably calculated, under all the circumstances, to apprise settlement class members of the pendency of this Action, the terms of the Settlement, and their right to object to the Settlement or exclude themselves from the settlement classes.

**K.**   As soon as possible after the entry of this order, but not later than 30 days after the entry of this Order, the Settlement Administrator will complete Notice to the Settlement Classes as provided in the Agreement.

**L.**   The court will hold a Final Approval Hearing on <u>**June 10, 2024**</u> at <u>**10:00 a.m.**</u> before the Honorable Jeffrey T. Miller, United States District Court for the Southern District of California, **Courtroom 15B** (15th Floor – Carter/Keep) 333 West Broadway, San Diego, CA 92101, for the following purposes:

1. Finally determining whether the Classes meet all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and whether the Classes should be certified for the purposes of effectuating the Settlement;

2. Finally determining whether the proposed Settlement is fundamentally fair, reasonable, and adequate, and in the best interests of the Settlement Class Members and should be approved by the court;

3. Considering the application of Class Counsel for an award of attorneys' fees and costs, as provided in the Agreement;

4. Considering the application of the named Plaintiff for a class representative incentive award as provided in the Agreement;

5. Considering whether the order granting final approval of the class action settlement and judgment, as provided under the Agreement, should be

entered, dismissing the Action with prejudice and releasing the Released Claims against the Released Parties; and

6. Ruling upon other matters as the court may deem just and appropriate.

**M.** The court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the class members.

**N.** Attendance at the Final Approval Hearing is not necessary. Settlement Class Members need not appear at the hearing or take any action to indicate their approval of the proposed class action settlement.

**O.** Class Counsel shall file a Motion for Final Approval of the Settlement with a Proposed Order no later than **May 17, 2024**. Any request by Class Counsel for an award of attorneys' fees and expenses shall be filed by **April 1, 2024**, and that request shall be accompanied by supporting evidence to allow Class Members an opportunity to object to the fee motion itself before deciding whether to exclude themselves or object.

**P.** Each Settlement Class Member will have until **May 10, 2024** to object to the Settlement by serving on the Settlement Administrator, Class Counsel, and Counsel for Defendant and filing with the court, by the **May 10, 2024** deadline, a written objection to the Settlement.

**Q.** Each Settlement Class Member who wishes to Opt-Out and be excluded from the Settlement shall mail a letter to the Settlement Administrator. The written request must (1) state the Class Member's full legal name and home address; (2) include the words " I want to opt-out and understand I will receive no money from the Settlement of this Action; (3) be addressed to the Settlement Administrator; (4) be signed by the Class Member or their lawful representative; and (5) be postmarked to the Settlement Administrator no later than **May 10, 2024**.

**R.** Each Settlement Class Member who wishes to object to the Settlement must do so in writing. The objection must: (1) state the Class Member's full legal name, home address, phone number; (2) include the words "Notice of Objection" or "Formal Objection," state in clear and concise terms the legal and factual arguments supporting the

objection and include a list identifying any witness(es) the objector may call to testify at the Fairness Hearing. as well as true and correct copies of any exhibit(s) the objector intends to offer (a "Written Objection Notice"); (3) indicate the number of times the objector has objected to a class action settlement in the past five years and the caption for any such case(s) and a copy of any orders related to or ruling upon the objector's prior objections issued by the trial and appellate courts in each case; (4) identify any counsel representing the objector; (5) identify the number of times the objector's counsel and or counsel's law firm have objected to a class action settlement with the five years preceding the dated of the filed objection; (6) be directed to the Hon. Jeffrey T. Miller, United States District Court for the Southern District of California,  333 West Broadway, Suite 1010, San Diego, CA 92101, and must reference case number 20-cv-1262-JM-SBC; (7) be sent to the Settlement Administrator; (8) be signed by the Class Member of their lawful representative; (9) be postmarked to the Settlement Administrator no later than **May 10, 2024**.

**S.**    If, for any reason, the Agreement is not finally approved, then this Order shall be vacated, the Agreement shall have no force and affect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective position as if the Agreement had never been executed and this Order never been entered.

**T.**    The Parties may further modify the Agreement prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the Settlement provided thereunder.  The court may approve the Agreement with such modifications as may be agreed by the Parties, if appropriate, without further notice to the Settlement Classes.

**U.**    No later than fourteen (14) days prior to the Final Approval hearing date, the Settlement Administrator shall file an affidavit and serve a copy on Class Counsel and Defense Counsel, attesting that Notice was disseminated as required by the terms of the Agreement or as ordered by the court.  This affidavit shall also inform the court of any requests for exclusion from the Classes and objections or other reactions from Class

Members received by the Settlement Administrator.  The affidavit should provide a full report of the duties performed in support of the settlement administration costs.

**V.**    The court retains continuing and exclusive jurisdiction over the action to consider all matters arising out of or connected with the Settlement, including the administration and enforcement of the Agreement.

**IT IS SO ORDERED**.

Dated:  February 8, 2024

_____
Hon. Jeffrey T. Miller
United States District Judge

3:20-cv-1262-JM-(SBC)