Sophia Rios (SBN 305801)
BERGER MONTAGUE PC
8241½ La Mesa Blvd.
La Mesa, CA 91942
T. (619) 489-0300; F. (215) 875-4604
srios@bm.net

E. Michelle Drake, *pro hac vice*
John G. Albanese, *pro hac vice*
Ariana B. Kiener, *pro hac vice*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. (612) 594-5999; F. (612) 584-4470
emdrake@bm.net
jalbanese@bm.net
akiener@bm.net

*Attorneys for Plaintiff*
*Addtl. Counsel on Sig. Page*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO A. FERNANDEZ, individually and as a representative of the class,<br><br>Plaintiff,<br><br>vs.<br><br>CORELOGIC CREDCO, LLC,<br><br>Defendant. | Case No.  3:20-cv-01262-JM-SBC<br><br>**PLAINTIFF'S MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: June 10, 2024<br>Time: 10:00 A.M.<br>Courtroom: 15B<br>Judge: Jeffrey Miller |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>MOTION</u>

Plaintiff Marco A. Fernandez ("Plaintiff"), individually and on behalf of each of the Settlement Classes, respectfully moves the Court for final approval of the Settlement with Defendant CoreLogic Credco, LLC ("Defendant"). Plaintiff requests that the Court grant final approval to the Settlement, enter the Final Approval Order, and order distribution of the Settlement Fund in accordance with the Settlement Agreement. Defendant does not oppose the relief sought in this Motion.

# **TABLE OF CONTENTS**

I.  RELEVANT BACKGROUND ........................................................................2

II.  LEGAL STANDARD ................................................................................2

    A.  Whether the Settlement is Fair, Reasonable, and Adequate .................2

    B.  Whether Certification is Appropriate Under Rule 23 ..........................4

    C.  Whether Notice Was Adequate ......................................................4

III.  ARGUMENT ........................................................................................5

    A.  The Settlement Satisfies the Criteria for Final Approval. ....................5

      i.  The Relevant Hanlon Factors All Favor the Settlement. ..................5

        1.  Although Plaintiff was Confident in His Case, the Risks of Further Litigation Were Significant. ..................................................5

        2.  The Risk of Achieving and Maintaining Class Action Status Was High. ........................................................................................8

        3.  The Relief Provided is More Than Adequate. ..............................9

        4.  The Settlement Was Reached Late in the Proceedings, Only After Significant Discovery Was Completed. ....................................11

        5.  Experienced Counsel Supports the Settlement. ..........................12

        6.  Members of the Settlement Classes Have Reacted Favorably to the Settlement. ..........................................................................13

          a.  Thomas Dorn ..............................................................14

          b.  David Ortiz ................................................................15

          c.  Conclusion on Class Members' Reaction ..........................15

      ii.  The Rule 23(e) Factors Weigh in Favor of Approval. ..................16

        1.  Plaintiff and Class Counsel Have Adequately Represented the Classes. ..................................................................................16

        2.  The Settlement Was Negotiated at Arms' Length. ......................16

        3.  The Monetary and Injunctive Relief Provided in the Settlement is

Exceptional. .........................................................................................17

4. The Settlement Treats Class Members Equitably. ..........................18

   a. The Apportionment of Relief Among Class Members is Appropriate. ..............................................................................18

   b. The Release Impacts All Class Members Similarly. ................19

B. Certification of the Settlement Classes is Appropriate. ....................20

  i. The Settlement Classes Satisfy Rule 23(a). ...................................20

   1. The Settlement Classes Are Numerous. ....................................20

   2. There Are Common Questions of Law and Fact. ......................20

   3. Plaintiff's Claims Are Typical of the Settlement Classes. ........21

   4. Plaintiff and Class Counsel Have & Will Adequately Represent the Settlement Classes. ..........................................................................22

  ii. The Settlement Classes Satisfy Rule 23(b)(3). .............................23

   1. Common Issues Predominate. ....................................................23

   2. Class Treatment is a Superior Means of Resolution. .................23

C. Notice to the Classes Was the Best Notice Practicable. ...................24

CONCLUSION .................................................................................................25

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602 (S.D. Cal. Aug. 18, 2015) ...... 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) .................. 23

*Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307 (D. Or. 2008) .......... 19

*Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ......... 13

*Blount v. Host Healthcare, Inc.*, No. 21-310, 2022 WL 1094616 (S.D. Cal. April 12, 2022) .................................................................................................................... 13

*Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014 (9th Cir. 2021) ......................... 18

*Browne v. Am. Honda Motor Co.*, 2010 WL 9499072 (C.D. Cal. July 29, 2010) .. 15

*Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201 (E.D. Pa. 2011) ............... 6

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...................... 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......................... 2

*In re ConAgra Foods, Inc.*, 2023 WL 8937622 (C.D. Cal. Sept. 18, 2023) ........... 20

*Cuellar v. First Transit Inc.*, 2024 WL 83231 (C.D. Cal. Jan. 8, 2024) ............... 23

*Dennis v. Kellogg Co.*, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ................... 15

*DeRosa v. ViacomCBS Inc.*, 2024 WL 713739 (C.D. Cal. Feb. 21, 2024) ........... 16

*Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011) ............... 6

*Elkies v. Johnson & Johnson Servs.*, 2020 WL 10055593 (C.D. Cal. June 22, 2020) .................................................................................................................... 5, 25

*Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316 (C.D. Cal. June 12, 2014) ......................................................................................................................... 8

*Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246 (11th Cir. 2020) ......................................................................................................................... 7

*Figueroa v. Cap. One, N.A.*, 2021 WL 211551 (S.D. Cal. Jan. 21, 2021) ..... *passim*

*Ford v. CEC Ent. Inc.*, 2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) ............... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................... 3, 4, 5, 8, 9

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .................... 21, 22

*Hawkins v. Kroger Co.*, 2022 WL 345639 (S.D. Cal. Feb. 4, 2022) ..... 4, 7, 9, 12, 20

*Huebner v. Mantech Int'l Corp.*, 2017 WL 11633730 (C.D. Cal. July 29, 2017) . 10

*Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ......... 11

*Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ........................................................................................ 8

*Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 5909151 (E.D. Cal. Oct. 6, 2020) ........................................................................................ 10, 24

*Lemus v. Denny's Inc.*, 2016 WL 11619873 (S.D. Cal. May 5, 2016) ............ 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................ 9

*Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295 (S.D. Cal. 2017) ............ 16

*Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263 (S.D. Cal. Sept. 26, 2022) . 16

*Martin v. Toyota Motor Credit Corp.*, 2022 WL 17038908 (C.D. Cal. Nov. 15, 2022) ........................................................................................ 17

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ............ 23

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................ 15

*In re Netflix Privacy Litig.*, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........ 11

*Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334 (C.D. Cal. July 19, 2021) ........................................................................................ 17

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......... 5

*Pan v. Qualcomm Inc.*, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ............ 15

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ................................ 21

*Perkins v. Linkedin Corp.*, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ......... 14

*Perks v. Activehours, Inc.*, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ..... 5, 25

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) ......................... 20

*Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108 (9th Cir. 2021) ........... 18

*Rhom v. Thumbtack, Inc.*, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) ..... 6, 10

v

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................ 2, 16

*Santillan v. Verizon Connect, Inc.*, 2024 WL 627998 (S.D. Cal. Feb. 13, 2024) .. 18

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013) ................. 23

*Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604 (6th Cir. 2016) ............... 6

*Steinberg v. CoreLogic Credco, LLC*, 2024 WL 1546921 (S.D. Cal. Apr. 9, 2024)
............................................................................................................... 6, 12, 20

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act
(FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ........................................ 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............................................... 7

*In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966639 (C.D. Cal. Jan. 4, 2019)
............................................................................................................................ 8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................... 21

*Weinstein v. Mortg. Contracting Servs., LLC*, 2018 WL 11377827 (C.D. Cal. Oct.
23, 2018) ........................................................................................................... 20

*Yanez v. HL Welding, Inc.*, 2022 WL 788703 (S.D. Cal. Mar. 15, 2022) ............. 8

Rules & Statutes

15 U.S.C. § 1681, *et seq.* ................................................................................ *passim*

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Other Authority

7 Newberg on Class Actions § 21:4 (6th ed. 2022) ............................................ 24

**MEMORANDUM**

After years of hard-fought litigation and extensive arms' length negotiations, Plaintiff Marco A. Fernandez ("Plaintiff") and Defendant CoreLogic Credco, LLC ("Defendant") have reached an agreement to resolve the Fair Credit Reporting Act ("FCRA"), California Consumer Reporting Agencies Act ("CCRAA"), and California Unfair Competition Law ("UCL") claims of hundreds of thousands of consumers. The Court previously granted preliminary approval of the Parties' proposed Settlement. (ECF No. 309, the "Preliminary Approval Order" or "PAO.") Now, the Court should finally approve this excellent Settlement, which will establish an impressive $58.5 million non-reversionary common fund, and institute important injunctive relief focused on the conduct at issue.

In preliminarily approving the Settlement, the Court already concluded that: (1) the Settlement is "fair, reasonable, and adequate," *id.* at 21-29; (2) the proposed Settlement Classes satisfy the requirements for class certification under Rule 23(a) and (b)(3), *id.* at 11-19; and (3) the proposed Notice Plan "is the best notice that is practicable under the circumstances," *id.* at 20-21. Since the entry of the Court's Preliminary Approval Order, nothing has changed that should alter these conclusions. To the contrary, the only substantive development further warrants approval of the Settlement: with Notice now well underway, and the Opt-Out and Objections Deadline having now passed, Settlement Class Members' response to the Settlement has been overwhelmingly positive.

The Settlement should be finally approved. First, all of the factors to be considered, both under Ninth Circuit authority and Fed. Rule Civ. P. 23(e), weigh in favor of final approval. Second, each of the Settlement Classes satisfies the Rule 23 criteria for class certification. Third, in both substance and form, the detailed Notice that was distributed to the Settlement Classes was more than adequate. For these reasons, discussed further herein, Plaintiff, individually and on behalf of the

Settlement Classes, respectfully requests that the Court finally approve the Settlement, enter the Final Approval Order, and approve the distribution of the Settlement Fund in accordance with the Settlement Agreement.

## I.    RELEVANT BACKGROUND

For purposes of efficiency, Plaintiff refers the Court to the Procedural History included in Plaintiff's Motion for Preliminary Approval of Class Action Settlement. (*See* ECF No. 295 at 2-4.). Meanwhile, an overview of the Settlement Agreement's[1] key terms can be found in the Preliminary Approval Order. (PAO at 6-11.)

The Administrator has been administering Notice in accordance with the Preliminary Approval Order and the Settlement Agreement, with the distribution of Notice to the Settlement Classes having commenced on March 8, 2024. (*See* Declaration of Lacey Rose ("Rose Decl.") ¶¶ 5-12.) A more detailed description of the dissemination of Notice to the Settlement Classes will be provided by the Administrator no later than fourteen days prior to the Final Approval Hearing. (*See* PAO at 35-36.) As of the Opt-Out and Objections Deadlines, only 56 Class Members had opted out, and only two Class Members had objected to the Settlement. (Rose Decl. ¶¶ 14, 15.)

## II.    LEGAL STANDARD

The Ninth Circuit adheres to a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]").

### A. Whether the Settlement is Fair, Reasonable, and Adequate

---

[1] As used herein, "Settlement Agreement" or "SA" refers to the Parties' Amended Settlement Agreement, at ECF No. 306-1.

Fed. R. Civ. P. 23(e) requires court approval before a class action can be dismissed via a settlement binding class members. A court may approve a proposed settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." *Id.* "Traditionally, district courts within the Ninth Circuit balanced several factors when assessing a settlement proposal." *Figueroa v. Cap. One, N.A.*, 2021 WL 211551, at *5 (S.D. Cal. Jan. 21, 2021) (Miller, J.). These include:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"Rule 23(e)(2) of the Federal Rules of Civil Procedure, which was added in 2018, generally encompasses the list set forth in *Hanlon*." *Id.* Under this Rule, courts must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23.[2]

---

[2] Courts have recognized that "the enumerated, specific factors added to Rule 23(e)(2) are not intended to displace any factors currently used by the courts, but instead aim to focus the court and attorneys on the core concerns of procedure and

3

## B. Whether Certification is Appropriate Under Rule 23

"Before approving the settlement itself, the court's 'threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.'" *Hawkins*, 2022 WL 345639, at *3 (quoting *Hanlon*, 150 F.3d 1019). "In addition, the court must determine whether 'the action is maintainable under Rule 23(b)(1), (2), or (3).'" *Id.* (citation omitted). Under Fed. R. Civ. P. 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## C. Whether Notice Was Adequate

Lastly "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Specifically, Fed. R. Civ. P. 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice itself "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.* Moreover, under

---

substance that should guide the decision whether to approve the proposal." *Hawkins v. Kroger Co.*, 2022 WL 345639, at *4 (S.D. Cal. Feb. 4, 2022) (Miller, J.) (quotation marks and citation omitted). This Motion will address the Ninth Circuit factors first, and then address the factors in the Rule.

Fed. R. Civ. P. 23(e)(1)(B), the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class members must be notified in a manner that "does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). "The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class." *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) (citation omitted). *See also Elkies v. Johnson & Johnson Servs.*, 2020 WL 10055593, at *2 (C.D. Cal. June 22, 2020) (finding that notice program satisfied due process, and granting final approval of settlement, where "the Court-approved class action settlement administrator reports that the notice program effectively reached at least 70% of likely class members").

## III.   ARGUMENT

For the reasons set forth below, all of the relevant considerations support final approval to the Settlement. The Motion should therefore be granted.

### A. The Settlement Satisfies the Criteria for Final Approval.

First, each of the relevant *Hanlon* factors, as well as the recently added Rule 23(e) factors, weigh in favor of final approval.

#### i.    The Relevant *Hanlon* Factors All Favor the Settlement.

##### 1. Although Plaintiff was Confident in His Case, the Risks of Further Litigation Were Significant.

While Plaintiff strongly believed in the merits of his case, there existed substantial risks in litigation that could have resulted in no recovery for Plaintiff and the Settlement Classes. Plaintiff would have had to win a contested motion for class certification, survive summary judgment, and ultimately, prevail at trial. Each of these stages, of course, posed risk to Plaintiff's likelihood of success.

In particular, Plaintiff faced significant risk on the issue of willfulness. Unlike many consumer protection statutes, the FCRA is not a strict liability statute;

instead, a plaintiff can recover only where the defendant has acted negligently or willfully. *See* 15 U.S.C. §§ 1681n(a)(1); 1681o(a)(1). Where the defendant's violation was only negligent, recovery is limited to actual damages. *Id.* Therefore, to recover certain monetary relief for himself and the Classes, Plaintiff would have had to prove that Defendant violated the FCRA, *and* that it did so willfully—both points that Defendant has vigorously contested. Proving willfulness under the FCRA is an "onerous task with a highly uncertain outcome." *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 475–76 (W.D. Va. 2011) (finally approving FCRA settlement and observing that "given the difficulties of proving willfulness or even negligence with actual damages [under the FCRA], there was a substantial risk of nonpayment"). In fact, FCRA plaintiffs can lose on this standard even after a successful verdict at trial. *See Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016). This risk alone is enough to favor final approval. *See Steinberg v. CoreLogic Credco, LLC*, 2024 WL 1546921, at *5 (S.D. Cal. Apr. 9, 2024) (concluding that "the strength of the parties' positions [and] the risk of further litigation weigh in favor of approving the settlement" where, "to obtain monetary recovery that is certain for all class members, Plaintiff would be required to prove that not only Defendant violated the FCRA, but that Defendant did so willfully").[3]

The risks, however, do not stop there. Citing documentary evidence, as well as expert testimony, Defendant has also maintained that its subject OFAC reports do not fall within the FCRA's definition of "consumer reports," thus placing them outside the reach of the FCRA's requirements. Specifically, Defendant has consistently relied on (1) its customer contract that stated that Defendant's OFAC reporting cannot be used for FCRA purposes, (2) the fact that its OFAC reporting

---

[3] *See also Rhom v. Thumbtack, Inc.*, 2017 WL 4642409, at *4 (N.D. Cal. Oct. 17, 2017) (finding that this factor supported final approval of settlement where plaintiff would have to show that defendant willfully violated the FCRA); *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 213 (E.D. Pa. 2011) (similar).

came after a footer stating "End of Credit Report," and (3) *four* expert witnesses who opined that Defendant's customers did not use OFAC reporting in making credit decisions, to argue that its OFAC reports are not "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing [a] consumer's eligibility for [] credit." 15 U.S.C. § 1681a(d). Relying on a recent Eleventh Circuit case, Defendant has also challenged that its reports—which listed consumers as a "possible match" to the OFAC List—were inaccurate in the first instance, or certainly that inaccuracy could be proven on a classwide basis. *See Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) (holding that a report that described plaintiff as a possible sex offender, and "explained that the matching record was located using a name-only search," was "factually correct," despite the fact that plaintiff was not an actual sex offender). Further, Defendant has urged that, under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), Plaintiff lacks Article III standing.

Plaintiff is confident in his positions on these and other arguments raised by Defendant. Still, the reality is that there was a significant risk that Defendant—whose savvy attorneys have raised novel legal arguments at every turn—very well could have defeated Plaintiff at class certification, summary judgment, trial, and/or eventual appeals. These risks are not hypothetical. Indeed, just last month, a federal district court granted summary judgment to a consumer reporting agency, finding that the "OFAC Indicators" included in the agency's report on plaintiff were not "inaccurate" under the FCRA, even though they contained a "Warning" indicating that plaintiff was on the OFAC List. *See Torres v. Equifax Information Solutions, LLC*, No. 1:21-CV-02056, ECF No. 203 at 5-6, 13-18 (E.D. Pa. April 17, 2024).

All told, in light of the significant litigation risks here, this factor supports final approval. *See, e.g., Hawkins*, 2022 WL 345639, at *5 (finding that the risks of continued litigation weighed in favor of final approval where "[p]roceeding to trial

presents very real risks of an unfavorable decision on the merits and/or on resulting appeals"); *Figueroa*, 2021 WL 211551, at *6 (similar).

### 2. The Risk of Achieving and Maintaining Class Action Status Was High.

While Plaintiff was also confident that his Motion for Class Certification would be granted, there was of course no guarantee. *See In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966639, at *9 (C.D. Cal. Jan. 4, 2019) ("Even a 'small' risk that class certification is not achievable 'weigh(s) in favor of granting final approval, as the settlement would eliminate the risk.'") (citation omitted). The risk that Plaintiff would not be able to maintain class action status through trial was only heightened by the fact that Defendant had not only opposed his Motion for Class Certification, but also affirmatively moved to *deny* class certification, and most certainly would have moved for decertification, if any class was in fact certified.

Indeed, courts routinely find that the third *Hanlon* factor favors final approval where the parties reach a class action settlement prior to a ruling on class certification. *See, e.g., Yanez v. HL Welding, Inc.*, 2022 WL 788703, at *6 (S.D. Cal. Mar. 15, 2022) (concluding that "Plaintiffs' risk of maintaining class action status throughout trial supports final approval of the settlement," and finally approving settlement, where the class was not yet certified when the parties reached a settlement, and defendant likely would have filed a motion for decertification of any class); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *6 (S.D. Cal. Nov. 30, 2021) (concluding that this factor favored final approval where "the class was not yet certified when the parties reached a settlement"); *Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *7 (C.D. Cal. June 12, 2014) (granting motion for final approval of class action settlement where court had not yet certified the class and "Plaintiffs point out that the risk of losing certification, or facing decertification, is always a real possibility"). Such is the case here. Given the risk

that class action status cannot be maintained throughout trial—let alone achieved at all—this factor weighs in favor of final approval.

### 3.  The Relief Provided is More Than Adequate.

"Basic to the process [of evaluating settlements] is the need to compare the terms of the compromise with the likely rewards of litigation." *Hawkins*, 2022 WL 345639, at *6 (citation omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted). *See also Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

The relief provided here is easily adequate. Indeed, the $58.5 million Settlement Fund is, to Class Counsel's knowledge, the second-largest[4] ever recovery in the over fifty-year history of the FCRA. (ECF No. 316-1 ¶ 32.) By way of comparison, the Settlement Fund is more than the two largest FCRA recoveries achieved by the Federal Trade Commission or Consumer Financial Protection Bureau *combined*. (*Id.* ¶ 33.)

On an individual basis, the relief under the Settlement is also impressive. Plaintiff sought statutory damages under the FCRA, which provides for damages of between $100 and $1,000 for each willful violation. (*See* ECF No. 14 ¶¶ 76, 81); 15 U.S.C. § 1681n(a)(1). Through the Settlement, each Failure to Identify Class Member will receive $500, and each Failure to Disclose Class Member will receive $1,000. (SA ¶ 4.3.1.2.) Meanwhile, each Inaccurate Reporting Class Member will receive an estimated initial payment of approximately $47, with an anticipated

---

[4] The largest FCRA class action settlement—$75 million, reached in *In Re: Trans Union Corp. Privacy Litigation*, No. 00-CV-4729 (N.D. Ill.)—involved 190 *million* class members. (ECF No. 316-1 ¶ 32.)

second payment in the same amount. (*Id.*; *see also* ECF No. 306 at 3-4.) Except in very limited circumstances, these payments will be automatic. (*See id.* at 3, n.9.)

These results are laudable, especially given the risks of continued litigation, including the real risk of no recovery at all. Again, "recovery of statutory damages under FCRA requires a high threshold showing that the Defendant acted willfully." *Rhom*, 2017 WL 4642409, at *5 (finally approving FCRA settlement under which each participating class member would receive pro rata share of $41.39). Failure to Identify Class Members will receive 500% of the minimum (or 50% of the maximum) statutory damages that would be available if willfulness was proven. Failure to Disclose Class Members will receive $1,000, the maximum amount of statutory damages available. Finally, members of the Inaccurate Reporting Class are expected to receive a total of approximately $94 or, in other words, 94% of the minimum statutory damages that would be available—again, only if Plaintiff could meet the "high threshold" showing that Defendant acted willfully. *Id.*

As numerous courts have concluded in FCRA class actions, where proving willfulness is difficult and the risk of non-recovery is high, these amounts are reasonable. *See, e.g., Kutzman v. Derrel's Mini Storage, Inc*., 2020 WL 5909151, at *8 (E.D. Cal. Oct. 6, 2020) ("The $100 award contemplated in the Settlement Agreement appears to compare favorably with approved settlements involving FCRA claims.") (collecting cases); *Huebner v. Mantech Int'l Corp.*, 2017 WL 11633730, at *5 (C.D. Cal. July 29, 2017) (finding that this factor favored final approval of FCRA class action settlement where "the award is between 53.53% and 216.5% of the minimum statutory damages that would be available if willfulness could be proven"); *Ford v. CEC Ent. Inc.*, 2015 WL 11439033, at *4 (S.D. Cal. Dec. 14, 2015) (concluding that this factor supported final approval of settlement in FCRA class action where class members would automatically receive $38 and members of subclass would receive an additional $74 because "[i]t is unclear

whether Plaintiffs would be able to prove that Defendant's actions were willful");
*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) ("A $5 or $30 award, therefore, represents 5% to 30% of the recovery that might have been obtained. This is not a *de minimis* amount. Given the likelihood that plaintiffs would have been unable to prove actual damages and the risk that they would have been unable to prove willfulness and recover any damages at all, the court finds that the amount of the settlement weighs in favor of approval.").

In sum, and considering the many obstacles that Plaintiff faced in litigation, the monetary relief—not to mention the injunctive relief, *see In re Netflix Privacy Litig.*, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (explaining that settlement value includes injunctive relief)—offered here is significant. *See Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("[A] sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial. Again, the issue is not whether the settlement 'could be better,' but whether it falls within the range of appropriate settlements.") (citation omitted). This factor favors final approval.

### 4. The Settlement Was Reached Late in the Proceedings, Only After Significant Discovery Was Completed.

In evaluating this factor, "[a] court should focus on whether the 'parties have sufficient information to make an informed decision about settlement.'" *Figueroa*, 2021 WL 211551, at *7 (citation omitted). Here, there is no question that the Parties—who vigorously litigated this case for years—had more than sufficient information to make an informed decision to agree to the Settlement.

The Settlement was reached after informal and formal discovery, which involved 23 depositions and the production and review of hundreds of thousands of pages of documents; Plaintiff's analysis of multiple iterations of complex data sets

from Defendant, with millions of records, each of which came with dozens of data points; the completion of expert discovery, and the exchange of opening and/or rebuttal reports, for a total of 10 experts; significant motion practice (including complete briefing on Defendant's motions to dismiss, strike, and stay, two class certification motions, and numerous discovery motions); two mediation sessions with a third-party neutral; settlement sessions with Magistrate Judge Burkhardt and Judge Schopler; and subsequent arms' length settlement discussions between the Parties' experienced counsel.

Consequently, the Parties had a clear understanding of the claims and defenses in this action and were able to appropriately evaluate their positions prior to settlement. This further weighs in favor of final approval. *See Steinberg*, 2024 WL 1546921, at *6 (concluding that "the record supports the conclusion that the parties conducted sufficient discovery to allow them to make an informed decision to settle this case" where defendant produced, and plaintiff reviewed, more than 5,000 pages of documents and exemplar credit report data, and the parties engaged in full-day mediation with private mediator); *Hawkins*, 2022 WL 345639, at *6 (concluding that this factor weighed in support of final approval where parties had completed "formal and informal discovery, including multiple depositions," and "engaged in lengthy informal settlement negotiations and attended multiple settlement conferences at different stages of this litigation"); *Figueroa*, 2021 WL 211551, at *7 (finding that this factor weighed in favor of final approval where parties had litigated the case for almost two years, "[b]oth parties have been engaged in formal and informal discovery and document exchange, Class Counsel conducted two depositions of Capital One's corporate representatives and both Plaintiffs were deposed," and "[t]he parties also engaged in a full day formal mediation session with a neutral third party").

### 5. Experienced Counsel Supports the Settlement.

The views of experienced counsel are entitled to considerable weight when deciding to approve a settlement. *See Blount v. Host Healthcare, Inc.*, No. 21-310, 2022 WL 1094616, *3 (S.D. Cal. April 12, 2022) ("Great weight is accorded to the recommendation of counsel," because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation") (citing cases in support, internal quotations omitted). Here, Class Counsel are experienced and skilled in consumer class actions, and FCRA actions in particular. (ECF No. 316-1 ¶¶ 4-15.) In light of their expertise in these area, Class Counsel attest that the Settlement is fair, reasonable, and adequate. (Drake Decl. ¶ 9.) Class Counsel's support of the Settlement weighs in favor of its final approval. *See, e.g., Lemus v. Denny's Inc.*, 2016 WL 11619873, at *4 (S.D. Cal. May 5, 2016) (concluding that this factor weighed in favor of approving settlement where "lead class counsel has provided a declaration detailing his extensive experience in class action litigation, and declaring that in his judgment, the settlement is fair, reasonable and adequate" and "[n]o party has provided any evidence contradicting the reasonableness of class counsel's recommendations concerning the settlement"); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009) ("Class counsel has extensive experience in many class action matters, including may wage and hour class actions. Counsel believes the settlement is fair and adequate; which weighs in favor of approval.") (citation omitted).

### 6.  Members of the Settlement Classes Have Reacted Favorably to the Settlement.

Further, Settlement Class Members' reaction to the Settlement has been overwhelmingly positive. As of the Opt-Out and Objections Deadline (May 10, 2024), only 56 Class Members had opted out. (Rose Decl. ¶ 14.) Meanwhile, only two objections were submitted. (*Id.* ¶ 15.) Both objections should be overruled.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### a.  Thomas Dorn

The Court should overrule Mr. Dorn's objection (ECF No. 317) for two independent reasons. First, the objection implicates issues outside the scope of this lawsuit. Mr. Dorn states that he "believe[s]" that he did not receive a COVID stimulus payment, tax refund, or unemployment check, and that he was terminated from a job, "due to the situation of Marco A. Fernandez." (*Id.*) Having reviewed the class data, Class Counsel believes that Mr. Dorn is a member of the Inaccurate Reporting Class. (Drake Decl. ¶ 5.) Although difficult to parse, Mr. Dorn's objection thus seems to attribute the foregoing alleged harms to Defendant's OFAC reporting. However, Mr. Dorn's supposed injuries appear to have no relation whatsoever to Defendant's reporting. Specifically, the class data suggests that Defendant disseminated reports matching Mr. Dorn to the OFAC List to two mortgage providers. (*Id.* ¶ 6.) There is no reason to believe that these reports, disseminated to private parties, had anything to do with Mr. Dorn's purported failure to receive government benefits and a tax refund. Moreover, Mr. Dorn provides no basis to suggest that Defendant's dissemination of its OFAC reports to two companies—neither of which Mr. Dorn has identified as his former employer—caused him to lose his job as a software engineer.

Second, even if Mr. Dorn's purported harms were somehow related to Defendant's reporting (it does not appear they are), Mr. Dorn's apparent dissatisfaction with the amount of the Settlement, based on his unique circumstances, is not reason to deny final approval of the Settlement. *See, e.g., Perkins v. Linkedin Corp.*, 2016 WL 613255, at *4–5 (N.D. Cal. Feb. 16, 2016) (overruling objections, including that "the Settlement does not fully account for the level of harm caused by [defendant]'s conduct," because objectors did not "adequately take into account the risks and delays involved in proceeding to class certification, summary judgment, and/or trial" and "ignore[d] that the Settlement

provides the class with a timely, certain, and meaningful cash recovery"); *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *5 (S.D. Cal. Nov. 14, 2013) (overruling objection arguing that objector should receive greater compensation because "[objector]'s dissatisfaction based on circumstances unique to her and her family cannot undermine the overall fairness of the settlement to the class as a whole in light of the significant risks posed by further litigation").[5]

### b. David Ortiz

For similar reasons, Mr. Ortiz's objection (Rose Decl., Ex. A)—which challenges the amount that members of the Inaccurate Reporting Class are expected to receive under the Settlement—should also be overruled. *See Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *18 (C.D. Cal. July 29, 2010) (overruling 117 objections, including those regarding settlement amount, explaining that "[w]hile the proposed settlement does not perfectly compensate every member of the class, it is unlikely that any settlement of the claims of a class of more than 740,000 members would achieve such a result").

### c. Conclusion on Class Members' Reaction

Here, "the absence of a large number of objections" to the Settlement "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). *See also Browne*, 2010 WL 9499072, at *15 ("The 480 opt-outs represent .065 percent of eligible class members. The 117 objectors represent .016 percent of the class. The comparatively low number of opt-outs and objectors indicates that generally, class members favor the proposed settlement and find it fair."). The positive reaction of the Classes to the Settlement supports its fairness, and thus this factor also weighs in favor of

---

[5] Further, if he was dissatisfied with the compensation he would receive under the Settlement, Mr. Dorn could have excluded himself. *See Pan v. Qualcomm Inc.*, 2017 WL 3252212, at *10 (S.D. Cal. July 31, 2017).

approval. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming approval of a class action settlement where there were 54 objections out of 376,301 notices sent); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming final approval of settlement where there were 500 opt-outs and 45 objections out of approximately 90,000 class members notified, meaning that approximately 0.61% of class members either opted out or objected); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1304 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) ("That only one procedurally valid objection was filed, after 8,253 potential Class Members received notice of the Settlement and the opportunity to object, is indicative of the fairness, adequacy, and reasonableness of the Settlement.").

### ii.   The Rule 23(e) Factors Weigh in Favor of Approval.

#### 1. Plaintiff and Class Counsel Have Adequately Represented the Classes.

As acknowledged by the Court in the Preliminary Approval Order, and as discussed further below in the context of Rule 23(a)(4), Counsel and Plaintiff have adequately represented the Classes. (*See* PAO at 21; *see also infra* Section B(i)(4).) *See also Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263, at *6 (S.D. Cal. Sept. 26, 2022) (concluding that Rule 23(e)(2)(A), which is "redundant of the requirements of Rule 23(a)(4)," was satisfied) (citation omitted).

#### 2.  The Settlement Was Negotiated at Arms' Length.

Moreover, the Settlement—which was reached only after an Early Neutral Evaluation with Judge Schopler, a settlement conference with Judge Burkhardt, two mediation sessions with an experienced third-party neutral, and subsequent negotiations between experienced counsel—was negotiated at arm's length. (ECF No. 295 at 11; PAO at 21-22); *DeRosa v. ViacomCBS Inc.*, 2024 WL 713739, at *2 (C.D. Cal. Feb. 21, 2024) (granting final approval of class action settlement where

court concluded "that the Settlement that has been reached is the result of intensive, non-collusive, arms'-length negotiations, including mediation with a highly experienced third-party neutral").

### 3. The Monetary and Injunctive Relief Provided in the Settlement is Exceptional.

Next, taking into account each of the relevant factors under Rule 23(e)(2)(C), the historic monetary and meaningful injunctive relief provided to the Classes is more than adequate. (ECF No. 295 at 11-16; PAO at 22-25.)

First, in light of the significant costs, risks, and delay of trial and appeal—discussed herein, *see supra* Section A(i)(1)-(2)—the Settlement here is "reasonable under all of the circumstances." *Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334, at *5 (C.D. Cal. July 19, 2021) (citation omitted) (concluding that this subfactor weighed in favor of final approval where class had not yet been certified and the scope and amount of defendant's liability was uncertain).

Second, the Settlement's method of relief distribution, which does not require Class Members to take any action to be paid, is effective. *See id.* (concluding that this subfactor was satisfied where the settlement "requires no action from participating class members" in order to receive payment).

Third, the terms of the proposed award of attorneys' fees in the Settlement are appropriate. "In considering the proposed award of attorneys' fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: '(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class.'" *Martin v. Toyota Motor Credit Corp.*, 2022 WL

17038908, at *8 (C.D. Cal. Nov. 15, 2022) (quoting *Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014, 1022 (9th Cir. 2021)). Here, none of these indicia are present.

Under the Settlement, Class Counsel seek "the benchmark 25% courts look to when employing the percentage-of-recovery method." (PAO at 25.) *See also Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 110 (9th Cir. 2021). "This percentage of recovery is typical and does not represent a disproportionate distribution of the settlement to counsel." *Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602, at *6 (S.D. Cal. Aug. 18, 2015). In addition, and as this Court has already observed, there is no "clear sailing" provision in the Settlement Agreement. (PAO at 25.) And, no amount of the Settlement Fund shall revert to Defendant. (*Id.*; *see also* SA ¶ 4.3.1.4.) Thus, there are no signs of collusion. *See Santillan v. Verizon Connect, Inc.*, 2024 WL 627998, at *8 (S.D. Cal. Feb. 13, 2024).

### 4.  The Settlement Treats Class Members Equitably.

Finally, the Settlement treats Class Members equitably. Fed. R. Civ. P 23(e)(2)(D) "calls attention to a concern that may apply to some class action settlements – inequitable treatment of some class members vis-a-vis others." Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.* Here, there are no such concerns.

#### a.  The Apportionment of Relief Among Class Members is Appropriate.

Failure to Disclose and Failure to Identify Class Members will automatically receive payments of $1,000 and $500. (SA ¶ 4.3.1.2.) Meanwhile, except in very limited circumstances, each Inaccurate Reporting Class Member will automatically

1  be issued a payment of approximately $47, as well as an anticipated second

2  payment of approximately $47. (*Id.*; *see also* ECF No. 306 at 3-4.)

3      This apportionment makes sense. Courts have held that the determination of

4  statutory damages should focus on the importance of the particular violation at

5  issue. *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or.

6  2008). In light of these principles, it is equitable for members of the Failure to

7  Disclose Class to receive larger payments than Inaccurate Reporting Class

8  Members. By definition, members of the Failure to Disclose Class made a request

9  to Defendant for their consumer file or report *after* Defendant had published a report

10 identifying them as a possible match to the OFAC List. The fact that each Failure

11 to Disclose Class Member requested their report or consumer file is a strong

12 indicator that these consumers were concerned about Defendant's reporting.

13 Defendant's failure to adequately disclose to these consumers what it had reported

14 about them violated consumers' rights, and also allowed Defendant to continue its

15 OFAC reporting in secret. Similar logic holds for the Failure to Identify Class,

16 whose members also had a demonstrated concern about Defendant's reporting, but

17 who were denied information about the entities to whom Defendant had

18 disseminated their reports, again allowing potential violations to go unremedied.

19     Further, and as the Court previously reasoned, the $20,000 Service Award

20 requested for Plaintiff "does not appear to be facially unreasonable nor does it

21 render the settlement inequitable." (PAO at 27.) Instead, the requested amount

22 "represents a small portion of the Settlement Fund and is reasonable considering

23 Plaintiff's participation in this litigation for 3 ½ years." (*Id.*)

24          **b. The Release Impacts All Class Members Similarly.**

25     Additionally, the Agreement's release is the same for all Class Members

26 (besides Plaintiff, who has signed a much broader release). This supports a finding

27 that the Settlement treats Class Members equitably. *See, e.g., In re ConAgra Foods,*

28

*Inc.*, 2023 WL 8937622, at \*9 (C.D. Cal. Sept. 18, 2023) (granting final approval of settlement where the release is "the same for all class members" and the "Settlement therefore treats class members equitably").

All told, the Settlement is fair, reasonable, and adequate, and should be finally approved.

## B. Certification of the Settlement Classes is Appropriate.

Next, Plaintiff respectfully requests that the Court certify the Settlement Classes for settlement purposes. *See Hawkins*, 2022 WL 345639, at \*3. The Court previously found that the Settlement Classes each satisfy all the requirements of Rule 23(a) and 23(b)(3). (*See* PAO at 11-19.) "Given that no substantive issues concerning class certification have been raised since the Court granted preliminary approval of the settlement class[es]," the Court may "incorporate[] its prior analysis by reference, and find[] that final class certification for settlement is appropriate." *Steinberg*, 2024 WL 1546921, at \*4 (citation omitted). *See also Weinstein v. Mortg. Contracting Servs., LLC*, 2018 WL 11377827, at \*6 (C.D. Cal. Oct. 23, 2018). In any event, Plaintiff recounts here why the Settlement Classes should be certified.

### i.    The Settlement Classes Satisfy Rule 23(a).

Each requirement of Fed. R. Civ. P. 23(a) is satisfied here.

### 1.  The Settlement Classes Are Numerous.

As the Court previously determined, the numerosity requirement of Rule 23(a)(1) is thus satisfied as the Failure to Disclose Class and Failure to Identify Class have thousands of Class Members and the Inadequate Reporting Class has hundreds of thousands of Class Members. (PAO at 11-12.) *See also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

### 2.  There Are Common Questions of Law and Fact.

20

Second, Rule 23(a)(2) is satisfied for each Settlement Class. Commonality requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also id.* at 359 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]") (citation omitted).

Here, for the Inaccurate Reporting Class, common issues include "whether Defendant's OFAC reports should be considered consumer reports" and "whether Defendant's name-only matching procedure was reasonable to ensure the maximum possible accuracy of the information furnished..." (PAO at 13.) For the Failure to Disclose Class, "the underlying common question is whether Defendant violated 15 U.S.C. section 1681g(a) by failing to disclose OFAC report results to consumers who requested their files or consumer reports." (*Id.*) Finally, "for the Failure to Identify Class, the common question underlying all class member's claims is whether Defendant violated the FCRA by failing to disclose inquiry history to all individuals making 'consumer file requests.'" (*Id.*)

As this Court has previously concluded, such questions establish commonality. (*Id.* at 12-14.) *See also Figueroa*, 2021 WL 211551, at *3 (finding commonality satisfied where "the class claims involve common questions of law and fact" regarding defendant's alleged misconduct).

### 3.  Plaintiff's Claims Are Typical of the Settlement Classes.

Third, Rule 23(a)(3) is satisfied. The typicality test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Typicality does not require identical facts or injuries. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Here, Plaintiff's claims are typical of those of the Settlement Classes. Like Inaccurate Reporting Class Members, he was the subject of a report, disseminated to a third party, that inaccurately matched him to the OFAC List. And, like members of the Failure to Disclose Class, he requested a copy of his consumer file or report, and thereafter received a response that did not disclose Defendant's OFAC reporting. Finally, like every member of the Failure to Identify Class, Plaintiff requested a file disclosure, and the disclosure that Defendant thereafter provided did not identify each person that had procured his consumer report in the preceding year. Thus, Plaintiff challenges conduct that was not unique to him, and he and the members of each of the Settlement Classes "have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508. As the Court preliminary concluded, typicality is satisfied. (PAO at 14-15.) *See also Figueroa*, 2021 WL 211551, at *3.

### 4. Plaintiff and Class Counsel Have & Will Adequately Represent the Settlement Classes.

Fourth, Plaintiff and Class Counsel satisfy Rule 23(a)(4). The adequacy requirement asks, "do the named plaintiffs and their counsel have any conflicts of interest with other class members and [] will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Figueroa¸* 2021 WL 211551, at *3 (internal quotation omitted). "A court certifying a class must consider: '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'" (PAO at 16) (quoting Fed. R. Civ. P. 23(g)(1)(A).).

As the Court previously determined, "there is no obvious conflict between Plaintiff's interests and those of the classes." (*Id.*) Moreover, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Classes, playing a

hands-on role throughout the case. (*See generally* ECF No. 316-4.) Likewise, Class Counsel have no conflicts of interest with the Classes. (Drake Decl. ¶ 8.) And, Class Counsel, who are highly experienced in FCRA class action litigation, have dedicated significant time and resources into the matter for over three years. (*See generally* ECF No. 316-1). Adequacy is thus satisfied. *See Cuellar v. First Transit Inc.*, 2024 WL 83231, at *4 (C.D. Cal. Jan. 8, 2024).

### ii.  The Settlement Classes Satisfy Rule 23(b)(3).

The criteria of Fed. R. Civ. P. 23(b)(3) are also met here.

### 1. Common Issues Predominate.

A plaintiff must demonstrate the superiority of maintaining a class action and show "'that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3)). "[T]he focus of the predominance inquiry" is whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (citation omitted).

Here, and as the Court previously concluded, "there are three core questions common to all settlement classes, namely: '(1) whether [Defendant's] conduct violated the applicable provision of the FCRA/CCRAA; (2) whether [Defendant's] conduct was willful; and (3) the proper measure of statutory and punitive damages.'" (PAO at 17 (quoting ECF No. 295 at 30).) As numerous courts have concluded when faced with similar claims, such questions predominate. *See, e.g. Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 677 (D. Md. 2013) (finding predominance requirement met where "[a]ll class members seek statutory damages for the alleged FCRA violations, and would need to establish willfulness in order to recover under the FCRA").

### 2. Class Treatment is a Superior Means of Resolution.

Next, and as the Court has already determined, a class action is superior here "because (1) individual members of the classes have no interest in controlling the prosecution of this case; (2) Plaintiff's counsel is unaware of any similar suits brought against Defendant related to its OFAC reports and consumer disclosures; and (3) bringing all potential class member's claims in one action saves judicial resources." (PAO at 18 (citing ECF No. 295 at 30-31).) *See also* 7 Newberg on Class Actions § 21:4 (6th ed. 2022) ("FCRA matters remain good candidates for class actions – they tend to involve a large number of harmed individuals with small claims, often disbursed throughout the country."); *Kutzman*, 2020 WL 5909151, at *6 (confirming preliminary findings that predominance and superiority were satisfied where, at final approval, there was "no reason[] to disturb those determinations"). Superiority is met here.

### C. Notice to the Classes Was the Best Notice Practicable.

Finally, the Notice provided to the Settlement Classes was appropriate. The Court previously approved the substance of the Notice to be sent to Class Members, noting that the Parties had "modified [the Notice] to include additional information about the claims in this case" and "to better describe the case itself, the Settlement, and the steps available to class members." (PAO at 20-21.) Ultimately, the Court concluded that "the Notice itself indicates that it contains all of the information usually contained in such documents." (*Id.* at 21.) The Court also approved the robust process for providing Notice, which includes "direct notice, along with digital and social media" to reach as many Class Members as possible across various means. (*Id.* at 20.) All told, the Court agreed that the Notice Plan "is the best notice that is practicable under the circumstances." (*Id.* at 21.)

The Administrator previously provided an update on the administration of the Notice Plan, along with the Notices that were distributed to Class Members. (*See* ECF No. 316-5; Exs. C and D.) These Notices "clearly and concisely state in

plain, easily understood language" the requirements set forth in Fed. R. Civ. P. 23(c)(2)(B). Moreover, the Administrator has provided "individual notice to all members who c[ould] be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). For example, the Administrator conducted two reverse email address append searches to locate Class Members' email addresses, and "performed a cleansing process to help ensure the accuracy of the recipient email addresses." (ECF No. 316-5 ¶¶ 7-10.) The Administrator also made great efforts to identify updated mailing address for Class Members, and will continue to do so. (*Id.* ¶¶ 14-17.) And, the Administrator has run a "state-of-the-art media notice campaign," activated and maintained the Settlement Website, and established a toll-free number dedicated to the Settlement. (*Id.* ¶¶ 18-20.)

Finally, as of May 17, 2024, the Administrator reported that only 1.45% of Mail Notices and 7.81% of Email Notices were undeliverable. (Rose Decl. ¶¶ 6, 10.) Particularly when coupled with the fact that the multifaceted Notice Plan has included Mail Notice, Email Notice, a Settlement Website, and media, Notice has clearly been provided to well over 70% of class members. *See Perks*, 2021 WL 1146038, at *2; *Elkies*, 2020 WL 10055593, at *2.

"No later than fourteen (14) days prior to the Final Approval hearing date, the Settlement Administrator shall file an affidavit…attesting that Notice was disseminated as required by the terms of the Agreement or as ordered by the [C]ourt." (PAO at 35.) Class Counsel anticipate that this forthcoming affidavit will further illustrate that the Notice Plan has been executed in accordance with the Preliminary Approval Order, the Settlement Agreement, and Rule 23, thereby confirming the Court's preliminary finding regarding the adequacy of Notice.

## CONCLUSION

Based on the foregoing, the Court should grant Plaintiff's Motion and enter the Final Approval Order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: May 17, 2024

/s/E. Michelle Drake
E. Michelle Drake,
MN Bar No. 0387366*
John G. Albanese,
MN Bar No. 0395882*
Ariana B. Kiener
MN Bar No. 0402365*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5999
Fax: (612) 584-4470
emdrake@bm.net
jalbanese@bm.net
akiener@bm.net

David A. Langer*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. 215-875-3000
dlanger@bm.net

Zachary M. Vaughan*
BERGER MONTAGUE PC
2001 Pennsylvania Ave, NW
Suite 300
Washington, D.C. 20006
Tel: 202.559.9740
zvaughan@bm.net

*pro hac vice

Sophia M. Rios (SBN 305801)
BERGER MONTAGUE PC
8241½ La Mesa Blvd.
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

*Attorneys for Plaintiff and the
Settlement Classes*

26